**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR USHERSON, | |
| Plaintiff, | |
| v. | Docket No. 1:19-cv-6368 (JMF) |
| BANDSHELL ARTIST MANAGEMENT | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SANCTIONS**

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist*
*Management*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   FACTUAL BACKGROUND .............................................................................. 3

III.  ARGUMENT ...................................................................................................... 13

    A.    **Pursuant to This Court's Inherent Authority, Plaintiff and Plaintiff's Counsel Should Be Sanctioned for Violations of Court Orders** ...................................... 14

    B.    **This Court Should Also Sanction Plaintiff's and Plaintiff's Counsel's Willful Defiance of the Court's Order under the Federal Rules of Civil Procedure** ..................... 16

    C.    **Plaintiff and Plaintiff's Counsel Should Be Sanctioned for their Failure to Timely File Proof of Service and Provide Licensing and Royalty Information as Ordered** ......... 19

IV.   CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
 421 U.S. 240 (1975).............................................................................................14

*Centennial Archaeology, Inc. v. Aecom, Inc.*,
 688 F.3d 673 ......................................................................................................15

*Craig v. UMG Recordings, Inc.*,
 2019 WL 2992043 (S.D.N.Y. 2019).....................................................................13

*Craig v. UMG Recordings, Inc.*,
 380 F.Supp. 3d 324 (S.D.N.Y. 2019)....................................................................14

*Dallas v. Goldberg*, 2003 WL 22872325
 2003 WL 22872325 ............................................................................................15

*Early v. Superintendent of Groveland Correctional Facility*,
 680 F.Supp.2d 445 (W.D.N.Y.) ...........................................................................17

*Ferdman v. CBS Interactive, Inc.*,
 342 F.Supp.3d 515 (S.D.N.Y. 2018).....................................................................13

*Galt G/S v. Sealand Services, Inc.*,
 No. 87-CV-1038, 1989 WL 69908 (N.D.N.Y. June 13, 1989)................................15

*Hall v. Flynn*,
 829 F.Supp. 1401 (N.D.N.Y. 1993)......................................................................15

*Lediju v. New York City Department of Sanitation*,
 173 F.R.D. 105 (S.D.N.Y. 1997) .........................................................................15

*LeSane v. Hall's Sec. Analyst, Inc.*,
 239 F.3d 206 (2nd Cir. 2001)...............................................................................17

*MA Salazar, Inc. v. Incorporated Village of Atlantic Beach*,
 499 B.R. 268 (E.D.N.Y. 2013) ............................................................................14

*Meyer v. Kalanick*,
 212 F.Supp.3d 437 (S.D.N.Y. 2016).....................................................................14

*New York Ass'n for Retarded Children, Inc. v. Carey*,
 711 F.2d 1136 (2d Cir. 1983)...............................................................................15

*Pereira v. 3072541 Canada Inc.*,
  2018 WL 5999636 (S.D.N.Y. 2018)................................................................13

*Polaris Images Corp. v. CBS Interactive, Inc.*,
  2019 WL 5067167 (S.D.N.Y. 2019)................................................................20

*Rice v. NBCUniversal Media, LLC*,
  2019 WL 3000808 (S.D.N.Y 2019)................................................................13

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  29 F.Supp.3d 85 (D. Conn. 2014)................................................................17

*Sands v. Bauer Media Grp. USA, LLC*,
  2019 WL 4464672 (S.D.N.Y. 2019)............................................................13, 18

*Saxon v. Zirkle*
  97 A.3d 568 (D.C. 2014) ................................................................15

*Steeger v. JMS Cleaning Servs. LLC*,
  2018 WL 1363497 (S.D.N.Y 2018)................................................................13

*Walpert v. Jaffrey*,
  127 F.Supp.3d 105 (S.D.N.Y. 2015)................................................................14

**Federal Statutes**

28 U.S.C. § 1927................................................................2, 14, 16, 17

**Rules**

Federal Rules of Civil Procedure:

Rule 16(f) ................................................................2, 14, 19

Rule 16(f)(1)(c)................................................................16

Rule 16(f)(2)................................................................16

Rule 41 ................................................................2, 14, 18

Rule 41(b)................................................................17

Federal Rules of Evidence:

Rule 408 ................................................................9

Local Rules of the United States District Courts for the Southern and Eastern Districts of New York:

**Rules – continued**

Rule 83.9 (including/adopting the Southern District Mediation Procedures) ............... 5-8, 12, 18

Bandshell Artist Management ("Bandshell") respectfully submits this memorandum in support of its motion for sanctions against Plaintiff Arthur Usherson ("Usherson" or "Plaintiff") and his counsel, Mr. Liebowitz, for repeatedly violating court orders, especially the Order in this case requiring an in-person mediation by October 31, 2019.

