UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTHUR USHERSON,

                              Plaintiff,

      - against -

BANDSHELL ARTIST MANAGEMENT

                              Defendant.

Docket No. 1:19-cv-06368-JMF

---

## DECLARATION OF RICHARD LIEBOWITZ

I, RICHARD LIEBOWITZ, declare under the penalty of perjury that the following is true and correct to the best of my personal knowledge.

1.      I am lead counsel for Plaintiff Arthur Usherson ("Plaintiff") in this action.

2.      I submit this Declaration in opposition to Defendant Bandshell Artist Management ("Defendant")'s motion for sanctions.

**Proof of Service**

3.      Defendant was served with a copy of the summons and complaint on September 5, 2019.

4.      The certificate of service was filed on September 21, 2019 because I did not receive the certificate from the process server until September 20, 2019.  Attached as Exhibit A is a true and correct copy of the e-mail from the process server, dated September 20, 2019.

**Licensing Fee Information**

5.      On or about September 20, 2019, I advised defense counsel that Defendant was still looking for licensing but as of that date Plaintiff did not have licensing fee information for the Photograph at issue in this case.

**<u>Mediation</u>**

6.      At all relevant times, I was aware of the Court's Order, dated October 7, 2019, in which the Court stated that it "continues to believe that early mediation in the normal course (i.e., in person) makes sense. Accordingly, . . . .[t]he parties shall conduct the in-person mediation no later than October 31, 2019." [Dkt. #13]

7.      I understood the Court's 10/7/19 Order to mean that counsel for the parties was required to participate in person.  However, the Court's order is silent with respect to the mode of client participation and does not specifically state that clients were required to attend in-person.  *Compare* Local Rule 33.1(d)(2) of the Second Circuit's rules, which states that "A mediator may require a client to participate in a conference in person or by telephone." [*see* www.ca2.uscourts.gov/clerk/case_filing/rules/title7/local_rule_33_1.html]

8.      S.D.N.Y. Local Rule 83.9(c)(3) provides that "the mediation program shall be governed by "The Procedures of the Mediation Program for the Southern District of New York". Rule 9(f) of The Procedures of the Mediation Program for the Southern District of New York provides that clients who are located more than 100 miles from the courthouse may participate in mediation via telephone with the mediator's approval.  Attached as <u>Exhibit B</u> is a true and correct copy of the S.D.N.Y. Procedures of the Mediation Program (6/2/2017) (the "S.D.N.Y. Mediation Rules")

9.      I have diligently reviewed the S.D.N.Y. Mediation Rules and am not aware of any rule which requires that lead counsel personally attend scheduled mediations.

10.     I employ an associate, James Freeman, who has eighteen years of experience admitted to this Court.  Mr. Freeman is well-versed in copyright law.  I routinely ask Mr. Freeman to attend Court-ordered mediations on my behalf (regardless of whether he has filed a notice of appearance).  Before the instant motion, I am not aware of any instance where Mr. Freeman's participation at mediation has been contested by an opposing party.

11.     Plaintiff resides in Roswell, Georgia, more than 100 miles from the S.D.N.Y. courthouse.

12.     I have personally participated in dozens of mediations in this Circuit.  It is routine practice in this District for clients who reside more than 100 miles from the courthouse to participate in mediation by telephone.  This is because it is prejudicial for an out-of-state plaintiff to have to incur the time and out-of-pocket travel expense to appear in-person, particularly given that the defendant (who resides in the venue) does not have to incur such time and expense.  The prejudice to Plaintiff is exacerbated by the monetary value of the case, which is relatively modest.

13.     Prior to October 31, 2019, the mediation date scheduled in this case, I sought and received approval from ████████████ the assigned mediator, for Mr. Usherson to attend the mediation via telephone and for my associate James Freeman to appear who had full knowledge of the case.  I obtained ████████████ consent via telephone.

14.     ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████

15.      I did not personally attend the mediation session on October 31, 2019.  However,

Mr. Freeman, who was accompanied by Rebecca Liebowitz, an attorney who was recently

admitted to practice in this Court, was prepared to settle the case.


