**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR USHERSON, | |
| Plaintiff, | |
| v. | Docket No. 1:19-cv-6368 (JMF) |
| BANDSHELL ARTIST MANAGEMENT, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF BANDSHELL ARTIST**
**MANAGEMENT'S MOTION FOR SECURITY FOR COSTS AND FEES**

MCGUIREWOODS LLP
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell*
*Artist Management*

i

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................. 1

**FACTUAL BACKGROUND** .................................................................................... 2

**ARGUMENT** .......................................................................................................... 5

   **I. THE COURT SHOULD ORDER USHERSON TO SHOW WHY HE SHOULD NOT BE REQUIRED TO POST SECURITY FOR COSTS** ........................................ 5

     **a.**   **Plaintiff's Claim Lacks Merit Considering Defendant's Fair Use Defense** ............. 6

     **b.**   **Plaintiff's Claim Lacks Merit because Plaintiff does Not Hold Copyright Rights in the Pre-1989 Photograph Published Without Copyright Notice** ............................. 8

     **c.**   **Plaintiff's Claim Lacks Merit Because the Registrations He Claims for this Photograph Is Likely Invalid.** ...................................................................... 9

     **d.**   **Plaintiff will Likely Be Required to Pay Defendant's Costs and Attorney's Fees** . 11

     **e.**   **The Facts in This Case Are Consistent with This Court's Precedent Requiring Plaintiff's Counsel's Clients to Post a Bond** ............................................... 13

     **f.**   **A Bond as Security for at Least $100,000 for Expected Costs and Attorney's Fees Is Appropriate** ...................................................................................... 14

**CONCLUSION** ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Urban Outfitters, Inc.*, ...................................................................... 11
431 F. Supp. 2d 351 (S.D.N.Y. 2006)

*Baker v. Urban Outfitters, Inc.*, ................................................................. 5, 11
2004 WL 2546805, (S.D.N.Y. Nov. 10, 2004), *aff'd*, 249 F. App'x 845 (2d Cir. 2007)

*Consumers Union of United Stats, Inc. v. General Signal Corp.* .................................. 7
724 F.2d 1044 (2d Cir. 1983)

*Cruz v. Am. Broad. Cos.* ............................................................................ 5, 14
2017 WL 5665657 (S.D.N.Y. Nov. 17, 2017)

*Determined Productions, Inc. v. Koster* ............................................................... 9
1993 WL 120463 (N.D. Cal. April 3, 1993)

*Diamond Star Bldg. Corp. v. Freed* ................................................................. 11
30 F.3d 503 (4th Cir. 1994)

*E. Mishan & Sons, Inc. v. Marycana, Inc.* ........................................................... 8
662 F.Supp. 1339 (S.D.N.Y. 1987)

*Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.* ........................................ 9
896 F.Supp.2d 223 (S.D.N.Y. 2012)

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC* ...................................... 10
139 S. Ct. 881 (2019)

*Garcia-Goyco v. Law Envtl. Consultants, Inc.* ..................................................... 11
428 F.3d 14 (1st Cir. 2005)

*Hustler Magazine Inc. v. Moral Majority Inc.* ....................................................... 7
796 F.2d 1148 (9th Cir. 1986)

*Izmo, Inc. v. Roadster, Inc.* ......................................................................... 10
2019 WL 2359228 (N.D. Cal. June 4, 2019)

*Kanongataa v. Am. Broad. Companies, Inc.* ....................................................... 5, 14
2017 WL 4776981 (S.D.N.Y. Oct. 4, 2017)

*Kensington Int'l Ltd. v. Republic of Congo.* ......................................................... 6
2005 WL 646086 (S.D.N.Y. Mar. 21, 2005)

*Latin American Music Co., Inc. v. Spanish Broadcasting System, Inc.* .......................... 12
232 F.Supp.3d 384 (S.D.N.Y. 2003)

*Mai Larsen Designs v. Want2Scrap, LLC* ........................................................ 11
2019 WL 2343019 (W.D. Tex. June 3, 2019)

*Mailer v. RKO Teleradio Pictures, Inc.* ........................................................ 11
332 F.2d 747 (2d Cir. 1964)

*Malibu Media, LLC v. Doe,* ........................................................ 10
2019 WL 1454316 (S.D.N.Y. Apr. 2, 2019)

