**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARTHUR USHERSON,** | |
| **Plaintiff,** | |
| **v.** | **Docket No. 1:19-cv-6368 (JMF)** |
| **BANDSHELL ARTIST MANAGEMENT,** | |
| **Defendant.** | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SANCTIONS**

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist*
*Management*

## <u>TABLE OF CONTENTS</u>

I.   PLAINTIFF'S AND PLAINTIFF'S COUNSEL'S FAILURE TO ATTEND THE
MEDIATION...................................................................................................... 1

II.  DEFENDANT'S ALLEGED 'BAD FAITH' OFFER .................................... 7

III. DEFENDANT'S COUNSEL'S REASONABLE RATE AND HOURS....................... 9

IV.  PLAINTIFF VIOLATED THE COURT'S JULY 15 ORDERS ................................ 10

V.   THE COURT'S REQUEST RELATED TO A POSSIBLE EVIDENTIARY
HEARING ................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Mantel v. Smash.com, Inc.* ........................................................................................... 9
No. 6:19-cv-06113 (FPG)

*Pyatt v. Raymond* ......................................................................................................... 9
2012 WL 1668248 (S.D.N.Y. May 10, 2012)

*Wisser v. Vox Media* .................................................................................................... 1
19-cv-1445 (LGS)

**Procedures of The Mediation Program for the United States District Court of the Southern District of New York**

Section 9 ........................................................................................................................ 2

Section 9(a) ................................................................................................................ 1, 6

Section 9(c) ................................................................................................................ 1, 2

Plaintiff's Response is filled with falsehoods, some demonstrably false from the record, and which would not protect Plaintiff and his counsel, even if true. Plaintiff's Response shows that his counsel has not learned from any of the prior sanctions and contempt orders against him. He once again refuses to follow Court Orders and directions and refuses to take responsibility for his actions. ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████ [1]

Here, Plaintiff's counsel decides to ignore the crux of the sanctions motion (as well as the Court's explicit Order to discuss whether an evidentiary hearing is needed and what form it would take), ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

## I. PLAINTIFF'S AND PLAINTIFF'S COUNSEL'S FAILURE TO ATTEND THE MEDIATION

Defendant went through the history of this Court's Orders and the mediation in its initial papers. Defendant refers the Court there and will be brief in reiterating the main points.

- This Court Ordered the Parties to have an early mediation in accordance with the Local Rule and the Mediation Procedures of this Court.

- The Local Rule and the Procedures it adopts require mediations to have the in-person presence of the parties and have them be "accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter." Section 9(a), (c).

---

[1] *See, e.g.*, *Wisser v. Vox Media*, 19-cv-1445 (LGS) (Dkt. 45, at 2, 24) (last month, when faced with a claim that he forged his client's signature on Interrogatory responses never seen by his client, Mr. Liebowitz responded that the sanctions motion was "frivolous" and fueled by a bad faith "blood lust" for sanctions).

- While there is *no procedure by which lead counsel can avoid this obligation* (*see* Section 9), there is a procedure by which a request can be made to have a party attend telephonically.  "Great hardship" must be shown, and as discussed below and in prior papers, Plaintiff's initial request for a telephonic mediation was a) rejected by the mediation office a month before the scheduled mediation, then b) rejected by this Court, and, c) never brought up again (nor should it have been).

    - Mr. Liebowitz states in his declaration, ¶ 9: "I have diligently reviewed the S.D.N.Y. Mediation Rules and am not aware of any rule which requires that lead counsel personally attend scheduled mediations."

    - Mr. Liebowitz even attaches the rules to his Declaration (Ex. B) and highlights page 7.  Somehow his "diligent[] review[]" missed Section 9(c) on the very same page, requiring lead counsel to attend mediation.

- Plaintiff did not attempt to schedule a mediation until just before the initially-scheduled Court conference was to occur, and then attempted to go outside the mediation process and schedule a telephonic conference with the mediator he picked (after Defendant rejected his request to not involve the parties).

- The Mediation Office rejected Mr. Liebowitz's attempts and told him that his actions could not be considered "in accordance with the procedures that govern this program." First Newberg Decl., ¶ 18, Ex. 3–4.  The Mediation Office stated clearly that a telephonic mediation *should not go forward* unless allowed by this Court.  *Id.,* ¶ 19, Ex. 3.

- Mr. Liebowitz then (after submitting a draft letter to Defendant's counsel with various false statements) wrote the Court to attempt to get approval for a telephonic mediation.

- On October 7, the Court (Dkt. 13) rejected Mr. Liebowitz's request and stated that it was "to put it mildly, somewhat perturbed" by his actions and statements, expressing particular displeasure with Mr. Liebowitz's delays.  *Id.,* ¶ 23.  The Court adjourned the

2

initial pretrial conference a month so that the parties would have time to "conduct the **in-person** mediation no later than October 31, 2019." *Id.* (emphasis added).  The Mediation Office followed up on October 7, contacting the parties to make them aware that the mediation needed to occur **in-person** in accordance with the Court's direction. *Id., ¶* 24, Ex. 4.

