## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ARTHUR USHERSON,** | |
| **Plaintiff,** | |
| **v.** | **Docket No. 1:19-cv-6368-(JMF)** |
| **BANDSHELL ARTIST MANAGEMENT,** | |
| **Defendant.** | |

## DECLARATION OF MARK J. MCKENNA IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

I, Mark J. McKenna, declare:

1.  I am the owner and sole employee of Defendant Bandshell Artist Management.

2.  Bandshell represents a few musicians who have been around a very long time, such as David Bromberg.  As part of that representation, we administer the personal Facebook page of the David Bromberg Quintet & Band, giving information about Mr. Bromberg.

3.  Mr. Bromberg was good friends with another musician, Leon Redbone.

4.  In May of 2019, Mr. Redbone died, and Bandshell placed a Rest in Peace message to Mr. Redbone on the David Bromberg Quintet & Band Facebook page.  In referencing Mr. Redbone, Mr. Redbone's Facebook cover picture was put in the Rest in Peace post.

5.  That picture was especially appropriate because it showed Mr. Redbone with Mr. Bromberg and Bob Dylan at the 1972 Mariposa Folk Festival.

6.  There was no information on or with the photograph referencing any copyright information or a copyright owner.

1

7.  In July of 2019, I received a phone call from Richard Liebowitz. In that call, he stated that his client, Arthur Usherson, had filed a lawsuit against Bandshell for the Rest in Peace Facebook post, and it would take $25,000 to make the case go away.

8.  On September 5, 2019, I was served with the lawsuit.

9.  I was able to find pro bono representation in this case and am represented by McGuireWoods LLP, including Brad Newberg.

10. Early in this case, Mr. Newberg informed me that Plaintiff's attorney reiterated the same $25,000 demand he had made to me to Mr. Newberg.

11. After Plaintiff refused an initial offer I authorized Mr. Newberg to make, I authorized Mr. Newberg to serve Plaintiff with a Rule 68 Offer of Judgment. The Plaintiff never responded to that offer.

12. After the Court ordered that the parties and their counsel attend an in-person mediation, I gave Mr. Newberg dates that I would be available to attend. He let me know to give him several dates since Plaintiff would have to choose from them a date that Mr. Liebowitz would be available and that Mr. Usherson could fly to New York from Georgia.

13. Mr. Newberg informed me that Mr. Liebowitz had chosen October 31 and that I should clear my calendar for that day, which I did.

14. On October 30, we were informed that Mr. Usherson might settle for far less than his original offer. As the number floated as a possibility was still too high, I authorized Mr. Newberg to make an offer with the specific instructions that my offer would only be available for October 30, and would not be available if Mr. Newberg had to travel

to New York (especially given that while I am being represented pro bono, I might still have to pay certain costs).

15. I am aware that in an effort to maximize the chance of settlement, Mr. Newberg even drafted a draft proposal, which he informed the other side would only be available if signed that night, and would not be available at mediation.

16. On the morning of October 31, Mr. Newberg informed me that Mr. Usherson had not signed the proposal, and instead Mr. Liebowitz issued a counter-proposal at 4:14 am, which Mr. Liebowitz stated could be discussed at the mediation.

17. Mr. Newberg and I made plans to meet just over an hour before the mediation to discuss how it would likely go.

18. Mr. Newberg and I met a little before 11:00 am, and he explained to me how the mediation session would likely go, and that when parties meet face-to-face, there can often be a settlement reached even where you did not previously think there would be.

19. We entered the mediation room at 11:45 am.

20. I fully expected to meet in person with Mr. Usherson and Mr. Liebowitz.

21. The other side was not there yet, so we sat down and started talking with the mediator, ████████ .

22. ████████ informed us that he had heard from Mr. Liebowitz the night before (October 30) that Mr. Liebowitz would be out of town, so he would not be appearing, but he was sending an associate of his in his place, and it would be up to us whether we wished to move forward.

23. My attorney noted that no other attorney had made an appearance for Mr. Usherson and that he had not dealt with anyone but Mr. Liebowitz. He then asked if Mr. Usherson would be there as required.

24. The mediator stated that he assumed so, as Mr. Usherson was required to attend, but he really could not say for sure. He stated that he had not been told anything about Mr. Usherson, only that Mr. Liebowitz was out of town.

25. My attorney (and I) informed ▮▮▮▮▮ that if Mr. Usherson was not present in person, there would be no way to move forward and we would not be able to hold the mediation. ▮▮▮▮▮ stated that he understood and agreed.

26. Around noon, two people from Mr. Liebowitz's office arrived, a gentleman and a young woman. The gentleman introduced himself as Mr. Freeman. The woman did not talk, but Mr. Freeman said she was Ms. Liebowitz's sister and would be observing.

27. My attorney explained that the situation was unacceptable and that Mr. Usherson and Mr. Liebowitz were supposed to attend the mediation and that their absence was in violation of the Court's Order and the mediation rules.

28. 

29.

30. We were ready to leave as there was no way to proceed with the mediation.

31. 

32.

33.

34.

35.

36.

37.

38. The entirety of the call with Mr. Usherson lasted no more than two minutes.

39. My attorney and I left immediately after, at approximately 12:10-12:15 pm.

40. My attorney and I got our phones from the security desk, walked to the subway together and got on the same subway line.

41. On the subway, my attorney was going to see if he could change his train back to Washington DC to an earlier train but he did not have enough reception in the subway, so he said he would have to see if he could do it once he got to Penn Station.

42. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 22, 2019

_____

Mark J. McKenna

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Declaration of Mark J. McKenna with the Clerk of the Court using the CM/ECF system on this 25th day of November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 25, 2019

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*