## I.    PRELIMINARY STATEMENT

As the Court might remember, it was "to put it mildly, somewhat perturbed" by the failure of Plaintiff and Mr. Liebowitz to follow its July 15, 2019 Orders (Dkt. 5 and 6) and schedule and complete an in-person mediation in this case prior to the originally scheduled initial court conference.  *See* Dkt. 13.  Due to that failure, on October 7, the Court pushed off the initial conference to November 14, 2019, and issued another Order, this time ordering the parties to "conduct the in-person mediation no later than October 31, 2019."  *Id.*

Defendant's counsel gave Mr. Liebowitz a list of various dates that his client could be available and that Defendant's counsel could travel from Virginia to New York.  Mr. Liebowitz immediately responded by choosing the very last date possible, October 31.

Despite the Court's Orders (and even before (and after) the October 7 Order, Defendant's counsel's reminders to Mr. Liebowitz that the mediation needed to be in-person and with the parties), the instructions from the Mediation Office, this Court's Local Rule adopting the Procedures of the Mediation Office, and that Mr. Liebowitz specifically chose a date that he and his client could supposedly be available in New York, and that Mr. Liebowitz and Defendant's counsel were in contact the day before and very early the morning of mediation, with numerous references to the mediation (and no mention that he and his client would not be attending), ***neither Plaintiff Mr. Usherson nor Mr. Liebowitz showed up to the mediation***.  It appears

1

Plaintiff never left Georgia where he lives, and Defendant's counsel has discovered that Mr. Liebowitz was in Los Angeles, having hosting a party there the night before.[1]

Given the blatant disregard of this Court's Orders, Defendant respectfully requests, under its inherent powers, under Federal Rules of Civil Procedure 16 and 41, and under 28 U.S.C. § 1927, that this Court Order that:

- Plaintiff and its counsel (who shall be jointly responsible) shall pay/reimburse Defendant for its costs of travel and ten hours of Defendant's attorney's legal fees (representing a discounted amount of time spent on preparing the mediation statement, preparing for mediation, attendance at the courthouse, and travel);

- This matter shall be dismissed with prejudice; and,

- To the extent any Orders are issued related to this Motion, Plaintiff's counsel shall be required to provide a copy to Plaintiff and verify the same to this Court, and to the extent there are any hearings related to this Motion, Plaintiff shall be required to attend in person.

Finally, Plaintiff was also in violation of both portions of this Court's July 15 Mediation Referral Order.  Dkt. 6.  The July 15 Order required Plaintiff to "file proof of service no more than three days after service has been effected" and within 14 days of service to produce to Defendant "(1) copies of records sufficient to show the royalty paid the last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2) the number of times the work was licensed in the last five years."  Plaintiff failed to comply with any of the Order.

---

[1] Mr. Liebowitz did send an associate (not of record in this case and seemingly with no knowledge of this case), and Mr. Liebowitz's sister—we do not know if she is even an attorney—to inform us that Mr. Usherson and Mr. Liebowitz would not be attending.

We bring the violation of that particular Order to the Court's attention (in addition to the more serious violation of the mediation Orders) because this is not the first time Mr. Liebowitz has violated or been sanctioned over failure to comply with this exact Order.  This Court should therefore again impose sanctions for this conduct.  However, Defendant does not request that sanction be paid to Defendant.  Instead, any sanctions the Court deems necessary for violation of the Order related to service and licensing information should be paid to the Clerk of Court or any other fund deemed appropriate by the Court.

## II.      FACTUAL BACKGROUND

### A.  Brief Background Regarding This Case

Defendant Bandshell is a small music management company.  Bandshell represents a few musical artists, such as The David Bromberg Quintet.  David Bromberg is an older gentleman, who has had a long career, originally becoming well known for playing with some of American music's legends, such as Bob Dylan.  Bandshell administers The David Bromberg Quintet's Facebook page, providing information about David Bromberg and his band.  On May 30, 2019, Leon Redbone, another American music legend, passed away.  The profile picture on Mr. Redbone's Facebook page was a cropped portion of the photograph in question in this lawsuit. The cropped portion shows Leon Redbone, David Bromberg, and Bob Dylan together at the Mariposa Folk Festival in 1972.  The photograph contained no copyright notice or copyright information whatsoever.[2]  In tribute to Mr. Redbone, Bandshell posted a Rest in Peace message

---

[2] The photograph appears to have been published for years without any copyright notice.  Among other issues, including Defendant's fair use of the photograph, Defendant's eventual summary judgment motion will address the fact that a plaintiff cannot hold a copyright in a work that was published prior to 1989 without a copyright notice.

on The David Bromberg Quintet's Facebook page, noting their friendship, and showing Mr. Redbone's Facebook profile picture.

For this, Plaintiff Arthur Usherson, through his attorney, Richard Liebowitz, is suing Bandshell.  On July 10, 2019, Plaintiff filed this suit alleging The David Bromberg Quintet's tribute to Leon Redbone showing Redbone's Facebook profile infringed on Usherson's copyright in the original photograph.  Bandshell was not served until September 5, 2019, and Bandshell immediately retained counsel, which took this case on *pro bono*.

### B.  Plaintiff's and His Counsel's Violation of Every Court Order to Date

The very first orders in this case were the Court's July 15 Orders.  (Dkt. 5 & 6).  Dkt. 6, the Mediation Referral Order required Plaintiff to "file proof of service no more than three days after service has been effected" and within 14 days of service to produce to Defendant "(1) copies of records sufficient to show the royalty paid the last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2) the number of times the work was license in the last five years."