Dated: November 18, 2019
       Valley Stream, NY

**/s/richardliebowitz/**
Richard Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valleystream, NY 11580
516-233-1660
RL@LiebowitzLawFirm.com

*Attorneys for Plaintiff*

# EXHIBIT A



**Richard Liebowitz <richardpliebowitz@gmail.com>**

---

## Usherson v. Bandshell Artist Management

**GOTHAM** <gothamprocess@hotmail.com>                    Fri, Sep 20, 2019 at 5:13 PM
To: Richard Liebowitz <RL@liebowitzlawfirm.com>

Sent from Outlook

---

**From:** Richard Liebowitz <RL@liebowitzlawfirm.com>
**Sent:** Friday, September 20, 2019 4:52 PM
**To:** GOTHAM <gothamprocess@hotmail.com>
**Subject:** Re: Usherson v. Bandshell Artist Management

[Quoted text hidden]

---

 **img275.pdf**
40K

# EXHIBIT B



# PROCEDURES OF
# THE MEDIATION PROGRAM
## (6/2/2017)

Mediation Program
United States District Court
Southern District of New York
40 Foley Square, Suite 120
New York, New York 10007
(212) 805-0643
Email:  mediationoffice@nysd.uscourts.gov
www.nysd.uscourts.gov/mediation

## Table of Contents

1. Introduction and Scope ..................................................................................................................2

2. Confidentiality ..............................................................................................................................2

3. Entering and Removing Cases from Mediation ...........................................................................3

4. Assignment of the Mediator .........................................................................................................3

5. Disqualification .............................................................................................................................4

6. Mediation Scheduling....................................................................................................................4

7. Electronic Devices in the Courthouses .........................................................................................6

8. Mediation Statements....................................................................................................................6

9. Attendance at Mediation Sessions ................................................................................................7

10. Mediation Location .......................................................................................................................8

11. Mediation Forms ...........................................................................................................................8

12. Reporting.......................................................................................................................................8

13. Post-mediation Survey ..................................................................................................................9

14. Mediation Panel Application Criteria ...........................................................................................9

15. Mediation Panel Application Process .........................................................................................10

16. Service as a Mediator ................................................................................................................. 11

17. Code of Conduct.......................................................................................................................... 11

18. Complaints about Mediators: Investigation/Remediation ......................................................... 12

19. Complaints About the Mediation Program or Director.............................................................. 13

20. Resignation or Removal from the Mediation Panel ................................................................... 13

21. Immunity ..................................................................................................................................... 14

## 1.  Introduction and Scope

These procedures are promulgated for the management of the Mediation Program of the Southern District of New York. They shall not be deemed to vest any rights in litigants or their attorneys and shall be subject to such amendments from time to time as shall be approved by the Court. These procedures contemplate flexibility in the Mediation Program and in the mediation of each individual case. The Mediation Office may, if requested, offer guidance and assistance in any given matter.

## 2.  Confidentiality[1]

    a.  Any communications made exclusively during or for the mediation process shall be confidential except as to the provisions indicated in this section. The mediator shall not disclose any information about the mediation process, communications, or participants to anyone except for Mediation Office staff. Mediation Office staff must also maintain confidentiality except as to the provisions indicated in this section. Administrative aspects of the mediation process, including the assignment of a mediator, scheduling and holding of sessions, and a final report that the case has concluded or not concluded through mediation, or that parties failed to participate, are not confidential and will appear on the docket of the case.

    b.  The parties may not disclose discussions or other communications with the mediator unless all parties agree, because it is required by law, or because otherwise confidential communications are relevant to a complaint against a mediator or the Mediation Program arising out of the mediation. The parties may agree to disclose information provided or obtained during mediation to the Court while engaged in further settlement negotiations with a District or Magistrate Judge. The parties may disclose the terms of settlement if either party seeks to enforce those terms.

---

[1] These confidentiality rules are intended to include the protections afforded by Rule 408 of the Federal Rules of Evidence, the New York State rules of evidence, and the <u>Model Standards of Conduct for Mediators,</u> promulgated by the American Bar Association, American Arbitration Association, and the Association for Conflict Resolution (September 2005), available as of 11/2/16 at: <u>http://www.americanbar.org/content/dam/aba/migrated/2011_build/dispute_resolution/model_standards_conduct_april2007.authcheckdam.pdf</u>.

c.  Documents and information otherwise discoverable under the Federal Rules of Civil Procedure shall not be shielded from discovery merely because they are submitted or referred to in the mediation.

d.  The mediator shall not be inquired of or called as a witness or deponent in any proceeding related to the dispute in which the mediator served, or be compelled to produce documents that the mediator received or prepared for mediation.