*Maljack Prods. v. Goodtimes Home Video Corp.,* ........................................................ 11
81 F.3d 881 (9th Cir. 1996)

*Mango v. Democracy Now! Productions, Inc.,* ........................................................ 12, 14
2019 WL 3325842 (S.D.N.Y. July 24, 2019)

*Marek v. Chesny* ........................................................ 12
473 U.S. 1 (1985)

*Martha Graham Sch. & Dance Found, Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*
........................................................ 8
380 F.3d 624 (2d Cir. 2004)

*New York Ass'n for Retarded Children, Inc. v. Carey* ........................................................ 15
711 F.2d 1136 (2d Cir. 1983)

*Rice v. Musee Lingerie, LLC* ........................................................ 12, 14
2019 WL 2865210 (S.D.N.Y. July 3, 2019)

*Saxon v. Zirkle* ........................................................ 15
97 A.3d 568 (D.C. 2014)

*Wright v. Warner Books, Inc.,* ........................................................ 6
953 F.2d 731 (2d Cir. 1991)

*Shapiro, Bernstein & Co., Inc. v. Jerry Vogel Music Co., Inc.* ........................................................ 8
161 F.2d 406 (2d Cir. 1946)

*Trifari, Krussman & Fishel, Inc. v. Charel Co.* ........................................................ 8
134 F.Supp. 551 (S.D.N.Y. 1955)

*Vargas v. Pfizer, Inc.,* ........................................................ 15
352 Fed.Appx. 458 (2d. Cir. 2009)

*Warner Bros. Enter. v. RDR Books* ........................................................ 7
575 F.Supp.2d 513 (S.D.N.Y. 2008)

iv

*Wright v. Warner Books, Inc.,* ............................................................................................. 6
748 F.Supp. 105 (S.D.N.Y. 1990)


**Other Authorities**
United States Copyright Office, *Compendium of Office Practices II* § 904(5) ............................ 10


**Statutes**
17 U.S.C. § 107 ....................................................................................................................... 6

17 U.S.C. § 24 (repealed) ........................................................................................................ 8

17 U.S.C. § 504 ...................................................................................................................... 12

17 U.S.C. § 504(c)(2) .............................................................................................................. 12

17 U.S.C. § 505 ...................................................................................................................... 11

Fed. R. Civ. P. § 68 ................................................................................................................ 12


**Local Rules of the United States District Courts for the Southern and Eastern Districts of New York**
Local Civil Rule 54.2 ......................................................................................................... 5, 14, 15


**Treatises**
*Nimmer on Copyrights* § 7.10[B] ............................................................................................ 8

*Nimmer on Copyrights* § 7.02[C][2] ....................................................................................... 8

Defendant Bandshell Artist Management ("Bandshell") submits this Memorandum in support of its Motion to require Plaintiff Arthur Usherson ("Plaintiff" or "Usherson") to post a bond as security for Defendant's costs and fees.

## PRELIMINARY STATEMENT

Bandshell is being forced to defend a case where it is highly likely that Plaintiff does not own copyright rights in the photograph in question, and where the facts not only create an obvious fair use defense, but make Bandshell eligible for the $200 statutory minimum should it actually be found liable.  Furthermore, Bandshell already served a Rule 68 Offer of Judgment for $800 in this case, which was not accepted by Plaintiff.

This Court would already have discretion to award fees and costs if Defendant wins this case outright, but the law of this Circuit states that, once a Rule 68 Offer of Judgment is served and not accepted, fees and costs are *mandated* if either Defendant wins outright or the eventual judgment is not more than the Rule 68 offer.

Bandshell's attorneys have already invested well over $50,000 of attorney time,[1] and close to $2,000 in costs.[2]  There are likely to be two depositions in this case, the exchange of discovery, potential hearings and conferences, and a summary judgment motion.  As such, it is reasonable to expect that Defendant's fees and costs will exceed $100,000.  Given the likelihood

---

[1] While this case is being handled pro bono, as discussed below, the law states that pro bono representation does not take away a party's entitlement to payment of attorneys' fees (although, for full disclosure, McGuireWoods' typical practice on a pro bono matter is to donate such fees to charity).