- Mr. Liebowitz was given various dates and asked to pick whatever date he wanted *where his client could come to New York from Georgia and Mr. Liebowitz would be available.* Newberg Decl., ¶ 28, Ex. 6.  Mr. Liebowitz did not raise any issues of availability but rather immediately responded with the last possible date, October 31.

- *In sum, at no point did Mr. Liebowitz ever make a request for him not to attend the mediation as lead (**and only**) counsel, and his request to have any of the mediation done telephonically was rejected by both the Mediation Office and this Court.  From the Court's October 7 Order until the October 31 mediation, not once did Mr. Liebowitz suggest that he or his client might not attend the mediation.*

- The documentary evidence shows that even as late as October 30, Defendant's counsel and the mediator were under the impression that Mr. Liebowitz and Plaintiff would be at the mediation in person.  *Id.*, ¶ 36, Ex. 8.  Even Mr. Liebowitz's email early the morning of October 31 gave no indication he or his client would not be there.  *Id.,* ¶ 37, Ex. 9.

- At the mediation, Defendant's counsel was told by the mediator that he had gotten word the night before that Mr. Liebowitz would not be attending the mediation.  *Id.,* ¶ 47.

- Mr. Liebowitz's associate, James Freeman, arrived with Mr. Liebowitz's sister, to state that Mr. Usherson would not be attending either.  *Id.,* ¶ 48.  Neither are admitted to this case, and Mr. Freeman's own Declaration states that he was first "informed as to the

*existence of this matter* at about 8:00 pm on October 30." Freeman Decl., ¶ 4 (emphasis added). This explains why Mr. Freeman seemed to have practically no knowledge of the facts. In the Declaration of Mr. Liebowitz's sister, Rebecca Liebowitz, she does not claim to have any knowledge regarding the facts of this case at all.

-  Defendant's counsel was back at Penn Station by no later than 12:38 pm. *Id.,* ¶ 56, Ex. 12.

- Mr. Liebowitz's firm's Twitter feed revealed that instead of being at the NY mediation, he was in Los Angeles, having hosted an event there the prior night. *Id.,* ¶ 58, Ex. 10.

As Plaintiff and Plaintiff's counsel cannot dispute the existence of the Court Orders, the Mediation Office instructions, the Local Rule and Mediation Procedures (although they actually do attempt to ignore what those rules say), their only disputes involve claims that: 1) they were given mediator permission to ignore all of the above; 2) it was reasonable to interpret the Orders, Rules, Procedures, and instructions as allowing Plaintiff not to attend the mediation in person because "parties" actually just means "counsel for parties"; and, 3) the October 31 mediation was longer and more substantive than Defendant claims.

On the first claim, as detailed in the initial papers and the various exhibits attached to the First Newberg Declaration submitted therewith, on October 4, Mr. Liebowitz initially requested that the mediation be telephonic (although he made no requests regarding his own participation).

That request was denied by both the Mediation Office and this Court in no uncertain terms.  Mr. Liebowitz, however declares (in contravention of these Orders, Rules, and instructions) that he received permission from the mediator, ▮▮▮▮, for Mr. Usherson to attend the mediation via telephone, and for his associate Mr. Freeman (who again has not appeared in this case and admitted he did not even know of the existence of this case until late in the night before the mediation) to attend instead of Mr. Liebowitz.  Liebowitz Decl. ¶ 13, Response p. 4.

**As there is not a single email or other writing even suggesting this "approval" occurred, and given the various emails showing that both Defendant's counsel and the mediator expected Mr. Usherson and Mr. Liebowitz to be at the mediation in person as late as the night of October 30**, Mr. Liebowitz claims that this approval happened by telephone.

The Court correctly asked Mr. Liebowitz in open Court when this supposed approval occurred, and Mr. Liebowitz responded that he could not remember, that it was just some time before October 31 (and that he just assumed the mediator would tell Defendant's counsel).  Second Declaration of Brad R. Newberg, ("Second Newberg Decl."), ¶¶ 18–19, Ex. 1.  Given the opportunity to provide the Court more detail in his declaration, Mr. Liebowitz declines, simply saying his call was "[p]rior to October 31, 2019, the mediation date scheduled in this case."  Liebowitz Decl., ¶ 13.  Of course, if well before, one might wonder why Mr. Freeman was not told about the case or the mediation until the night of October 30.