The July 15 Order, Dkt. 6, required Plaintiff to "file proof of service no more than three days after service has been effected."  Plaintiff served Defendant on September 5, yet, in violation of the Order, did not file his proof of service for 16 days (September 21) instead of three.  Dkt. 7; *see also* Declaration of Brad R. Newberg, ¶¶ 4–5.

Regarding the licensing information requirement, Plaintiff failed to comply with this portion of the Order as well.  Plaintiff's counsel only revealed to Defendant's counsel that the photograph in question had never been licensed after Defendant's counsel questioned compliance with the July 15 Order, received no answer, and followed up the next day.  *See Id.*, ¶¶ 6–7, Ex. 1.

Plaintiff then went into radio silence, forcing Defendant's counsel to contact Plaintiff's counsel on October 3 to remind him of a case management plan due that day. *Id.,* ¶ 8, Ex. 2. At that point, Plaintiff's counsel first mentioned that he needed to schedule the parties' mediation, and asked for it to be two business days later. Despite the late notice, Defendant's counsel responded that he could get to New York then, and tried to verify that Plaintiff could be there in person for mediation as well. *Id.,* ¶ 10, Ex. 2. However, Plaintiff's counsel requested that it be: a) telephonic and b) lawyers-only. *Id.,* ¶ 7, Ex. 2.    Mr. Liebowitz also requested that the lawyers use a mediator he knew of and not go through the Mediation Office (although the mediator he chose is a mediator affiliated with the Mediation Office). *Id.,* ¶ 11, Ex. 2.

Defendant's counsel expressed discomfort with Mr. Liebowitz's requests on a number of levels, informing Mr. Liebowitz that he did not believe the court would want a telephonic conference—which was not in accordance with standard procedures for this Court—and there could not possibly be a mediation without the parties present. *Id.,* ¶ 12, Ex. 2. This was especially true given that the Mediation Referral Order (Dkt. 6) directed the "parties" to participate in the mediation in good faith, and in compliance with Local Rule 83.9, which is governed by the "Procedures of the Mediation Program for the Southern District of New York."

Defendant's counsel also expressed concern as to whether the mediator had the expertise required by the court Order, which (Dkt. 6) required a mediator "with expertise in copyright matters." *Id.,* ¶ 12, Ex. 2. Mr. Liebowitz assured Defendant's counsel that the mediator he chose was a "copyright lawyer who is part of the mediation program." *Id.,* ¶ 13, Ex. 2. However, a search of the mediator's background showed only experience in bankruptcy law. *Id.,* ¶ 14, Ex. 2. Defendant's counsel raised concerns about the mediator's expertise and again reiterated that the mediation would require the attendance of both parties. *Id.*

Eventually (and after hearing from the mediator Mr. Liebowitz had chosen the mediator's representation that he could handle copyright cases), in the spirit of cooperation, Defendant's counsel told Mr. Liebowitz that, *if and only if the arrangement was acceptable to the Court and the Mediation Office/mediator*, Defendant's counsel could agree to the telephonic mediation he was requesting as long as the parties would fully participate.  *Id.,* ¶¶ 15–16, Ex. 2.

On October 4, Mr. Liebowitz reached out to the Mediation Office to have his request docketed. *Id.,* ¶ 17, Ex. 3–4. That same day, the Mediation Office wrote the parties, expressing its discomfort with a telephonic mediation and Mr. Liebowitz's outreach to a mediator directly and not through the Mediation Office, and stating that **neither could be considered "in accordance with the procedures that govern this program."**  *Id.,* ¶ 18, Ex. 3–4 (emphasis added).  The Mediation Office stated clearly that a telephonic mediation *should not go forward*, the Mediation Office would await the Court's guidance, and that the parties could choose the same mediator in the future, but it must be done through the Mediation Office's "normal process."  *Id.* The Mediation Office instructed the parties that the Court's mediation Order stood, and directed them to "seek appropriate relief directly from the Judge." *Id.,* ¶ 19, Ex. 3.

Mr. Liebowitz then attempted to write the Court and get approval for his arrangement or move the October 10 initial court conference date. He sent Defendant's counsel a draft of what Mr. Liebowitz was going to send the Court, saying that he was going to file it that same day.  *Id.,* ¶ 20, Ex. 5.  Defendant's counsel was very disheartened to see that the letter had various factual assertions about the history of the case that simply were not true, and apparently created in an effort to make the request more likely to be approved, such as stating Defendant's counsel was retained later than he was, that the parties had been attempting to find a mediator, and that the parties desired a telephonic mediation to avoid the costs of Defendant's Counsel coming to New

York—something never requested by Defendant's counsel. *Id.,* ¶ 21, Ex. 5. Defendant's counsel informed Mr. Liebowitz that he could not file a letter with those inaccuracies and he needed to modify the letter, which he did (at Dkt. 12, filed October 4). *Id.,* ¶ 22, Ex. 5.