3.  **Entering and Removing Cases from Mediation**

a.  Cases enter the Mediation Program either through a process of automatic referral or by referral of a specific case from the presiding judge with or without the request of the parties.

b.  Any party may request removal from mediation by submitting such a request in writing to the presiding judge. The Mediation Office should be copied on any requests for removal. Mediation deadlines will be stayed pending a determination from the presiding judge.

4.  **Assignment of the Mediator**

a.  The mediators on the panel for the Southern District of New York are divided into sub-groups based on areas of subject matter expertise. For most substantive areas of law, mediators identify to the program the areas in which they have the requisite experience or background. In consultation with members of the employment bar, the following criteria were developed for all mediators assigned to employment cases. Any mediator who wishes to mediate employment cases through the SDNY must: i) Have five years of experience practicing employment law in the past eight years; or ii) In the last three years have: taken an EEO/employment law CLE for at least 5 CLE credits, or been an instructor at an employment law CLE, or taught a course in employment law; or iii) Have greater than five years of demonstrated expertise as an employment law neutral.

b.  Once the Mediation Office receives a referral (either through a Mediation Referral Order or an automatic process), a mediator is selected for proposed assignment at random from the sub-group of mediators who have the subject matter expertise that is relevant to the case. If no such mediator is available, the Mediation Office will select a proposed mediator at random from a sub-group of mediators with expertise in a related subject matter. The mediator selected must respond to the Mediation Office as quickly as possible, but no later than three (3) business days, to accept the assignment, to request an extension of time to clear conflicts, or to decline. Upon

notice that the selected mediator has declined, or after three (3) business days without notice of acceptance or a request for an extension of time, another mediator will be selected. Once a mediator has accepted the case, the Mediation Office shall notify the mediator and the parties of the assignment. The assignment of a case to a mediator should take place within ten (10) business days of the receipt by the Mediation Office of the mediation referral.

c.  Mediators are provided with a free PACER account to access pleadings and other relevant information that may be needed when considering whether to accept a case, or for relevant research while mediating. At the mediator's request, the Mediation Office will forward documents and information to the mediator directly. The free PACER account is only to be used for the purposes of service as a mediator on SDNY matters and mediators may not allow others to use the account.

**5. Disqualification**

a.  Before accepting an appointment as a mediator, and at all times after accepting such an appointment, a mediator shall disclose to the Mediation Office, in the first instance, any circumstance that could give rise to a reasonable apprehension of a lack of impartiality such as those circumstances enumerated under 28 U.S.C. § 455.

b.  Any mediator who makes a disclosure under (5)(a) and who is deemed qualified to serve by the Mediation Office shall continue as the assigned mediator if all parties to the dispute waive, in writing, all objections to any reasonable apprehension of a lack of impartiality or conflict of interest that arises as a consequence of the disclosure.

c.  Any party may submit a written request to the Director of the ADR Program for the mediator's disqualification based on the circumstances enumerated in 28 U.S.C. § 455 or 28 U.S.C. § 144. This request should be submitted within three (3) days from the date of the notification of the mediator's name, or from the date of the discovery of a new ground for disqualification. A denial of such a request by the Director of the ADR Program is subject to review by the presiding judge upon motion filed within ten (10) days of the date of the Director of the ADR Program's denial.