[2] The bulk of the attorney time has been on the failed mediation and the sanctions motion related to Mr. Usherson and Mr. Liebowitz's failure to attend that mediation.  Additionally, among other things, there has been a court conference, an answer and amended answer, initial disclosures, research, the draft of discovery, and discussions between parties' counsel.  Costs have included two trips to New York, a hearing transcript, and the ordering of certified copies of the deposit copies for the copyright registration at issue in this case.

of a costs and fees award to Defendant, and since it is unclear that Mr. Usherson will have the ability to pay such an award, Plaintiff should have to post a bond as security for Defendant's costs and fees to be able to continue with this case.

## FACTUAL BACKGROUND

### A. The Photograph and Commencement of Litigation

This lawsuit centers on a  photograph of David Bromberg, Leon Redbone, and Bob Dylan together at the Mariposa Folk Festival in 1972 (the "Photograph"). Each of these musicians is well known and respected within the American music community. Through their careers in the same musical genre, Mr. Redbone and Mr. Bromberg developed a decades-long friendship. Declaration of Mark J. McKenna ¶ 5 ("McKenna Decl."). In May of 2019, Mr. Redbone died. *Id.* ¶ 6. Mr. Bromberg has a personal, informational Facebook page for his band—he does not have a separate one for himself. *Id.* ¶¶ 2–3.  Bandshell, which represents Mr. Bromberg and administers his Facebook page (although Bandshell is not paid separately for this endeavor), placed a heartfelt Rest in Peace message to Mr. Redbone on the David Bromberg Quintet & Band Facebook page. *Id.* ¶ 6. This post included a cropped version of the Photograph taken from Mr. Redbone's Facebook profile where it appeared as the cover photograph for Redbone's page. *Id.* ¶¶ 6–7. The picture, which to illustrate what Mr. Bromberg and Mr. Redbone meant to each other, was a picture of Bromberg, and Redbone, and Bob Dylan from the Mariposa Folk Festival in 1972.  *Id.* ¶ 7. Bandshell's post included the simple message "a clarinet solo please, in honor of Leon Redbone who departed today for that celestial shore…." *Id.* ¶ 6.  There was no commercial purpose behind the Rest in Peace post, and the Photograph was not sold in any way, nor used to sell anything.  *Id.* ¶ 12.

In July of 2019, Usherson, the photographer who took the Photograph, filed a complaint against Bandshell. Dkt. 1. In his suit, Usherson alleged that the Rest in Peace post infringed on his copyright in the Photograph.  That is the entirety of the supposedly illegal action taken by Bandshell.

### B.  Service, Settlement Discussion and Rule 68 Offer of Judgment

In July, 2019, just after the case was filed, Usherson's counsel contacted Mark McKenna, the owner and sole employee of Bandshell. McKenna Decl. ¶ 9. He demanded a large sum of money from Bandshell. *Id.* ¶ 10. Bandshell could not pay this and could not believe the demand being made for a Rest in Peace Facebook post made for a long-time close friend of Mr. Bromberg.  *Id.* Thereafter, on September 5, 2019, Bandshell was served, and then retained *pro bono* counsel. *Id.* ¶ 11.

Defendant's counsel requested that Plaintiff comply with the Court Order to provide licensing information regarding the Photograph, and Plaintiff's counsel responded (and has since re-stated) that Plaintiff has never licensed the Photograph. Declaration of Brad R. Newberg ¶ 5, Ex. 1 ("Newberg Decl."). As Defendant has further never profited off of the Photograph, McKenna Decl. ¶ 12, even if Plaintiff were to win on liability, it is only eligible for statutory damages.

Despite this, when Plaintiff's and Defendant's counsels conferred, Plaintiff's counsel repeated the same demand and rejected Defendant's own offers. Newberg Decl. ¶ 6.  In face of this repeated large demand, and believing it had a strong fair use defense (and before knowing of its defenses regarding Usherson's likely lack of copyright rights), Bandshell extended a Rule 68 Offer of Judgment for $800 on September 26, 2019. Newberg Decl. ¶ 7, Ex. 3. Plaintiff's counsel

ignored this offer, thereby rejecting it under the Rules and triggering Rule 68's cost reimbursement provisions. *Id.*

### C. Investigation Reveals Usherson Likely Lacks Copyright Rights And/Or Does Not Have a Proper Registration

There are multiple defects that would stop Usherson from being able to bring this lawsuit against Bandshell at all: (1) Because this is a photograph from 1972, if it was published before 1989 without the proper copyright notice, the Photograph is in the public domain and Usherson can hold no copyright rights in it; (2) Usherson claims a 2011 registration for this Photograph. The registration says it is for over 2000 "unpublished photographs."[3]  One cannot register a published photograph as part of an unpublished photograph registration.  If this Photograph were published at any point before the 2011 registration, Plaintiff's registration would likely be invalid and his case must be dismissed; and, (3) An attempt to register any published work as part of an unregistered photograph collection renders the entire registration invalid, meaning the registration would also likely be invalid if any of the other 2000+ photographs in the registration had been published.