Because Defendant's counsel was concerned over apparently false representations being made by Mr. Liebowitz and submitted to the Court in Plaintiff's November 18 filing, Defendant's counsel called ▮▮▮▮ on November 19.  Second Newberg Decl., ¶ 21.[2]

---

[2] Defendant's counsel did not ask ▮▮▮▮ for a Declaration so as not to ask a mediator to take sides in a dispute.  However, ▮▮▮▮ informed Defendant's counsel that should this Court decide to move forward with an evidentiary hearing, he would make himself available.

██████████ told Defendant's counsel that he has conducted various mediations with parties represented by Mr. Liebowitz, and that there have been other mediations where he allowed Mr. Liebowitz's client to appear by phone, but made absolutely clear that **this was not one of them**. Second Newberg Decl., ¶ 23. ██████████ made clear that he had no knowledge that Mr. Liebowitz would not be at the mediation until the night of October 30 when Mr. Liebowitz called and *informed* him (without asking for approval) that Mr. Liebowitz was out of town and that Mr. Liebowitz's associate would be at the mediation instead. *Id.,* ¶ 24. ██████████ stated that no mention was made of Mr. Usherson at all, and he only found out that Mr. Usherson would not be at the mediation when Defendant's counsel did, that is, when Mr. Freeman and Mr. Liebowitz's sister informed Defendant, Defendant's counsel, and the mediator of that fact when they arrived at the mediation. *Id.,* ¶ 25.

Perhaps recognizing that Mr. Liebowitz's statements to this Court would be revealed as false, in page 3 of Plaintiff's Response brief, Mr. Liebowitz falls back on the idea that it is a "reasonable interpretation" of the Court's Order that the "**parties** shall conduct the **in-person** mediation no later than October 31, 2019" (Dkt. 13) (emphasis added) to say that actual parties are not required to attend mediations, only attorneys, who represent parties.

Putting aside the absurdity of this position as well as putting aside Section 9(a) of the Mediation Rules (which Mr. Liebowitz has declared he has "diligently reviewed" (Decl. ¶ 9)) which talk about the importance of party attendance, Plaintiff's counsel must know his interpretation is unreasonable or there would have been no reason for him to seek approval for his actions, which he falsely claims to have done.

Finally, as to the length and substance of the time the parties were together, Plaintiff continues to claim that the mediation was "about 45 minutes" (Pl. Response at 3) and that Mr.

Usherson "was on the phone for the duration of the substantive portion of the mediation" (Pl. Response at 2).[3]  Of note:

- **Plaintiff has chosen not to submit a Declaration from Mr. Usherson**.  Defendant, on the other hand, has submitted a Declaration with this Reply.  We refer the Court to the Declaration of Mark J. McKenna ("McKenna Decl."), corroborating the accounts herein.

- Mr. Freeman's and Ms. Liebowitz's declarations now carefully say the mediation lasted "no more than 40-45 minutes" (Freeman Decl. ¶ 16, Rebecca Liebowitz Decl. ¶ 13).

- Having now seen the First Newberg Declaration stating that Defendant and its counsel arrived to the mediation room at 11:45 am, and having heard Defendant's counsel state in open Court that Plaintiff's counsel's claim of a 45 minute mediation was belied by Defendant's counsel's 12:38 receipt from changing his train at Penn Station,[4] Plaintiff's counsel now tries to claim an arrival and mediation start time of 11:46 am.  Even if that statement were not false, the timeline would still not allow for a 45 minute mediation.

**II.** ███████████████████████████████████████████

Defendant will spend little time here on Plaintiff's counsel's attempt to deflect from his actions.  The history of settlement discussions in this case is relatively simple:  Plaintiff's counsel attempted to shake Defendant down for a large amount for its posting of a Rest in Peace message with the profile cover photo of Leon Redbone on Facebook.  McKenna Decl., ¶ 7, an offer later reiterated to Defendant's counsel.  Second Newberg Decl., ¶ 26.  Defendant made a counter-offer and also served Plaintiff with a Rule 68 Offer of Judgment, which Plaintiff ignored. *Id.*, ¶ 27.  Plaintiff did not make another offer before Defendant's counsel was emailed by the

---

[3] For context, the next line in Plaintiff's Response is the demonstrably false statement that the rules do not require lead counsel attendance (Pl. Response at 2).

[4] *See* First Newberg Decl., ¶ 64, Ex. 12; Second Newberg Decl. ¶ 15; McKenna Decl., ¶ 41.

mediator the day before the October 31 mediation to say that he had spoken to Mr. Liebowitz and believed Plaintiff would settle for much less than previously indicated. *Id.* ¶ 28, Ex. 2. Defendant made a counter-offer to the amount the mediator stated Plaintiff might settle for. The counter-offer stated it was good "if and only if a signed settlement agreement can be effectuated today. . . . I should be clear that this offer expires this evening and will likely not be offered again, including at mediation tomorrow." *Id.*, ¶ 29, Ex. 3.