On October 7, the Court issued an Order on Mr. Liebowitz's letter. Dkt. 13. The Court stated that it was "to put it mildly, somewhat perturbed" by Mr. Liebowitz's actions and statements, expressing particular displeasure with Mr. Liebowitz's delays. *Id.* The Court adjourned the initial pretrial conference to November 14, 2019 at 4:00 pm and Ordered that the "parties shall conduct the **in-person** mediation no later than October 31, 2019." *Id.* (emphasis added).

> *In sum, this Court specifically gave the parties significant time to make sure they could conduct an in-person mediation with the parties and lead lawyers present, and conducted properly through the Mediation Office and in accordance with the mediation procedures of this Court as per the Local Rules.* Newberg Decl.¶ 25.

The Mediation Office also followed up on October 7, contacting the parties to make them aware that the mediation needed to occur **in-person** in accordance with the Judge's direction. *Id.,* ¶ 24, Ex. 4. This was yet another signal to Mr. Liebowitz that he needed to make sure that he and his client would be available in person at the Mediation Office for whatever mediation was scheduled. At this point, the Court, the Mediation Office, and the rules and Mediation procedures of this Court had made it clear that mediation was to be conducted in person, attended by both the parties and their lead counsel. *Id.,* ¶ 26.

Furthermore, as per the Court's Local Rule, which adopts the standing Procedures of the Mediation Program, including Section 9, "Attendance at Mediation Sessions" (emphasis added):

a. Each party **must attend mediation. This requirement is critical** to the effectiveness of the mediation process as it enables parties to articulate their

positions and interests, to hear firsthand the positions and interests of the other parties, and to participate in discussions with the mediator both in joint session and individually. **If a represented party is unable to attend** a previously scheduled mediation because of a change in that party's availability, **the party's attorney must notify the mediator immediately so that a decision can be made whether to go forward with the mediation session as scheduled or to reschedule it.** Mediators are required to report to the Court if a party failed or refused to attend, or refused to participate in the mediation.

b. Each represented party **must be accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter**.

Defendant's counsel gave Mr. Liebowitz various dates that Defendant's counsel could travel to New York from Virginia and on which his client would also be available and asked Mr. Liebowitz to pick whatever date he wanted *where his client could come to New York from Georgia and Mr. Liebowitz would be available*, to make it easiest for them to both attend in person.  Newberg Decl., ¶ 28, Ex. 6.  Mr. Liebowitz did not raise any issues of availability but rather immediately responded (within five minutes) with the last possible date, October 31.  *Id.,* ¶ 29, Ex. 6.  The in-person mediation was therefore scheduled for October 31 at noon, at the Mediation Offices at 40 Foley Square.  *Id.,* ¶ 30.  ██████████ the mediator, informed the parties their required mediation statements were due by October 29. *Id.*

Defendant's counsel received an email from the mediator in the evening of October 23 seeking a call on October 24 ████████████████████████████████████. *Id.,* ¶ 31, Ex. 7.  Defendant's counsel had a call with the mediator on October 24 and it was agreed that ███ ████████████████████████ the in-person mediation would move forward.  *Id.,* ¶ 32.

Defendant sent a detailed Confidential Mediation Statement to the mediator before October 29.  *Id.,* ¶ 32.  It is unknown if Plaintiff sent such a statement.

8

On October 30, the day before the mediation, Defendant's counsel received an email from the mediator with a potential offer from Plaintiff. *Id.*, ¶ 34.[3]  That offer was unacceptable to Defendant. *Id.*  However, in a good-faith effort to end the case, Defendant's counsel drafted a full proposed agreement, stating in the email (which we believe was forwarded on to Mr. Liebowitz with the draft agreement) that Plaintiff could sign the agreement or "we will see Mr. Liebowitz and Mr. Usherson tomorrow and we can continue discussing the possibility of settlement at the mediation. . . ." *Id.*, ¶ 35.  Later that evening, the mediator sent an email stating that he had talked to Mr. Liebowitz, who relayed that he "has been tied up.  He will review [the draft Defendant's counsel sent] tonight and get back to us in morning.  Hopefully we can settle this before need to go to **in person mediation**." *Id.*, ¶ 36, Ex. 8 (redacted) (emphasis added). Defendant's counsel reiterated to the mediator that he would be headed to the train station "well before 6:00 am" and further noted his assumption that "Mr. Usherson either flew to NY tonight or is likewise on a very early plane." *Id.*  The mediator responded "I understand." *Id.*

At 4:14 am on October 31, Defendant's counsel received an email from Mr. Liebowitz stating "Attached please find revisions to the agreement which can be discussed at mediation." *Id.*, ¶ 37, Ex. 9 (without attachment).  Even at this point, hours before mediation, there was no mention that Mr. Liebowitz or his client might not show despite Defendant's counsel repeatedly mentioning to the mediator and Mr. Liebowitz their imminent in-person conference. *Id.*, ¶ 38. The email sent by Mr. Liebowitz cc'd a "James H. Freeman" but did not mention anything about Mr. Freeman attending the mediation. *Id.*, ¶ 39, Ex. 9.  Mr. Freeman has not made an appearance

---

[3] Although it is unlikely that Rule 408 applies here, the October 30 and 31 emails are not being submitted out of an abundance of caution.

in this case, and to the best of Defendant's counsel's knowledge has not been on any prior emails or calls in this case.  *Id.,* ¶ 40.