**6. Mediation Scheduling**

a.  The mediator shall confer with counsel for the parties, or parties themselves if proceeding *pro se*, immediately after assignment of a case to determine an appropriate date, time, and location for the first mediation session. Unless cases enter the Mediation Program through an order that imposes specific timelines or guidelines for the mediation process, the date, time, and location of the first session

should be finalized within thirty (30) days of the assignment of the mediator unless there is a specific reason why a date certain cannot be established within thirty (30) days.  If the parties require no discovery or information before mediation can take place, the mediator should hold the first session within thirty (30) days of the assignment of the mediator. If the parties require discovery or information for the purpose of mediation, the parties must confer to establish a short reasonable timeline for the completion of limited discovery and should hold the first session within thirty (30) days of the completion of limited discovery. The assigned mediator shall promptly notify the Mediation Office of the date, time, and location of the first mediation session or the reason for failing to schedule within the 30-day period. The Mediation Office will docket the date, time, and location of the mediation session.

b.  In certain instances, mediation participants may wish to indefinitely adjourn mediation pending some specific action in the case (e.g. a decision on a pending motion), or remove a case from mediation entirely. Such requests should be made directly to the presiding judge with copies to the assigned mediator and the Mediation Office.

c.  On or before receipt of each party's mediation statements (see section 8), the assigned mediator may contact counsel, or parties themselves if proceeding *pro se*, to schedule either a joint or individual preliminary case conference telephone call.

d.  Any subsequent sessions shall be scheduled within thirty (30) days of the prior session, unless there is a specific reason why a date certain cannot be established. The assigned mediator shall promptly notify the Mediation Office of the date, time, and location of the next mediation session or the reason for failing to schedule within the 30-day period. The Mediation Office will docket the date, time, and location of the mediation session.

e.  The mediation will conclude when the parties reach a resolution of some or all issues in the case or when the mediator or parties conclude that resolution (or further resolution) is not possible.

f.  With the permission of the presiding judge, parties who have not settled through mediation may return to mediation at any point and may request the original mediator (if he or she is available) or that a new mediator be assigned.

7.  **Electronic Devices in the Courthouses**

    a.  Attorneys with SDNY service passes may bring cell phones into the Courthouse. (Information on how to obtain a SDNY secure pass can be found at http://www.nysd.uscourts.gov/file/forms/attorney-service-pass-application.) To request permission to bring an additional or different electronic device into the Courthouse for a specific proceeding, an Electronic Device Order must be submitted to the mediation office at least two weeks before the scheduled mediation date.

    b.  Attorneys coming to the Courthouse for the purpose of mediation without a secure pass, who wish to bring a cell phone or other approved electronic device, must submit an Electronic Device Order at least two weeks before the scheduled mediation date.

    c.  The Electronic Device Order can be found on the Court's website: http://www.nysd.uscourts.gov/mediation under "Mediation Forms."

8.  **Mediation Statements**

    a.  Unless otherwise directed by the mediator, at least seven (7) days before the first scheduled mediation session, each party shall prepare and deliver to the mediator, either *ex parte* or as the mediator directs or the parties agree, a mediation statement not exceeding ten double-spaced pages including:

        i.   the party's contentions as to both liability and damages;

        ii.  the status of any settlement negotiations;

        iii. the names of the persons, in addition to counsel, with full authority to resolve the matter who will attend the mediation; and

        iv.  the parties' reasonable settlement range, including any non-monetary proposals for settlement of the action.

    b.  The mediator may request the parties to provide different or additional information in the mediation statement including, for example, information about the parties or the dispute which might be useful in resolving the case.

    c.  These mediation statements shall be subject to the confidentiality of the mediation process and treated as documents prepared "for settlement purposes only."

9.  **Attendance at Mediation Sessions**

a.  Each party must attend mediation. This requirement is critical to the effectiveness of the mediation process as it enables parties to articulate their positions and interests, to hear firsthand the positions and interests of the other parties, and to participate in discussions with the mediator both in joint session and individually. If a represented party is unable to attend a previously scheduled mediation because of a change in that party's availability, the party's attorney must notify the mediator immediately so that a decision can be made whether to go forward with the mediation session as scheduled or to reschedule it. Mediators are required to report to the Court if a party failed or refused to attend, or refused to participate in the mediation.

b.  A party other than a natural person (e.g., a corporation or an association) satisfies this attendance requirement if represented by a decision-maker who has full settlement authority and who is knowledgeable about the facts of the case. "Full settlement authority" means the authority to agree to the opposing side's settlement offer, if convinced to do so at the mediation.

c.  Each represented party must be accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter.

d.  A fully authorized representative of the client's insurance company must attend where the decision to settle and/or the amount of settlement must be approved by the insurance company.