After serving its Rule 68 Offer of Judgment, Defendant redoubled its investigative efforts into Plaintiff's claims, especially given that the Photograph on the Redbone Facebook profile had no copyright information at all. McKenna Decl. ¶ 8.  Among other places, Defendant's counsel was able to find the Photograph (again without any copyright information) on Internet message

---

[3] Plaintiff allegedly registered the Photograph as part of a set of "unpublished" photographs in 2011 under the registration number VAu001080046 (the "2011 Registration"). Dkt. 1. On August 22, 2019 (well after this Complaint was filed), Plaintiff appears to have registered (again as supposedly unpublished photographs) a collection of July 16 photographs from the 1972 Mariposa Folk Festival (the "2019 Registration").  It is unclear why Plaintiff did this, but should it be because this new registration is actually the only potential registration for the Photograph in question, this case must be dismissed because one cannot file or even amend a lawsuit based on a registration filed after the lawsuit was filed.

boards from 2004. Newberg Decl. ¶ 9, Ex. 4. The picture also appears on Plaintiff's website in a section for "**Published Works**," (emphasis added), showing the work published in a **1973** issue of *Touch* magazine. Newberg Decl. ¶ 10 Ex. 5.  As such, the Photograph has **clearly been published beyond any doubt.**  Furthermore, even in that magazine, the photograph did not contain a proper notice and the page in the magazine simply said "Art Usherson."  *Id.*

## ARGUMENT

Bandshell asks for a bond as security for costs and fees under Local Civil Rule 54.2.

### I.      THE COURT SHOULD ORDER USHERSON TO SHOW WHY HE SHOULD NOT BE REQUIRED TO POST SECURITY FOR COSTS

Under Rule 54.2, the Court "on motion or its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." *Cruz v. Am. Broad. Cos.*, No. 17-cv-8794 (LAK), 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017); *Kanongataa v. Am. Broad. Companies, Inc.*, No. 16-cv-7382 (LAK), 2017 WL 4776981, at *2 (S.D.N.Y. Oct. 4, 2017); *see also Baker v. Urban Outfitters, Inc.*, No. 01-cv-5440 (LAP), 2004 WL 2546805, at *2 (S.D.N.Y. Nov. 10, 2004), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).  These costs may "include defendant's attorneys' fees, as Section 505 of the Copyright Act permits a prevailing defendant to recover its reasonable attorneys' fees." *Cruz*, 2017 WL 5665657, at *1.

In determining whether a bond is warranted, Courts look to "the financial condition and ability to pay of the party at issue; whether that party is a non-resident or foreign corporation; the merits of the underlying claims; the extent and scope of discovery; the legal costs expected to be incurred; and compliance with past court orders." *Cruz*, 2017 WL 5665657, at *1 (quoting *Selleti v. Carey*, 173 F.R.D. 96, 100–01 (S.D.N.Y. 1997), *aff'd in relevant part by* 173 F.3d 104, 111

(2d Cir. 1999)). Courts need not consider all factors depending on the facts of the case at hand. *Kensington Int'l Ltd. v. Republic of Congo*, No. 03-cv-04578 (LAP), 2005 WL 646086, at *1 (S.D.N.Y. Mar. 21, 2005).

Defendant's strong fair use defense, the absence of Copyright notice from the pre-1989 work at issue, defects in Usherson's registration including the attempt to register published works as unpublished, Defendant's Rule 68 Offer of Judgment, and Usherson and his counsel's lack of regard for prior Court Orders all strongly indicate that this Court will inevitably order Usherson to pay Defendant's costs and fees. The Court should order Usherson to explain to this Court why he should not have to post a bond for security before proceeding with his claim, as this district has done in many similar cases.

### a. Plaintiff's Claim Lacks Merit Considering Defendant's Fair Use Defense

First, Defendant is likely to prevail based on a strong fair use defense.[4] The four-factor test for the fair use defense to copyright infringement is:

"(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."