Mr. Liebowitz **did not** advise whether Plaintiff accepted the offer, so Defendant's counsel sent a draft proposal for Plaintiff's review. The email from Defendant's counsel stated: "In trying to make this easy given that the mediation is scheduled for tomorrow and I will be offline for the night shortly, I have created a settlement agreement, which is attached. Mr. Usherson can sign the agreement tonight without edits and we can be done. Otherwise, we will see Mr. Liebowitz and Mr. Usherson tomorrow and we can continue discussing the possibility of settlement at the mediation (although as you have noted [meaning as ██████████ had already noted to Mr. Liebowitz in writing], the $[   ] offer will be off the table)." *Id.*, ¶ 31, Ex. 5. Instead of accepting the offer, at 4:14 am on October 31, Mr. Liebowitz sent "revisions to the agreement which can be discussed at the mediation." First Newberg Decl., *Id.*, ¶ 37, Ex. 9.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████



## III.    DEFENDANT'S COUNSEL'S REASONABLE RATE AND HOURS

Plaintiff objects to Defendant's counsel's rate by citing a single case and misrepresenting it.  Plaintiff cites (Pl. Resp. at 9) *Pyatt v. Raymond*, No. 10 Civ. 8764 (CM), 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) with for the proposition that it "collect[ed] cases approving hourly rates of $400 for partners in copyright and trademark cases."  This is false: *Pyatt* collected seven cases, all from a decade or more ago, one of which approved a range of $400-$540, and the other six approving rates from $520-$650. Given the decade-plus since, Defendant's counsel's rates are easily in line with *Pyatt*.[5]

Finally, Defendant's counsel drafted a detailed Mediation Statement, prepared for mediation, traveled to and from NY, met with his client, and attended the mediation.  Plaintiff is wrong in suggesting Defendant should be awarded no more than two hours of time.  In addition, Defendant's counsel has spent far more than ten hours on this Motion.  Defendant proposes that should this Court award it attorneys' fees in relation to this Motion, Defendant submit its time records for whatever activities are part of the fee award.

---

[5] Just two months ago in the W.D.N.Y., Mr. Liebowitz himself asked for more than $400 per hour in a fee request despite graduating law school almost 20 years after Defendant's counsel. *See, e.g.*, *Mantel v. Smash.com, Inc.*, No. 6:19-cv-06113 (FPG) (Dkt. 11).  Unlike his attempt to mislead here, in the *Mantel* Declaration, ¶ 24, Mr. Liebowitz **correctly** cites *Pyatt's* range, and also cites numerous other cases in an attempt to support a proper rate for him of $400-$855.

9

## IV.    PLAINTIFF VIOLATED THE COURT'S JULY 15 ORDERS

Plaintiff does not deny that he failed to timely file proof of service, but blames his process server for withholding the proof of service.  While not a valid excuse, he attaches an exhibit (Liebowitz Decl., Ex. A) from September 20, which he implies exonerates him, but it has no words and does not show the attachment, therefore proving nothing.  Plaintiff also does not deny that he failed to timely provide Defendant (with whom he had been in contact for two months, *see* McKenna Decl., ¶ 7) the required licensing information.  He suggests that he was not required to if the work had never been licensed.  That is contrary to the Court's Order.

## V.    THE COURT'S REQUEST RELATED TO A POSSIBLE EVIDENTIARY HEARING

The Court directed the parties (Dkt. 20) in their Response and Reply papers to address "whether the Court should hold an evidentiary hearing and, if so, what witnesses should be called and how it should be conducted."  Plaintiff ignored the Court's direction in its Response.

The above violations are clear and Plaintiff should not be allowed to supplement its Response through an evidentiary hearing.  Defendant welcomes an evidentiary hearing, however, if the purpose and structure is the following: (a) Individuals who have submitted declarations are made available not for direct testimony, but for questioning by the Court to the extent the Court has open questions, and for limited cross-examination; (b) Mr. Usherson appears in person, not for direct testimony, but for questioning by the Court, with limited cross-examination; (c) the Court can conduct an in-camera review of Plaintiff's Mediation Statement and Plaintiff's counsel's communications with Mr. Usherson and ███████ about the mediation; and, (d) to the extent the Court deems it necessary, the mediator ███████ appears for questioning by the Court and examination by the parties' counsel.  Defendant and its counsel have checked their schedules and respectfully request that any required hearing take place on December 9, 12 or 13.

10

Dated: November 25, 2019

Respectfully Submitted,

Brad R. Newberg

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist*
*Management*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have emailed Plaintiff's counsel and this Court in accordance with the Court's sealing rules and Dkt. 26, on this 25th day of November, 2019, and will electronically file the foregoing Reply Memorandum of Law in Support of Motion for Sanctions with the Clerk of the Court using the CM/ECF system when instructed by the Court which further constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 25, 2019

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

12