The revisions were unacceptable, and strange in that at least one did not seem to have any application to this matter.  *Id.,* ¶ 41.  Defendant's counsel was admittedly surprised to see the email had come in at 4:14 am—but (as noted below) Defendant's counsel later discovered that Mr. Liebowitz was in Los Angeles (so it was only 1:14 his time), over 2000 miles away, hosting a party, and had no intention (and likely never had any intention) of coming to the mediation. *Id.,* ¶ 58, Ex. 10.

Never once did Mr. Liebowitz state that he would not be at or even might not be at the mediation.  *Id.,* ¶ 42.  Never once did Mr. Liebowitz state that his client would not be at or might not be at the mediation.  *Id.,* ¶ 43.  This is despite numerous occasions of Defendant's counsel making references to Mr. Usherson and Mr. Liebowitz being at the Court Ordered in-person mediation.  *Id.,* ¶¶ 10, 12, 14–16, 28, 35, 38.

Defendant's counsel set his alarm for 5:00 am after having apologized the night before to one daughter for having to miss her playoff volleyball match and the other for having to arrange alternative Halloween plans for her,[4] went to New York, met with his client to prepare for the mediation, and entered the mediation room with his client at 11:45 am for the noon mediation. *Id.,* ¶¶ 44–46.

At that point, and for the first time, Defendant's counsel was told by the mediator that he had gotten word that Mr. Liebowitz would not be attending the mediation, and he did not know, but doubted Mr. Usherson would be attending.  *Id.,* ¶ 47.  Soon thereafter, Mr. Liebowitz's associate, James Freeman, arrived with Mr. Liebowitz's sister, to let us know that Mr. Usherson

---

[4] Defendant's counsel asks the Court's forgiveness for expressing his frustration.

would not be attending either.  *Id.,* ¶ 48.  Despite the Rule that lead trial counsel attend the

mediation, Mr. Liebowitz's associate, Mr. Freeman, has not even made an appearance in this

case, and seemed to have little (if any) knowledge of the details of the case.  *Id.,* ¶ 49.  It is

unclear if Mr. Liebowitz's sister is an attorney or what role, if any, she has in this case. *Id.*  Mr.

Freeman seemed surprised that Defendant's counsel was upset that neither Mr. Liebowitz nor

Mr. Usherson were there.  *Id.,* ¶ 50.  Clearly, sending an associate not admitted to this case and

without a client present was not remotely in compliance with the Court's direct Orders, nor with

the standing rules or procedures regarding mediations in this Court.  *Id.,* ¶ 51.  Furthermore, Mr.

Liebowitz can hardly be considered unfamiliar with this Court.

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

54.  ███████████████████████████████████  the meeting (it is

doubtful one could call it a mediation) ended, a few minutes after it started.  *Id.,* ¶ 55.

Defendant's counsel got on a train and headed back to Virginia.  *Id.,* ¶ 56.

　　　While on the train, Defendant's counsel went on the Internet to look up Mr. Liebowitz's

website.  *Id.,* ¶ 57.  Defendant's counsel was shocked and appalled when the first thing that came

up in the search was Mr. Liebowitz's firm's Twitter feed, which revealed that he was in Los

Angeles, having hosted an event there the prior night.  *Id.,* ¶ 58, Ex. 10.   As such, Mr. Liebowitz

almost certainly knew he could not attend the mediation when he scheduled it and up until the

moment he did not attend. *Id.,* ¶ 58, Ex. 10. This, in spite of him supposedly choosing October

31 so that he could attend and his client could travel to New York from Georgia.  *Id.,* ¶ 28.

11

On November 1. 2019, Defendant's counsel sent Mr. Liebowitz an email, requesting reimbursement of Defendant's costs and ten hours of Defendant's counsel's legal fees, as well as dismissal of this case with prejudice due to Plaintiff's and Mr. Liebowitz's violation of Court Orders. *Id.,* ¶ 60, Ex. 11.  Despite the lack of need under this Court's rules to have a meet and confer on this motion, Defendant's counsel offered one anyway, and that call was held on November 4. *Id.*, ¶ 61, Ex. 11.  The call did not result in resolution of this motion.

Although Defendant's lead counsel spent more than ten hours on the Mediation Statement, preparation for mediation, travel to New York, and attendance at the courthouse, and although an associate who works with Defendant's lead counsel worked on the Mediation Statement as well, Defendant is limiting its request to ten hours of its lead counsel's time. *Id.,* ¶ 62.  Defendant's counsel's standard 2018 rate is $855 per hour, making the fees request $8,550. *Id.,* ¶ 63.[5]  The receipts for all of Defendant's costs for the New York trip are attached to the Newberg Declaration and come to $428.75, making Defendant's total request $8,978.75, plus, to the extent awarded by the Court, Defendant's fees for this Motion.  *Id.,* ¶ 64, Ex. 12.   Defendant asks that Mr. Usherson and Mr. Liebowitz be jointly liable for this reimbursement.  Defendant also asks for dismissal of this matter with prejudice.  In a very short time, Mr. Liebowitz has blatantly defied the only two Orders issued by this Court in this case as well as the Court's Local Rules and Mediation Procedures, after at least two years in which he has defied this Court's orders over and over.