e.  A government unit or agency satisfies this attendance requirement if represented by a person who has, to the greatest extent feasible, full settlement authority, and who is knowledgeable about the facts of the case, the governmental unit's position, and the procedures and policies under which the governmental unit decides whether to accept proposed settlements. In addition, in cases where the Comptroller of the City of New York has authority over settlement, the Assistant Corporation Counsel must make arrangements in advance of the session for a representative of the Comptroller either to attend the session or to be available by telephone to approve any proposed settlement. If the action is brought by the government on behalf of one or more individuals, at least one such individual also must attend.

f.  Under some circumstances, if a party resides more than 100 miles from the Courthouse, and it would be a great hardship for the party to attend in person, he or she may request that the mediator allow for telephonic participation at the

mediation; however, if such request is granted, that party must participate by telephone with full attention and for the duration of the mediation.

g. Counsel for parties, parties if *pro se*, or the mediator may occasionally wish to invite individuals who are not part of the mediation process to observe the mediation. Observers may only attend if all parties, counsel for parties, and the mediator consent. As a condition of an observer attending, each observer is required to sign the Mediation Confidentiality Agreement (attached) and will be bound by any confidentiality provisions that are relevant to the mediation as if they were a party to the mediation.

h. Requests for observers to attend should be made in advance to the Mediation Office, in writing, and should include the following:

    i.   A statement of the requester's relationship to the individual who wishes to observe, and

    ii.   A statement that all parties, counsel for parties, and the mediator have been consulted and that all consent to the individual(s) observing.

## 10. Mediation Location

Mediation sessions may take place at the mediator's office, at the Courthouse, or at any other location agreed to by the mediator and the parties.

## 11. Mediation Forms

a. All participants in the mediation must read and sign the Mediation Confidentiality Agreement (attached) before or at the start of the mediation. Copies of this signed form should be retained by the Mediation Office.

b. Any term sheet or stipulation developed through mediation must be read and signed by all parties and/or counsel for parties.

## 12. Reporting

a. After referral of a case to the Mediation Program, such referral will be closed with the docketing of a Final Report of Mediator indicating that the mediation was:

    i.   Held and agreement was reached on all issues. The judge may wish to issue a "30 day order" under which the case is automatically closed in 30 days unless a party seeks to re-open the matter.

    ii.  Held and agreement was reached on some, but not all, issues.

   iii.  Held and agreement was reached as to some, but not all, parties.

   iv.  Held but was unsuccessful in resolving any issue in the case. The Mediation Unit will consider the referral to be completed and close its files at this time but the judge may re-refer parties to mediation at any point.

    v.  Not held as parties represent that they have reached settlement on all issues. The judge may wish to issue a "30 day order" under which the case is automatically closed in 30 days unless a party seeks to re-open the matter.

   vi.  Not held as a stipulation settling all of the issues of the case was entered into prior to mediation.

  vii.  Not held as one or both parties failed, refused to attend, or refused to participate in the mediation.

 viii.  Not held as the case was removed from mediation by the judge.

b. The Final Report of Mediator shall be submitted by the mediator to the Mediation Office within seven (7) days of the final mediation session or the results set forth in (a)(v), (vi), (vii) or (viii).

c. If the Final Report of Mediator indicates the result set forth in (a)(i), (ii), (iii), or (v), the parties should promptly submit a stipulation of discontinuance or other appropriate document to the Clerk of Court.

## 13. Post-mediation Survey

To assist in the continued development of the Mediation Program, the Court requests that all counsel for parties, or parties if *pro se*, respond to a short survey after the close of the mediation process. When the Final Report of Mediator is docketed on CM/ECF attorneys of record will receive a Notice of Electronic Filing in which a hyperlink to the survey is embedded. The survey may also be sent from the Mediation Office as a fillable document and is accessible on the Court's mediation web site (http://www.nysd.uscourts.gov/mediaton).