17 U.S.C. § 107. Courts examine the factors based on a totality of the circumstances, and no one factor is determinative. *See Wright v. Warner Books, Inc.*, 953 F.2d 731, 740 (2d Cir. 1991). Where a person copies a work for a transformative or "for informational, rather than creative purposes," the first factor supports fair use. *Wright v. Warner Books*, *Inc.,* 748 F.Supp. 105, 109

---

[4] Defendant is putting forth its likely meritorious defenses with enough detail so that the Court can decide its bond Motion.  However, more legal argument would be put into a summary judgment motion, which has a higher standard of proof, and would also have the benefit of full discovery.

(S.D.N.Y. 1990) (*affirmed*) (citing *Consumers Union of United Stats, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983)). Where the secondary user uses only enough of the underlying work as is necessary for their purposes, the third factor likewise militates towards fair use. *See, e.g.*, *Warner Bros. Enter. v. RDR Books*, 575 F.Supp.2d 513, 545 (S.D.N.Y. 2008). Finally, to determine market harm, "courts have focused on whether the infringing use: (1) tends to diminish or prejudice the potential sale of the work; or (2) tends to interfere with the marketability of the work; or (3) fulfills the demand for the original work." *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986) (internal citations and quotations omitted).

Defendant Bandshell's use of the Photograph is a quintessential fair use. In taking Redbone's cover photograph (which actually shows Bromberg and Redbone together) and using it for a Rest in Peace message from Bromberg to Redbone, Defendant used the photograph not for its creative content but to show that Bromberg and Redbone had a 50-year friendship and to convey Bromberg's feelings for Redbone. It also showed that Redbone likewise cared about Bromberg given that Redbone chose to display his connection to Bromberg by using the photograph as his profile cover photograph.  Furthermore, it is not as if Bandshell had to search to find the perfect photograph.  The Rest in Peace post was a Facebook post.  It is natural that in referring to someone on Facebook, one would use the photograph from that person's Facebook profile.

In addition, there was clearly no commercial purpose behind this touching Rest in Peace post.  The photograph was not sold in any way, nor was it used to sell anything.  Defendant further used only the amount of the photograph necessary for his tribute, as the photo was cropped to contain only the central figures of Redbone, Dylan, and Bromberg. Finally, there is

simply no possible way this low-resolution cropped post on a Facebook page could usurp the market for the Photograph. And, Plaintiff has claimed he has never licensed the photograph in its almost 50-year existence, so there is no licensing market for Defendant's use of the Photograph to harm. It is equally unlikely that anyone would see a cropped photograph (a photograph which was already on Leon Redbone's profile page and various other places on the Internet) on someone's Facebook tribute to a departed friend and think "well, now I never need to buy that photograph."

### b. Plaintiff's Claim Lacks Merit because Plaintiff does Not Hold Copyright Rights in the Pre-1989 Photograph Published Without Copyright Notice

Works published before 1989 required statutory notice at publication, or they became public domain. *See Martha Graham Sch. & Dance Found, Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 647 n.14 (2d Cir. 2004); *see also Nimmer on Copyrights* § 7.02[C][2]; *see also* 17 U.S.C. § 24 (repealed).  Up until 1978, the form of notice required on photographs was thus: "The form of the notice . . . shall consist either of the word 'Copyright,' the abbreviation 'Copr.,' or the symbol, accompanied by the name of the copyright proprietor." *Coventry Ware, Inc. v. Reliance Picture Frame Co.*, 288 F.2d 193, 194 (2d Cir. 1961) (quoting 17 U.S.C. § 1 (repealed)). The statutory notice must be "so located . . . as to apprise anyone seeking to copy the article, of the existence of the copyright." *Trifari, Krussman & Fishel, Inc. v. Charel Co.,* 134 F.Supp. 551, 554 (S.D.N.Y. 1955) (citing *Shapiro, Bernstein & Co., Inc. v. Jerry Vogel Music Co., Inc.* 161 F.2d 406 (2d Cir. 1946); *see also Nimmer* at § 7.10[B] (likening the 1909 notice location standard to the "reasonable notice" standard of the current Copyright Act).  From 1978 to 1989, the following notice was required for photographs: the name of the copyright owner, word "copyright" or an acceptable substitute, and the year of publication.  *See, e.g., E. Mishan & Sons, Inc. v. Marycana, Inc.*, 662 F.Supp. 1339, 1343

(S.D.N.Y. 1987). Plaintiff's Photograph did not contain the required notice in its 1973 publication and there is no evidence that it contained the required notice in any publications through 1989, not that such notice could save Plaintiff's Photograph from the public domain it fell into no later than 1973.