Defendant also asks the Court to sanction Mr. Usherson and Mr. Liebowitz for the failure to comply with the July 15 Mediation Referral Order regarding filing proof of service and

---

[5] Defendant's counsel has taken this case on *pro bono*.  However, as discussed further in this Motion, legal fees are recoverable even in a pro bono matter.

providing licensing information.  However, Defendant believes that particular sanction should go to the Clerk of Court or other fund designated by the Court and not Defendant.

Finally, Defendant requests that the Court use its inherent powers to require Mr. Liebowitz to provide Mr. Usherson with a copy of any sanctions Orders issued in this case since it is unclear whether Mr. Usherson is aware of the Court's Orders, and verify the same to this Court.  To the extent there is any hearing on this Motion, Defendant respectfully requests that the Court Order Mr. Usherson to attend.

## III.    ARGUMENT

Plaintiff's counsel has added another instance of misconduct to his ever-lengthening list. As the Court is undoubtedly aware, Plaintiff's counsel has been repeatedly been sanctioned by this Court.[6]  Here, he has once more failed to comply with multiple Court Orders, and, in fact, has failed to comply with *any* of the Court Orders issued so far in this matter.  He failed to file his proof of service in the time required by the Court.  He failed to provide Defendant with licensing information in the time required by the Court.  He failed to schedule mediation in the time and in the manner required by the Court.  And then, after scheduling a mediation on a date that was supposedly the date that he and his client could both attend the mediation in person, neither he nor his client appeared.  Given that Mr. Liebowitz was hosting a party in Los Angeles,

---

[6] *See, e.g.*, *Sands v. Bauer Media Grp. USA, LLC*, 2019 WL 4464672, at *7 (S.D.N.Y. 2019) (ordering monetary sanctions against Mr. Liebowitz for discovery misconduct); *Craig v. UMG Recordings, Inc.*, 2019 WL 2992043, at *7 (S.D.N.Y. 2019) (ordering sanctions against Mr. Liebowitz in the amount of $98,532.65 for discovery misconduct), *Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808 (S.D.N.Y 2019), *report & recommendation adopted by* 2019 WL 3752491 (S.D.N.Y. 2019) (sanctioning Mr. Liebowitz for discovery misconduct); *Steeger v. JMS Cleaning Servs. LLC*, 2018 WL 1363497, at *3 (S.D.N.Y 2018) (requiring Mr. Liebowitz to complete four hours of ethics and professionalism CLE courses and ordering monetary sanctions against him); *Ferdman v. CBS Interactive, Inc.*, 342 F.Supp.3d 515, 529 (S.D.N.Y. 2018) (sanctioning Mr. Liebowitz by precluding evidence); *see also Pereira v. 3072541 Canada Inc.*, 2018 WL 5999636, at *3 (S.D.N.Y. 2018) ("[t]o the extent that Mr. Liebowitz and/or his law firm engage in misconduct in the future, the Court will not hesitate to impose sanctions"). There is also a pending motion against Mr. Liebowitz in *Wisser v. Vox Media*, Mem. Of Law in Support of Defendant's Mot. For Sanctions, *Wisser v. Vox Media*, No. 36 1:19-cv-1445-LGS (S.D.N.Y. Oct. 3, 2019), for allegedly forging his client's signature onto Interrogatory responses.

it appears he never had any intention of him or his client appearing.  Due to this continued and flagrant pattern of willful disregard for the Court's Orders, as well as Mr. Liebowitz's responsibilities as an officer of the court, Bandshell requests sanctions jointly against Plaintiff and its counsel under this Court's inherent authority, 28 U.S.C. §1927, and Federal Rules 16(f) and 41, including, but not limited to, costs, fees, and involuntary dismissal of this case.

### A.   Pursuant to This Court's Inherent Authority, Plaintiff and Plaintiff's Counsel Should Be Sanctioned for Violations of Court Orders

Under this Court's inherent authority, Plaintiff's counsel should be sanctioned for failing to comply with the Court's July 15 Early Mediation Order, and the October 17 Order that mediation be conducted in person (as well as the Court's Local Rule and the Court's Mediation Rules) despite numerous warnings that he and his client must appear in person. *See* Dkt. 5, 6, 13. The Court has inherent power "to sanction parties and attorneys who have 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Craig v. UMG Recordings, Inc.*, 380 F.Supp. 3d 324, 339 (S.D.N.Y. 2019) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)) (sanctioning Mr. Liebowitz).  "A court may infer bad faith where the action was 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *MA Salazar, Inc. v. Incorporated Village of Atlantic Beach*, 499 B.R. 268, 274 (E.D.N.Y. 2013). "Courts' inherent powers include the power to [impose sanctions] for failure to obey court orders." *Walpert v. Jaffrey*, 127 F.Supp.3d 105, 122–23 (S.D.N.Y. 2015).  These powers include the ability to "assess[] attorneys' fees and costs against a party." *Meyer v. Kalanick*, 212 F.Supp.3d 437, 450 (S.D.N.Y. 2016).  Plaintiff's counsel has willfully ignored this Court's orders and significantly impaired the resolution of this case and should be sanctioned.