## 14. Mediation Panel Application Criteria

An individual may apply to serve as a mediator if he or she satisfies the following criteria:

a.  Is a member in good standing of the bar of any United States District Court;

b.  Has substantial exposure to mediation in federal court or has mediated cases in other settings;

c.  Has successfully completed an initial mediation training of at least 30 hours within the last three years or, if the initial mediation training was completed more than three years ago the applicant has:

>   i.  served as a mediator in more than 5 disputes during the last three years, or
>
>   ii.  successfully completed during the last three years at least one other mediation skills training, apprenticeship program, or practicum;

d.  Provides a letter of reference from a party, mediation training provider, colleague, judge, court administrator, or appropriate staff person with a public or private dispute resolution organization, that specifically addresses the applicant's mediation process skills including the ability to listen well, facilitate communication, and assist with settlement discussions; and

e.  Is willing to participate in training, mentoring programs, and ongoing assessment as detailed in section (17)(d).

## 15.  Mediation Panel Application Process

a.  Approximately once a year the Mediation Program will review all pending applications. Applicants will be notified whether or not they have been selected for an interview. Consistent with Standard IV of the Model Standards of Conduct for Mediators, all mediators asked to continue on past the interview are required to observe at least three cases and participate in a mentor mediation before undertaking to mediate cases on his or her own.

b.  The purpose of the mentor mediation is for the incoming mediator to take the lead with a mentor mediator there to provide support and step in (as needed) to maintain the quality of the process. The mentor mediator will also provide a recommendation as to the incoming mediator's readiness to join the panel.

c.  The process of observation and acceptance of a matter for mentor mediation should take no longer than six months.

**16. Service as a Mediator**

    a.  An individual may serve as a mediator once he or she has been certified by the Chief Judge or his/her designee to be competent to perform the duties of a mediator for this Court.

    b.  Each individual certified as a mediator shall take the oath or affirmation prescribed by 28 U.S.C. § 453.

    c.  All mediators shall serve without compensation.

    d.  Unless the Director of the ADR Program approves otherwise, mediators who are invited to join the Court's panel will be expected to meet the following requirements to remain on the panel:

        i.  Membership in good standing of the bar of any United States District Court;

        ii.  Attending at least one continuing education program in mediation each year;

        iii.  Participating in ongoing assessment as determined by the Director of the ADR Program; and

        iv.  Mediating at least two cases per year.

    e.  All mediators are assumed available to accept cases unless the Mediation Office is notified otherwise. Mediators should notify the Mediation Office if they cannot accept cases for a discrete period of time by sending an e-mail to the Mediation Office with the start and end dates. The Mediation Office will automatically resume sending cases to the mediator on the date indicated by the mediator. Mediators who request not to receive cases indefinitely, and who are inactive for a period exceeding one year, will be presumed retired from the panel. Mediators who wish to return to active status after being inactive for more than one year shall write a letter of request to the Director of the ADR Program. Reinstatement to the panel is at the discretion of the Director of the ADR Program and will be based on the needs of the program at the time the request is received.

**17. Code of Conduct**

The code of conduct set forth herein applies in its entirety to every mediator who is on the panel of the Southern District of New York. While mediators come from various professional

backgrounds and may have been exposed to differing mediation theories, every mediator for the Southern District of New York must adhere to this code of conduct at a minimum.

a. As representatives of the Southern District of New York, mediators should at all times be professional, respectful, and measured in their communication with attorneys for parties, *pro se* parties, and the Mediation Office.

b. Mediators should understand and clearly convey that they are not decision-makers but facilitators of the decision-making of the parties. They may choose to meet with parties separate from their attorneys, or with attorneys separate from the parties. Mediators should ensure that participants in mediation understand that the role of the mediator is that of a neutral intermediary, not that of an advocate or representative for any party. A mediator should not offer legal advice to a party. If a mediator offers an evaluation of a party's position or of the likely outcome in court, or offers a recommendation with regard to settlement, the mediator should ensure that the parties understand that the mediator is not acting as an attorney for any party; is not providing legal advice; and is not speaking for the Court or any judge.

c. Mediators should provide the same quality of service as they would for paying clients, or should request that the case be reassigned if they cannot do so.

d. Mediators shall not work as consultants or attorneys in any pending or future action relating to any dispute in which they served as mediators, including actions between persons not parties to the mediation process.

e. Mediators shall not solicit or accept payment for any aspect of any case undertaken as a panel mediator.

f. Mediators should be familiar with, and at all times uphold, the values of the Model Standards of Conduct for Mediators, particularly Standard VI.

g. This code of conduct also applies to prospective panel mediators undertaking observation or co-mediation, to observers, and to anyone else who has access to a mediation under the auspices of the Program.