At the November 14, Court conference, Plaintiff's counsel referred to the Photograph as "iconic." Newberg Decl. ¶ 12, Ex. 7. Plaintiff will have a difficult time arguing that this Photograph is both "iconic" and that it has never been published. *Id.* In fact, the Photograph appears published in the February 1973 issue of *Touch* magazine (listed in the "Published Works" section of Plaintiff's own website no less). Newberg Decl. ¶ 10, Ex. 5. There is no notice that is part of the photograph, and the only reference at all in the magazine is outside the photograph, where it says "Art Usherson," which is deficient without any reference to copyright. *Id.* Images showing Plaintiff's works published during this time with no effective copyright notice litter Plaintiff's website—it seems it was Usherson's routine practice. Newberg Decl. ¶ 11, Ex. 6. If Usherson's notice was deficient when he published this Photograph, he has no copyright rights in the Photograph, plain and simple. The available evidence supports, and discovery will likely further vindicate the position that Usherson holds absolutely no rights in the Photograph.

### c. Plaintiff's Claim Lacks Merit Because the Registrations He Claims for this Photograph Is Likely Invalid.

If, as Plaintiff contends, the 2011 Registration (which supposedly covers over 2000 photographs) encompasses the Photograph, or *any* published photograph, it is likely invalid. *Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.*, 896 F.Supp.2d 223, 232–36 (S.D.N.Y. 2012) (dismissing counterclaim based on a collection of "unpublished" fabric designs where the work at issue was, in fact, published); *see also Determined Productions, Inc. v. Koster*, No. C

92-1697 BAC, 1993 WL 120463, at *1 (N.D. Cal. April 3, 1993) ("Wrongly identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprives the court of jurisdiction over the copyright claim."); *see also* United States Copyright Office, *Compendium of Office Practices II* § 904(5) ("Where the applicant seeks registration as an unpublished work and provides the Office with a statement of facts which clearly show that publication has occurred, the Office will not register a claim to copyright in the work as unpublished").

To the extent Plaintiff argues that his subsequent 2019 Registration of the Photograph supports his claim where the 2011 Registration fails, that is impossible.  Most importantly, the 2019 Registration still claims that the photographs subject to the registration are "unpublished," making the registration likely invalid, as shown above.

Additionally, *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019) held that an actually issued copyright registration, and not even a pending application, is required to bring an infringement claim based on a work. Since *Fourth Estate*, this Court has found that allowing a plaintiff to amend its copyright claims once it has obtained a registration would "undermine Congress's choice to maintain registration as a prerequisite to suit." *Malibu Media, LLC v. Doe,* No. 18-CV-10956 (JMF), 2019 WL 1454316, at *2–3 (S.D.N.Y. Apr. 2, 2019) (addressing Supreme Court and Second Circuit precedent that one cannot cure a complaint where the necessary facts or requirements did not exist at the time of instituting the complaint); *see also Xclusive-Lee, Inc. v. Hadid*, 19-cv-520 (PKC) (CLP), 2019 WL 3281013, at *4 (E.D.N.Y. July 18, 2019) (quoting *Malibu Media*, and "declin[ing] to grant Plaintiff leave to amend the complaint to allege registration should its copyright application be approved in the future"); *Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092 (NC), 2019 WL 2359228,

at *2 (N.D. Cal. June 4, 2019); *Mai Larsen Designs v. Want2Scrap, LLC*, No. 17-cv-1084 (ESC),

2019 WL 2343019, at *6 (W.D. Tex. June 3, 2019).

### d.  Plaintiff will Likely Be Required to Pay Defendant's Costs and Attorneys' Fees

As an initial matter, copyright law provides the Court with discretion to award attorneys'

fees and costs to the prevailing party in a copyright infringement action.  17 U.S.C. § 505.