14

Defendant is being represented *pro bono*, but the general rule is that attorney's fees are recoverable even where an attorney is represented their client on a pro bono basis. *See Dallas v. Goldberg*, 2003 WL 22872325, *1 (S.D.N.Y. Dec. 5, 2003) (awarding attorney's fees under Rule 16 and the court's inherent power where the party was represented pro bono); *see also New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983) (awarding attorney's fees where a civil rights claimant was represented pro bono); *see also Centennial Archaeology, Inc. v. Aecom, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) ("The purpose of Rule 37 attorney-fee sanctions would be thwarted if the party could escape the sanction whenever the opposing counsel's compensation is unaffected by the abuse"); *see also Saxon v. Zirkle*, 97 A.3d 568, 576–77 (D.C. 2014) (awarding attorney's fees sanctions in spite of pro bono representation by guardians ad litem). As such, Defendant's counsel's representation of Bandshell on a pro bono basis is immaterial.

Plaintiff's and Mr. Liebowitz's conduct is further so egregious as to warrant dismissal as well as costs. "[D]ismissal or default may be an appropriate remedy where 'there is a showing of willfulness, bad faith, or fault." *Walpert*, 127 F.Supp.3d 105 at 122. This Court and its sister districts have repeatedly held that ignoring court orders and failing to appear at conferences is precisely the kind of willful conduct that supports dismissal.  *See, e.g., Lediju v. New York City Department of Sanitation*, 173 F.R.D. 105 (S.D.N.Y. 1997) (dismissing a case for willful failure to obey pretrial scheduling orders); *see also Hall v. Flynn*, 829 F.Supp. 1401, 1403 (N.D.N.Y. 1993) (dismissing complaint for plaintiff's failure to appear at discovery conference); *see also Galt G/S v. Sealand Services, Inc.*, No. 87-CV-1038, 1989 WL 69908, at *1 (N.D.N.Y. June 13, 1989) (entering default judgment against defendant for failure to comply with a court order).

Plaintiff and its counsel's misconduct should be sanctioned with dismissal: the Court's inherent powers to dismiss are squarely aimed at this kind of conduct.

Here, Plaintiff and Mr. Liebowitz have been in direct violation of each of the Orders issued so far in this case, the last violation being the most serious: failing to show up for mediation despite a Court Order and various warnings and reminders from the Mediation Office and Defendant's counsel.  Not once did Mr. Liebowitz even raise the possibility that he and his client might not attend.  But when the day came and Defendant was present with its counsel, who traveled from Virginia early that morning, Mr. Liebowitz was in California presumably hosting an event to grow his portfolio of clients, and Mr. Usherson was still in Georgia. The mediation stymied by Plaintiff's counsel's misconduct required significant preparation.  As such, this case should be dismissed and Plaintiff and his counsel jointly ordered to pay the costs and fees of preparing for mediation.

**B.  This Court Should Also Sanction Plaintiff's and Plaintiff's Counsel's Willful Defiance of the Court's Order under the Federal Rules of Civil Procedure**

Rule 16(f)(1)(c) states, "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." "Instead of or in addition to any other sanction, the court **must** order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Rule 16(f)(2) (emphasis added). Plaintiff and its counsel cannot either justify or explain their failures, and thus sanctions are warranted.

Additionally, sanctions should be imposed under 28 U.S.C. § 1927.  § 1927 provides "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously

16

may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F.Supp.3d 85, 105 (D. Conn. 2014) (*judgment vacated in part on other grounds by Romag Fasteners, Inc. v. Fossil, Inc.,* 686 Fed.Appx. 889 (Fed. Cir. 2017)). As such, sanctions should be imposed against Mr. Liebowitz under § 1927 in addition to the court's inherent authority.

Further, under the Federal Rules of Civil Procedure, a case should be dismissed where "the plaintiff fails . . . to comply with . . . a court order." F. R. Civ. P. 41(b). The Second Circuit has "instructed a district court contemplating dismissing a plaintiff's case under Rule 41(b) . . . to consider: '[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal; [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.'" *Early v. Superintendent of Groveland Correctional Facility*, 680 F.Supp.2d 445, 448 (W.D.N.Y.) (quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2nd Cir. 2001)). After a balancing of these factors, and considering the many warnings Mr. Liebowitz has received from this Court regarding his conduct over the past couple of years, the situation here calls for dismissal of this matter with prejudice.