## 18. Complaints about Mediators: Investigation/Remediation

The following protocol is observed whenever the Mediation Office receives a complaint about a mediator.

a. The Director of the ADR Program will begin by gathering information from relevant parties, attorneys for parties, and other relevant Court personnel or observers. The

Director of the ADR Program will then contact the mediator in question to discuss the complaint or concern directly. This may be a phone call or an in-person meeting, depending on convenience and the nature of the complaint. In most cases, the issue will be considered sufficiently addressed after a discussion with the mediator.

b. If the complaint is serious, or if the particular complaint is part of a pattern, the Director of the ADR Program and the mediator may explore options for correction. A plan will be determined on a case-by-case basis, and might include being observed or observing cases, attending relevant training, co-mediating, or participating in simulated mediations. It is possible that a mediator will be suspended from mediating during the remedial period. The situation will be reassessed after the determined course of action is completed.

c. If a mediator chooses not to participate in the remedial process, he or she will be choosing to discontinue serving as a panel mediator.

d. If similar or other complaints persist after the remedial period, the mediator and the Director of the ADR Program may discuss options for additional remedial work or the mediator may be removed from the panel (section 20(d)).

## 19. Complaints About the Mediation Program or Director

a. Complaints by a mediator or mediation participant about Mediation Program staff or protocols should be made to the Director of the ADR Program. If the complaint is not satisfactorily resolved, the mediator or participants may contact the Chair of the Mediation Services Committee.

b. Complaints about the Director of the ADR Program should be made to the Chair of the Mediation Services Committee.

## 20. Resignation or Removal from the Mediation Panel

Mediators may resign from the mediation panel at any time by notifying the Mediation Office. The Director of the ADR Program may remove mediators from the mediation panel for:

a. Failing to meet the requirements of section (17)(d); or

b. Violating the Code of Conduct set forth in section (18); or

c. Violating any other Procedures promulgated by the Mediation Program; or

d.  Based on complaints, observations, or communications with counsel, parties, or the Mediation Program, that indicate that a mediator is no longer mediating in a way that is appropriate for the Mediation Program or that resources are not available to provide sufficient training or support to enhance the quality of a mediator's practice.

## 21. Immunity

Any person designated to serve as a mediator pursuant to these Procedures shall be immune from suit based upon actions engaged in or omission made while performing the duties of a mediator.



**Mediation Confidentiality Agreement**

Parties, counsel for the Parties, any observers, and the mediator agree as follows:

a.   Any communications made exclusively during or for the mediation process shall be confidential except as to the provisions indicated in this agreement. The mediator shall not disclose any information about the mediation process, communications, or participants to anyone except for Mediation Office staff. Mediation Office staff must also maintain confidentiality except as to the provisions indicated in this section. Administrative aspects of the mediation process, including the assignment of a mediator, scheduling and holding of sessions, and a final report that the case has concluded or not concluded through mediation, or that parties failed to participate, are not confidential and will appear on the docket of the case.

b.   The parties may not disclose discussions or other communications with the mediator unless all parties agree, because it is required by law, or because otherwise confidential communications are relevant to a complaint against a mediator or the Mediation Program arising out of the mediation. The parties may agree to disclose information provided or obtained during mediation to the Court while engaged in further settlement negotiations with a District or Magistrate Judge. The parties may disclose the terms of settlement if either party seeks to enforce those terms.

c.   Documents and information otherwise discoverable under the Federal Rules of Civil Procedure shall not be shielded from discovery merely because they are submitted or referred to in the mediation.

d.   The mediator shall not be inquired of or called as a witness or deponent in any proceeding related to the dispute in which the mediator served, or be compelled to produce documents that the mediator received or prepared for mediation.

The undersigned have read and agree to comply with this agreement.

Dated:

Plaintiff(s): _____          Defendant(s): _____

Attorney(s) for Plaintiff(s):_____          Attorney(s) for Defendant(s):_____

Mediator:_____          Observer(s):_____