Courts have frequently awarded attorneys' fees and costs to prevailing defendants in copyright

infringement actions, particularly in cases where the plaintiff's claims were factually

unreasonable or where plaintiff acted in bad faith.  *See, e.g., Mailer v. RKO Teleradio Pictures,*

*Inc.*, 332 F.2d 747 (2d Cir. 1964) (awarding costs and fees where plaintiff's claim, although

"neither synthetic nor capricious," the claim was "unreasonable"); *Baker v. Urban Outfitters,*

*Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y. 2006) (equitable factors favored awarding fees as plaintiff

was improperly motivated and otherwise acted in bad faith in bringing copyright infringement

claim); *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503 (4th Cir. 1994) (awarding fees and costs

where defendant successfully defended against meritless claim); *Maljack Prods. v. Goodtimes*

*Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996) (awarding costs and fees where plaintiff's claims

were factually unreasonable); *Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14 (1st

Cir. 2005) (bad faith finding not required to award fees; fees were justified as plaintiffs lacked a

colorable federal claim).

Moreover, Defendant's Rule 68 Offer of Judgment in this case in fact expands the

discretion provided for in copyright law to award Defendant its attorneys' fees and costs into a

mandate.  This mandate operates not only if Defendant wins outright, but also if Plaintiff wins

but recovers a judgment of $800 or less (the amount of Defendant's Rule 68 Offer of Judgment).

Federal Rule of Civil Procedure 68 allows a defendant to make an offer, and "if the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. § 68; *see also Lyons v. Cunningham*, 583 F. Supp. 1147, 1154 (S.D.N.Y. 1983) ("Rule 68 plainly requires that if the final judgment obtained is less favorable than defendants' offer of judgment, plaintiffs must 'pay the costs incurred after making that offer.'"). "[W]here the underlying statute defines 'costs' to include attorney's fees as 'costs' available to a prevailing plaintiff . . . such fees are subject to the cost-shifting provision of Rule 68." *E.g. Marek v. Chesny*, 473 U.S. 1, 2 (1985); *see also Mango v. Democracy Now! Productions, Inc.*, No. 18-cv-10588 (DLC), 2019 WL 3325842, at *4 (S.D.N.Y. July 24, 2019) (including attorney's fees in Rule 68 costs in a copyright case involving Plaintiff's counsel); *see also Rice v. Musee Lingerie, LLC,* No 18-cv-9130 (AJN), 2019 WL 2865210, at *3 (S.D.N.Y. July 3, 2019) (including attorney's fees in Rule 68 offer against Plaintiff's counsel in a copyright case); *see also Baker*, 2004 WL 2546805, at *2 (including attorney's fees in Rule 68 offer in a copyright case)

As there is no potential lost licensing fee here or any profits of Bandshell, even if Plaintiff had a valid registration and were to prevail, he would be limited to statutory damages. 17 U.S.C. § 504. The presumptive minimum amount of statutory damages is $750, but drops to $200 dollars in the case of innocent infringement. *Id.*; *see also, e.g. Latin American Music Co., Inc. v. Spanish Broadcasting System, Inc.*, 232 F.Supp.3d 384, 392–93  (S.D.N.Y. 2003).

Copyright infringement is "innocent" when the infringer was "not aware and had no reason to believe that his or her acts constituted an infringement of copyright."  17 U.S.C. § 504(c)(2).  For example, in *Warner Bros. v. Dae Rim Trading, Inc.*, Warner Brothers brought claims against a small shop owner for selling dolls that imitated characters from the *Gremlins*

movie. 677 F. Supp. 740, 747, 764 (S.D.N.Y. 1988). Defendant conceded infringement, but argued that her infringement was innocent. *Id*. at 773. In finding the defendant's infringement innocent, the court found that she spoke little English, did not see movies, and did not know the dolls were movie characters. *Id*. at 763. The court further that the plaintiff had "persistently and aggressively prosecuted" its infringement case, despite the fact that the defendant "at no time caused any damages whatever" to plaintiff. *Id*. at 745. As a result, the court awarded minimal statutory damages of $100 (the minimum award at the time), with no award of costs or fees to plaintiff. *Id*. at 746.

Here, if Plaintiff is awarded any amount, an unlikely scenario, Defendant's $800 Rule 68 Offer of Judgment will likely exceed it. As the Court Noted in the November 14 Conference, the potential for damages here is quite small and likely to be at or about the minimum of the statutory range. *See* Newberg Decl. ¶ 13, Ex. 7. Plaintiff has suffered no damages. Plaintiff has not lost any licensing fees, and Bandshell did not earn any profits from its use of the Photograph. Further, there is hardly a more innocent infringer than one who re-posts a cropped version of the cover photograph (containing no copyright notice) from the Facebook page of a recently deceased friend that had no copyright notice or information whatsoever for a Rest in Peace message. Bandshell had no reason to believe its Rest in Peace message constituted copyright infringement. Whether the statutory minimum is $750 or the more likely $200, in either scenario, Defendant's Rule 68 offer of $800 will exceed Plaintiff's recovery, and he will be mandated to pay costs, including attorney's fees.