As discussed throughout this memorandum, Plaintiff's counsel ignored both the Court's July 15 Order and its October 17 Order as well as the Local Rule and this Court's standing Mediation Procedures. *See* Dkt. 5, 6, 13; Local Rule 83.9; Procedures of the Mediation Program of the Southern District of New York, Section 9. This conduct goes beyond a simple mistake and passes into willful misconduct. "A 'mere oversight' that happens once or twice is one thing, [a] pattern of discovery and related abuse is quite another and rings of deliberate indifference to an attorney's obligation to behave in a professional, responsible, and competent manner in each and every case he handles." *Sands v. Bauer Media Grp. USA, LLC*, 2019 WL 4464672 at *7 (S.D.N.Y 2019) (sanctioning Mr. Liebowitz). The Court has already recognized Mr. Liebowitz's knowing violation of the Court's orders in this case, stating "he knew or should have known that . . . docket entry did not mean mediation would not be scheduled (let alone relieve counsel of the obligation to comply with the Court's order requiring mediation no later than two weeks before the initial pretrial conference). Dkt. 13.  However, Mr. Liebowitz was not dissuaded from his course of misconduct and failed to attend or have his client attend an in person mediation under the October 17 Order. He cannot excuse his conduct as his failure to conduct mediation stemmed from hosting a client event in California. Instead of responsibly conducting a case he already handles, Mr. Liebowitz was attempting to drum up more business.

In addition to monetary sanctions, Plaintiff's and Plaintiff's counsel's conduct warrants dismissal under Rule 41.  Plaintiff appears to have no excuse (and chose his counsel), and as previously discussed, the disregard for this Court's orders is part of a sustained pattern. Monetary sanctions have had little effect on Mr. Liebowitz.  Further, he is clearly on constructive notice that his defiance of court orders could result in dismissal under the authority this memorandum describes given his history. Bandshell has been prejudiced and is likely to be prejudiced by Mr.

18

Liebowitz continuing this pattern as it has already sustained significant costs, multiplied proceedings, and delayed litigation. Allowing this case to continue would undoubtedly result in further misdeeds on Plaintiff's counsel's part, and further prejudice to Bandshell.

### C. Plaintiff and Plaintiff's Counsel Should Be Sanctioned for their Failure to Timely File Proof of Service and Provide Licensing and Royalty Information as Ordered.

This Court should bring whatever sanctions it deems appropriate to be paid to the Clerk of the Court for Plaintiff's counsel's failure to comply with this Court's July 15 Mediation Referral Order regarding service and licensing information.  Dkt. 5, 6.  As discussed above, Rule 16(f) provides "the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  Plaintiff's counsel's misconduct warrants further sanctions under this Rule.

Plaintiff and its counsel entirely disregarded this Court's order, something for which this Court has already sanctioned Mr. Liebowitz in prior cases.  The July 15 Order required Plaintiff to "file proof of service no more than three days after service has been effected."  Dkt. 6. Plaintiff served Defendant on September 5, yet, in violation of the Order, did not file his proof of service for 16 days (September 21) instead of three.  The July 15 Order also required Plaintiff to produce to Defendant within 14 days after service (i.e., September 19) to provide "(1) copies of records sufficient to show the royalty paid the last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2) the number of times the work was license in the last five years." Dkt. 6.  Plaintiff failed to do this.  Plaintiff's counsel only revealed to Defendant's counsel that the photograph in question had never been licensed after Defendant's counsel questioned compliance with the July 15 Order.

While Defendant cannot claim severe prejudice from the willful failure of those parts of the July 15 Orders, we bring this to the Court's attention because this is not the first time Mr. Liebowitz has committed this exact form of misconduct, and he has been warned and sanctioned by this Court over this exact Order in the past. *See Polaris Images Corp. v. CBS Interactive, Inc.*, 2019 WL 5067167 at *2 (S.D.N.Y. 2019) (noting Mr. Liebowitz had twice disregarded orders to provide information in advance of mediation and sanctioning him). This Court should again impose sanctions for this conduct. However, Defendant does not request any sanction be paid to Defendant. Instead, any sanctions the Court deems necessary should be paid to the Clerk of Court or any other fund deemed appropriate by the Court.

## IV.    CONCLUSION

Plaintiff's misconduct has no excuse. Plaintiff's counsel's misconduct in this case, as well as the growing list of cases sanctioning him, demonstrates his utter lack of regard for court orders and his obligations as an officer of this Court. He has shown again and again that he will not be deterred from misconduct by monetary sanctions. There is little hope he will correct his practices unless severe sanctions are issued. Bandshell is just the latest litigant to suffer the costs of Mr. Liebowitz's actions in the form of costs, multiplied proceedings, and delayed litigation. Defendant now asks this Court to grant sanctions against Plaintiff and Mr. Liebowitz in the form of 1) Bandshell's costs, and ten hours of legal fees, in preparing for and traveling to mediation, 2) involuntary dismissal of this case under the Federal Rules and the Court's inherent authority, 3) Bandshell's fees in preparing this Motion; 4) whatever sanctions the Court deems appropriate to address Plaintiff's and Mr. Liebowitz's failure to comply with the July 15 Orders, and 5) any other sanctions that the Court may deem appropriate to deter future misconduct.

Defendant also respectfully asks that Plaintiff's counsel be required to provide Plaintiff a copy with any Orders related to this Motion, and verify the same to this Court, and if there is to be a show cause or other hearing on this Motion, that Mr. Usherson be required to attend.

Dated: November 6, 2019                               Respectfully Submitted,

Brad R. Newberg

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Memorandum of Law in Support of Motion for Sanctions with the Clerk of the Court using the CM/ECF system on this 6th day of November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 6, 2019

<div style="margin-left:40%">

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

</div>