### e. The Facts in This Case Are Consistent with This Court's Precedent Requiring Plaintiff's Counsel's Clients to Post a Bond

This District has previously required Plaintiff's counsel's clients to show cause why they should not be required to post a bond to continue its case on multiple occasions.

Plaintiff's counsel was before this Court in *Sands v. Bauer Media Group USA, LLC*, where the Court ordered the plaintiff to show cause why it should not be required to post a $50,000 bond. *Id.* No. 17-cv-0215 (LAK), 2019 WL 4464672, at *7 (S.D.N.Y. Sept. 18, 2019). There, as here, Plaintiff's counsel had failed to comply with prior Court Orders, which was a factor in that decision and should be taken into consideration here.

This Court also ordered Plaintiff's counsel's client in *Cruz v. Am. Broad. Cos.* to show cause as to why he should not be required to post security where "there seem[ed] a reasonable possibility that [the defendant] will prevail on a fair use defense, and, moreover that it would be entitled to recover costs, including attorney's fees, in that event." 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017), at *2. Here, Defendant has more than a "reasonable possibility" of prevailing not only on its fair use defense, but also on the grounds that Plaintiff holds no rights in the Photograph.

Two more cases involving clients of Plaintiff's counsel with similar claims are the *Rice* and *Mango* cases cited above, where this Court ordered plaintiffs, again represented by Plaintiff's counsel, to post a bond because the defendant would likely recover costs and attorney's fees either because of an outright victory or a judgment less than a Rule 68 Offer of Judgment. *See Rice*, 2019 WL 2865210, at *3; *see also Mango*, 2019 WL 3325842, at *4. Plaintiff should be required to post a bond in this very similar matter.

### f.  A Bond as Security for at Least $100,000 for Expected Costs and Attorney's Fees Is Appropriate

A Rule 54.2 bond amount is in the discretion of the trial court. *See Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, No. 06-cv-3085 (KMW), 2008 WL 2876508, at *4 (S.D.N.Y. July 21, 2008); *see also Kanongataa,* 2017 WL 4776981, at *3. As described above, Defendant's costs and attorney's fees in this action are already well in excess of $50,000 (the vast majority of

the fees incurred after the Rule 68 Offer of Judgment was issued), and it is reasonable to expect that Defendant's total fees and costs will exceed $100,000.[5]  Given the likelihood of a costs and fees award to Defendant, and since it is unclear that Mr. Usherson will have the ability to pay such an award, Plaintiff should have to post a bond as security for Defendant's costs and fees to be able to continue with this case.

Although Defendant is being represented *pro bono*, the general rule is that attorney's fees are recoverable even where an attorney is representing their client on a *pro bono* basis. *See Vargas v. Pfizer, Inc.*, 352 Fed.Appx. 458 (2d. Cir. 2009) (upholding the lower court's fee award based in part on attorneys' fees from *pro bono* counsel in a copyright claim); *see also New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983) (awarding attorney's fees where a civil rights claimant was represented pro bono); *see also Saxon v. Zirkle*, 97 A.3d 568, 576–77 (D.C. 2014) (awarding attorney's fees sanctions in spite of pro bono representation by guardians ad litem). Defendant's counsel's representation of Bandshell on a *pro bono* basis should be of no consequence.

## CONCLUSION

Based on the above, Defendant respectfully asks the Court to require Usherson to show cause why he should not have to post a bond under Local Civil Rule 54.2 in the amount of $100,000 as security for Defendant's attorneys' fees and costs.

---

[5] The partner on this case, Brad Newberg has a 2018 standard rate of $855. The associate, Michael Shafer, has a 2018 standard rate of $ 435. It can be assumed that given the extensive work done already done and the amount of work remaining, there will be at least 100 hours of work billed for each attorney through the end of this case.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing Memorandum of Law in Support of Motion for Security for Costs and Fees with the Clerk of the Court using the CM/ECF system on this 27th day of November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 27, 2019

<div style="margin-left: 50%;">

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

</div>

16