```
JBEJUSHC                    Conference
```

       1    UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF NEW YORK
       2    -------------------------------x

       3    ARTHUR USHERSON,

       4                    Plaintiff,

       5          v.                                19 Civ. 6368 JMF

       6    BANDSHELL ARTIST MANAGEMENT,

       7                    Defendant.

       8    -------------------------------x

       9

      10                                         November 14, 2019
                                                 4:00 p.m.
      11

      12

      13    Before:

      14                        HON. JESSE M. FURMAN,

      15                                           District Judge

      16

      17                         APPEARANCES

      18

            LIEBOWITZ LAW FIRM, PLLC
      19         Attorneys for plaintiff
            BY:  RICHARD LIEBOWITZ, Esq.
      20         JAMES FREEMAN, Esq.
                          Of counsel
      21

      22    McGUIRE WOODS, LLP
                 Attorneys for defendant
      23    BY:  BRAD RICHARD NEWBERG, Esq.
                          Of counsel
      24

      25

1              (In Open Court)

2              (Case Called)

3              THE COURT:  Good afternoon.

4         All right.  So we're here for the initial pretrial

5    conference but, of course, there is also a pending motion for

6    sanctions, and this morning, at 12:20, Mr. Liebowitz filed a

7    letter response to that motion.

8         I am not going to consider it because it is not a

9    formal response.  You are not permitted to file a letter in

10   response to a formal motion, so I'll disregard it until a

11   formal opposition is filed, but certainly it previews, I

12   suppose, what Mr. Liebowitz's arguments are going to be on that

13   score.

14        It seems to me there are some fundamental

15   disagreements about what happened, and I wonder if an

16   evidentiary hearing of some fashion should be held at which Mr.

17   Usherson should testify, perhaps others should testify, but I

18   don't know if, Mr. Newberg, you want to respond since you

19   filed --

20        MR. NEWBERG:  Sure.  I will be brief since obviously

21   there are a lot of facts in the motion.  I don't want to take a

22   lot of the court's time.

23        I will say that in the case management letter, Mr.

24   Liebowitz said he would be fully responding to the motion by

25   the 13th, yesterday.  So I considered this to be the response,

1    but if your Honor wants to give him more time to actually

2    respond, so be it.  Obviously, we welcome any evidentiary

3    hearing with Mr. Usherson to appear in person and my client to

4    appear in person.

5            One thing I will say about what was just explored and

6    this letter, we have obviously issues here with veracity, and

7    your Honor may or may not be aware of Judge Seibel's hearing.

8            THE COURT:  I am well aware of it.

9            MR. NEWBERG:  I won't go into it, but obviously it has

10   been referred to the grievance committee as well as fines and

11   contempt orders.  So to get this letter which is substantively

12   so false on so many levels and demonstrative so from the

13   documentary evidence we presented to you is shocking, given a

14   few hours earlier promises were made to this Court, through

15   Judge Seibel, these sorts of representations, false

16   representations, would not be made again.

17           So I am happy to argue the motion, but obviously we'll

18   take the court's direction on that.

19           THE COURT:  First of all, it is "Seibel," just for

20   your information.

21           MR. NEWBERG:  I literally took that from the news

22   report that said how it was pronounced.

23           THE COURT:  Don't always trust what you read.

24           Tell me more specifically what representations you

25   think are problematic, and Mr. Liebowitz, what is your

1    response, which again is only informal at this point.

2            MR. NEWBERG:  Sure.  To say the mediation occurred is

3    an overstatement at most, where it says the mediation lasted 45

4    minutes.  If one would say a ediation occurred, it lasted

5    approximately two minutes.

6            Mr. Liebowitz and his client were ordered to be there

7    in person.  The mediation office reminded them.  This Court

8    issued an order for them to appear in person at the mediation

9    under the rules.  The Southern District of New York rules

10   specifically say the party and lead counsel need to be there.

11           That is another thing, he says there is nothing in the

12   court order or mediation order that says lead counsel needs to

13   attend the mediation.  9(c) specifically says lead counsel must

14   attend the mediation.

15           In terms of Mr. Usherson being on the phone and

16   actively participating the entire time, essentially we got

17   there.  We were told by the mediator -- when I said I'll look

18   for Mr. Liebowitz in person, he said, "I just heard from Mr.

19   Liebowitz, he is not going to be here."

20           I said, "Well, will Mr. Usherson be here?"  He said,

21   "I don't know.  We'll see.  I hope he will be."

22           And Mr. Freeman and Mr. Liebowitz's sister, neither of

23   which had made an appearance in this case, came to tell us

24   neither of those would be there.  We said okay, I guess we

25   can't have the mediation.  The mediator said we can't have the

JBEJUSHC                    Conference

1    mediation.

2    ████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████

5    ██████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████

8    ███████████████████████████████

9            In fact, I was back at Penn Station just after 12:30.

10   The mediation was noon.

11           In terms of obtaining permission from the assigned

12   mediator was also false.  Mr. Liebowitz asked the mediator can

13   we have a telephonic conference on the mediation?  I said it

14   cannot be lawyers only, and eventually we agreed okay, if

15   everybody will participate by telephone.

16           This is back in late September, early October, he

17   asked the mediation office would that be okay.  The mediation

18   office said in no uncertain terms no, that is not okay.  Lead

19   counsel needs to be there in person, the parties need to be

20   there in person.  If you want relief from that, go ask the

21   Court.

22           And when he asked the Court, the Court gave a full

23   month to conduct an in-person mediation with the parties and

24   under the rules which required lead counsel to be there.  I

25   gave him various dates.  He picked the very last date, October

1    31, and I arrived with my client to find no Mr. Liebowitz, no

2    Mr. Usherson.

3           So to say that it lasted 45 minutes, to say Mr.

4    Usherson was on the phone the entire substance, to say

5    plaintiff obtained permission from the assigned mediator to say

6    nothing in this Court order or mediation rules say lead counsel

7    needs to be at the mediation, to say Mr. Freeman, who made no

8    appearance, and clearly asked me about the case, did not have

9    knowledge of the case, to say all of these things in this

10   letter, each one of those is specifically false.

11          The emails I attached to my motion, including the

12   receipts I attached, showed various timelines, showed continued

13   reminders Mr. Liebowitz and his client had to be there.  Even

14   the documentary evidence shows many of these statements are

15   false.  That is as brief as I can be.  I apologize.

16          THE COURT:  All right.  Mr. Liebowitz?  Mr. Freeman?

17          MR. LIEBOWITZ:  Yes.  I will represent to the Court

18   that James Freeman is my colleague who works in my law firm,

19   and he knows the facts of the cases that I filed, and he was

20   ready, fully prepared at the mediation.  My sister that just

21   recently passed the Bar, she came as well and she's a member of

22   this Court as well.

23          THE COURT:  She is admitted to this Court?

24          MR. LIEBOWITZ:  Yes, she is admitted.  Two lawyers

25   came that were familiar with the facts.  I said to the

1   mediator, according to the mediation rules -- and a lot of the

2   magistrates have this rule -- saying if they are a hundred

3   miles away from the courthouse, you can appear telephonically.

4   When I spoke to the mediator, he said yes.  The reason for this

5   is because --

6           THE COURT:  Mr. Liebowitz, I want to caution you that

7   you're already in a lot of hot water in this Court, and I think

8   you know that.  In that regard, I would be very, very, very

9   careful about the representations you make to me.

10          If you prefer to let Mr. Freeman do the speaking, that

11  is one thing, although they are still representations on your

12  behalf.  When did you advise ███████ Mr. Usherson was not

13  going to appear in person?

14          MR. LIEBOWITZ:  I don't know the exact date, but it

15  was before the mediation, and he said yes.

16          THE COURT:  In what means did you do that?

17          MR. LIEBOWITZ:  It was telephone.

18          THE COURT:  And you personally advised him?

19          MR. LIEBOWITZ:  I personally.

20          THE COURT:  And he said that was okay?

21          MR. LIEBOWITZ:  He said that was okay.

22          THE COURT:  Is there a reason you didn't tell Mr.

23  Newberg that Mr. Usherson wasn't coming?

24          MR. LIEBOWITZ:  I thought the mediator was going to

25  tell him he was going to appear telephonically.  The rule says

JBEJUSHC                    Conference

1      to let the mediator know.  Whether or not the mediator told

2      him -- I worked with the mediator before, and this has never,

3      never, ever been an issue, and I believe he does help the other

4      side appear telephonically.

5           The reason for having this rule mediation rule in the

6      mediation program, I guess one of the purposes, you know, is

7      to, you know, limit the costs of the litigation.

8           Now, Mr. Freeman and Ms. Liebowitz attended the

9      mediation, were fully prepared, and Mr. Freeman can talk about,

10     because he was actually there, what happened.  ███████████████

11     ████████████████████████████████████████████████████████████

12     ████████████████████████████████████████████████████████████

13     ████████████████████████

14          THE COURT:  You told me in the letter.

15          MR. LIEBOWITZ:  ██████████████████████████████████

16     ███████████████████████████████████████████████████████████

17     ███████████████████████████████████████████████████████████

18     ████████████████████████████████████████████████████████████

19     █████████████████████████████████████████████

20     █████████████████████████████████████████████████████████████

21     ██████████████████████████████████████████████████

22     ████████████████████████████████████████████████████████████

23        ███████████████████████████████████████████████████████████

24     ████████████████████████████████████████████████████████████

25     ██████████████████████████████████████████████████████

JBEJUSHC                    Conference

1   ████████████████████████████████████████████████████

2   ████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████

4   ████████████████████████████

5                Mr. Freeman, I guess, can take it from there exactly

6   what happened, but --

7                THE COURT:  All right.  Mr. Freeman.

8                MR. FREEMAN:  Yes.  Thank your Honor.

9                In terms of my personal knowledge of this case, I

10  learned about the existence of the case at approximately 8:00

11  o'clock pm on October 30th, so it was the night before the

12  mediation.  Mr. Liebowitz had indicated that there was a

13  settlement in principle regarding the price.  There was an

14  actual settlement agreement that was being circulated, which I

15  did review.

16                I did review the complaint.  I reviewed the exhibits

17  to the complaint.  I reviewed the copyright registration, and I

18  also had email correspondence with Mr. Usherson the evening

19  before, and it was clear he was in Georgia.

20                So the next morning I arrived at 40 Foley Square

21  downstairs with Ms. Liebowitz, just recently admitted.  We did

22  walk in.  I had no knowledge one way or the other as to what

23  clearances were made in terms of telephonic appearances, but I

24  can attest to the Court, having personally participated in

25  dozens of mediations in this district, that the ordinary custom

1   and practice is for the attorneys, particularly where the

2   plaintiff is out of state, for magistrate judges or mediators

3   to permit leave for the party to appear telephonically.

4           As far as I knew, the fact Mr. Usherson was not there

5   was nothing out of the ordinary.  It was actually very routine

6   and very ordinary.  When I did arrive, it was clear opposing

7   counsel was visibly upset, and he expressed his disdain that we

8   had appeared and not Mr. Liebowitz.  He expressed disdain Mr.

9   Usherson wasn't there.  There was about five to seven minutes

10  of back-and-forth about whether or not the mediation would

11  proceed.  Mr. Newberg said it.

12  ████████████████████████████████████████████████

13  ██████████████████████████████████████████

14  ███████████████████████████████████████████

15  ██████████████████████████████████████████████

16  ██████████████████████████████████████████████

17  ██████████████████████████████████████████

18  ███████████████████████████████████████

19  █████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ███████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  ██████████████████████████████████████████████

JBEJUSHC                        Conference

1   ████████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████

6           I was definitely there at least a half an hour if not

7   40 minutes.  I don't know where he is getting two minutes from

8   when you count the administrative aspects and substantive

9   mediation.  ████████████████████████████████████████████

10  ██████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████

13  ██████████████████████████████████████████

14       ██████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████

21       ████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

JBEJUSHC                         Conference

1    ████████████████████████████████████

2         ███████████████████████████████████████████

3    █████████████████████████████████████████████

4    ██████████████████████████████████████████████

5    ████████████████████████████████████████████

6    ████████████████████████████████████

7    ███████████████████████████████████████

8    ██████████████████████████████████████████████

9         THE COURT:    ████████████████████████████████

10   ████████████████████████

11        Mr. Newberg, do you care to respond, and we can decide

12   how to proceed.

13        MR. NEWBERG:  Yes, your Honor, I would like to

14   respond.  I stand by a lot of what I said here.  I don't know

15   where to begin.  I will say that in terms of, as Mr. Liebowitz

16   said, he never mentioned he would be there, Mr. Usherson would

17   be there.  Exhibit 8 to my motion is literally the night before

18   communications between the mediator and myself about Mr.

19   Usherson being there in person.  He clearly at 10:03 pm the

20   night before thought Mr. Usherson was going to be there in

21   person, thought Mr. Liebowitz was going to be there in person

22   at 10:03 the night before.

23        Whenever this phone call supposedly happened, maybe it

24   is the phone call from six weeks earlier he then asked the

25   mediation office and this Court to approve that was rejected,

1    but ▮▮▮▮▮▮▮▮ made clear he was not aware of this.

2            On the Exhibit 6, it is clear that I am asking let's

3    make sure he and Mr. Usherson can be there in person.  Mr.

4    Freeman says all this time that took place.  Again I refer the

5    Court to my receipts from Exhibit 12 that shows my change of my

6    train which I made in Penn Station and got an email receipt at

7    12:38 pm for this noon mediation.

8            This was not a case of we were there 45 minutes and

9    then somehow I went back in time to Penn Station and got this

10   receipt.  There is even the next train available, 2:00 o'clock,

11   and even a receipt for my lunch in Penn Station a few minutes

12   later.  I am not exactly sure what Mr. Freeman said, he

13   reviewed email from Mr. Usherson and he was clearly in Georgia.

14   I am not on any emails with Mr. Usherson.

15                   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I said clearly in

20   my email look, I'm leaving on an early morning train.  If we

21   don't have a resolution, we'll all see each other in New York.

22   I got back revisions at 4:14 am on October 31st from Ms.

23   Liebowitz, which actually was 1:14 his time, since he was on

24   Los Angeles time.

25                   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

JBEJUSHC                        Conference

1  ████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████

6            ████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ██████████████████████████████████████████████████

9  ████████████████████████████████████████     That

10  was it.  It was less than two minutes.  I was back in Penn

11  Station.

12          I am not sure if there is anything else your Honor

13  thinks is strange or quizzical your Honor wants me to address,

14  I am happy to, but otherwise I will sit down.

15          THE COURT:  How do you think I should proceed?  Do you

16  think I should hold a hearing?

17          MR. NEWBERG:  We are happy to have an evidentiary

18  proceeding with my client and Mr. Usherson here in person so

19  that they can discuss this.  Right now what we have is Mr.

20  Liebowitz saying he would be responding to this motion by the

21  13th.  I am not going to quibble over the 20 minutes, 12:20 in

22  the morning on the 14th, but I am happy to reply, frankly, to

23  his -- take this letter as his response, submit a reply and

24  have the Court, if the Court doesn't does want an evidentiary

25  hearing, to take the declarations that we have filed and file

JBEJUSHC                          Conference

1    our reply and take his motion and decide the issue.

2            THE COURT:  All right.  So here is what I will do.

3            First, as I said, I am not going to consider the

4    informal response to a formal motion.  I will give Mr.

5    Liebowitz until Monday of next week to file a formal opposition

6    in accordance with the local rules.  I will give Mr. Newberg

7    until the following Monday to file a reply, including whatever

8    you think should be filed in support of the reply.

9            At the moment, I am leaning toward holding a hearing

10   to get to the bottom of this.  There are some fundamental

11   disputes of fact that I think are relevant to whether Mr.

12   Liebowitz and his client complied with my orders in this case.

13   There is no question there was failure to comply with some of

14   them for sure.

15           But I am sufficiently concerned and sufficiently

16   skeptical of keeping -- I will keep an open mind, but I am not

17   willing to take counsel's representations for it, that I think

18   it might be necessary to have a hearing, presumably with Mr.

19   Usherson, presumably with Mr. Newberg's client, perhaps with

20   some or all of you testifying and perhaps with ███████████

21   testifying.

22           One of you in your opposition and your reply address

23   whether you think a hearing is appropriate, and to the extent I

24   conclude a hearing is appropriate, tell me how you think that

25   hearing should be conducted, particularly if any or all of you

JBEJUSHC                          Conference

1   needs to testify, how you think it should be handled.  I will

2   issue an order that gives you further guidance on that front.

3          More broadly, I guess we are here for the initial

4   conference.  One option would be to put everything on hold

5   pending adjudication of the sanctions motion and see where that

6   lands us.  I will say I am skeptical of the request to dismiss

7   the complaint on that basis.  I think if sanctions are

8   appropriate, monetary sanctions are presumably the way to go

9   and not dismissal, but so in part for that reason I guess my

10  inclination would not be to hit the pause button.

11         Another option would be to proceed with discovery in

12  the normal course.  I guess the third option is somewhere

13  in-between.  I wanted to raise this.  Mr. Newberg has a

14  footnote in his memorandum of law, suggesting that there may be

15  a threshold issue with respect to the copyright in this case

16  that because it may predate 1989, that it is not a valid

17  copyright in the absence of a registration.  I don't know if

18  you're right about that, and maybe you can elaborate on it.

19         Would that be dispositive of the claims in this case

20  and, if so, is that something we should have early summary

21  judgment motion practice on?  What is your thought?

22         MR. NEWBERG:  Thank you.  Yes, that would be

23  dispositive.  They lose all rights in copyright for publishing,

24  print out, listening, anything regarding your photograph

25  without notice if it was done before 1989.

JBEJUSHC                    Conference

1          Additionally, actually just yesterday we also

2     discovered that after this case was filed, Mr. Usherson filed a

3     copyright registration, which it seems to be on these

4     photographs, so now it is unclear whether the registration in

5     the complaint actually does cover the photograph or if it is

6     the new copyright registration.

7          If it is the new copyright registration, it is

8     unequivocal this case must be dismissed with prejudice based on

9     the Supreme Court's recent holding in terms of having to have a

10    registration before you file and the Second Circuit and this

11    Court's holdings that that is a non-curable error.

12         So now we discovered that yesterday.  One of the

13    things I was going to ask your Honor, I think we we need to

14    amend our answer.  I do think that having discovery purely on

15    those aspects early would probably be a very good idea.

16         THE COURT:  Mr. Liebowitz.

17         MR. LIEBOWITZ:  Your Honor, so what defendant doesn't

18    realize is this is an unpublished work.  The VA number is VAU.

19    When it is VAU, it is unpublished.  So defendants say it was

20    published before 1989 is not accurate.  So it was VAU, it is

21    unpublished, and that does not affect any public domain or

22    anything like that.

23         It was unpublished, so there is no issue with

24    registration.  I don't know what defense counsel means about

25    other registrations or other photographs.  I will have to see

1    what my office did, but this is the correct registration.  It

2    is registered as unpublished, and there are statutory damages

3    and attorney's fees in this case.

4         We believe that if defendant wants to take up these

5    issues during discovery, we want to have discovery as well.  We

6    want to determine why wasn't there a license, why wasn't the

7    photograph taken down.  There are a lot of factors that go into

8    statutory damages, and we believe that the appropriate thing to

9    do at this stage is to just set discovery, set the dates, and

10   let the parties engage and hopefully during that process the

11   parties could eventually get to a settlement number we are

12   willing to live with and we can finally put this matter to

13   rest.

14        MR. NEWBERG:  May I respond briefly, your Honor?

15        THE COURT:  Sure.

16        MR. NEWBERG:  Responding backwards on the point of the

17   facts on the discovery Mr. Liebowitz is talking about, that is

18   normal discovery.  What we are talking about --

19        THE COURT:  Slow down.

20        MR. NEWBERG:  -- is preemptive discovery on the notice

21   on registration.  I can tell Mr. Liebowitz right here on

22   August -- this is a photo, sort of well known folk community

23   photo of Bob Dylan, Leon Redbone and David Bromberg at the

24   Mariposa Folk Festival on July 16, 1972.

25        Taking this backwards, while there is a registration

JBEJUSHC                    Conference

1    that was mentioned in the complaint that simply just says

2    unpublished photographs, Nos. 122-208, that is what was for the

3    complaint.  On August 22nd, a very specific registration was

4    issued that says Arthur Usherson, Bob Dylan at Mariposa Folk

5    Festival, July 16, 1972, 30 photographs.  Clearly it is very

6    likely one of these 30 photographs is the photograph in

7    question, which is a photograph of Bob Dylan at the Mariposa

8    Folk Festival, July 16, 1972.

9          As far as the publication, I am well aware the

10   registration says that they're unpublished photographs.  I

11   think that is almost certainly inaccurate.  This is a

12   photograph that has been widely circulated.  I found examples

13   of it ranging back 10 to 20 years, and so if it were

14   unpublished, it would, it would be widely circulated, which may

15   be another reason to take discovery.  Thank you.

16         THE COURT:  If there is a generic registration on day

17   one, and then a more specific registration on day two, I don't

18   know why that would, be but in theory cover the same work?.

19         MR. NEWBERG:  It is possible then it could cover the

20   same work.  We are willing to find out whether these

21   unpublished photographs are composite copies to determine

22   whether or not this is part of it and why there was this new

23   registration.

24         In addition, if you published hundreds or a group of

25   unpublished photographs, a collection, if any of those

1  photographs, and -- this may be the reason for the new

2  registration -- if any of those photographs actually were

3  published, that takes away the entire copyright registration.

4  So I have 50 unpublished photographs and 10 published, and to

5  put them in as unpublished photographs and try to get them in

6  that way and determine some of them were published, then that

7  copyright is no longer valid.

8      THE COURT:  What do you need to get to the bottom of

9  that and figure out what is going on here?

10      MR. NEWBERG:  In terms of discovery, we need discovery

11  on deposit copies of the photographs were put in for this 2011

12  registration.  We need discovery on Mr. Usherson of when these

13  photographs were published, if they were published, and if they

14  have, how they have been used, and discovery of why this new

15  registration was put in on August 22nd, because if the new

16  registration was essentially the first valid registration for

17  this photograph, then this case is -- and that is a separate

18  issue obviously from the notice, which is another reason for

19  dismissing.

20      If it were found, that is the other part of discovery,

21  if this is a published photograph and it was published without

22  notice prior to 1989, then there is no copyright possibility

23  whatsoever.

24      THE COURT:  What discovery would you need on that

25  aside from the deposition of Mr. Usherson?

1          MR. NEWBERG:  We need the deposition, obviously, the

2     documents in his possession regarding how this photo has been

3     used, licensed, published, distributed in the past.

4          THE COURT:  I guess my concern with the idea I floated

5     of having limited and early summary judgment:  A, it sounds a

6     little messier than I had hoped; and, B, it sounds like the

7     discovery you would need is not so different from the discovery

8     that would be taken if the case were proceeding in the normal

9     course.  All right, guys.

10          MR. NEWBERG:  On Mr. Usherson, it would be similar.

11          We have a deposition on discovery, but on Mr.

12     Usherson, that would be encompassed.  I would say maybe half of

13     the discovery we need on Mr. Usherson.  Of course, none of that

14     is needed on our side.  So it is possible it cuts out

15     three-quarters, but certainly there is a large amount.

16          THE COURT:  What else do you need aside from that if

17     the case were to proceed in the normal course?

18          MR. NEWBERG:  In the normal course, what we need is

19     things like Mr. Usherson's licensing history, if there was any.

20     Obviously, it has been said so far he never licensed this in

21     the past.  We want to obviously delve into that, and we want to

22     go through the creation of it, obviously establish he is

23     actually the author of this photograph, and so those are the

24     main points.  I would have to give it some thought additionally

25     what we want from plaintiffs.

1          THE COURT:  Mr. Liebowitz.

2          MR. LIEBOWITZ:  Your Honor, I don't think early

3    summary judgment is appropriate.  It is all these issues of

4    obviously photographers, they take a lot of photographs of the

5    same subject matter all the time.  Just because he's

6    registering and having another registration with a name, the

7    same event, why he is drawing so many conclusions from that,

8    but photographers do that all the time to get more photographs

9    registered.

10          I think there is a lot of discovery issues that need

11   to happen on both ends, and I think simply going along with

12   what the parties propose as a discovery plan should be the

13   right approach to continue the case, doing briefing at the end

14   of discovery.

15          THE COURT:  Talk to me about the merits.  Is it the

16   case that defendant took or Mr. Bromberg took a picture from

17   Mr. Redbone's Facebook profile and simply posted it?  It says,

18   "Rest in peace."  Is that the gravamen?

19          MR. LIEBOWITZ:  Yes.  This is straightforward.  We

20   believe liability is there.  They used the photograph.  They're

21   not disputing it.

22          THE COURT:  Did they gain anything from it?

23          MR. LIEBOWITZ:  They're using it, the management

24   company is using it on their Facebook page.  We have had to

25   find out during discovery what was the purpose.

1          Now, you know, whether or not they made money off of

2   it, you know, I don't think is, you know, such, you know -- it

3   may be one factor of a defense, but the only two factors you

4   need is it is registered with the copyright office and they

5   copied the photograph.  Now, I don't believe defendants are

6   disputing that they copied the photograph, and I think

7   ultimately this is a case regarding damages.

8          What is the appropriate statutory damages for an

9   iconic photograph of singer-songwriter Leon Redbone?

10         THE COURT:  A photograph that never before had been

11   licensed?

12         MR. LIEBOWITZ:  Yes.  Just because it wasn't licensed

13   before doesn't mean that he's not entitled to a licensing fee.

14         THE COURT:  Doesn't the licensing history factor

15   heavily into what the appropriate licensing fee brings,

16   statutory damages would be?

17         MR. LIEBOWITZ:  Yes.  That is the reason for statutory

18   damages.  If the statutory damages exist because if there is no

19   actual damages because here if there is no licensing, then the

20   Courts would look at okay, the range is between 750 and

21   150,000, where in the spectrum it should be.  That is the

22   purpose of the statutory damages.  Not only if there is no

23   actual damages, what about deterrence?  Is defendant going to

24   keep on using the photographs without permission?

25         What about, you know, a license?  What about photo

1  credit?  There has to be some deterrence because they will

2  continue to do it.  I strongly believe that is the reason for

3  statutory damages.

4         Here if there is no licensing fee, we are going to

5  have other factors going to statutory damages like the

6  willfulness.  Why license?  We want to find out a history of

7  other licenses from the defendant, how they licensed

8  photographs of other people before and what they charged for

9  that amount.  I think this case comes down to damages, and we

10  need to determine all of these things during discovery to find

11  out what an appropriate number is.

12         THE COURT:  Well, I don't know if it comes down to

13  damages or not, but maybe a fair use argument as well.  If it

14  does come down to damages, I must say it is not clear to me

15  that it would lead to anything short of the low end of the

16  statutory damages award, which makes me think discovery

17  shouldn't be the tail that wags the dog in this case.

18         MR. LIEBOWITZ:  Your Honor, at the mediation and say

19  zero dollars.  You know, it is worth something.  The statute

20  has a minimum of 750 to 150,000.

21         THE COURT:  Mr. Liebowitz, do you think you're getting

22  150,000?

23         MR. LIEBOWITZ:  No, no, your Honor.

24         All I am saying is at the mediation when they offered

25  zero dollars, that's bad faith.  We were negotiating a

1    settlement.  We got a number the day before.  This case should

2    have been done weeks ago, and we tried to resolve the matter

3    without coming here today, and we tried doing that, but the

4    defendants take the position that they're trolling for

5    sanctions, trying to make money off of this, and we are open to

6    settlement, the same number we discussed before the mediation.

7    If they didn't agree to the terms, we could have worked it out.

8         I am still hopeful and truly hope that defendant, in

9    good faith after this, we can go outside and try to discuss a

10   resolution so that we could resolve the case and move on.

11        THE COURT:  All right.  Even if you resolve the case,

12   as you know full well, with your history with me, that doesn't

13   necessarily resolve the sanctions if I decide to proceed with

14   that.  Be that as it may, my inclination is given the amount in

15   controversy or likely to be in controversy here, we should

16   severely limit the discovery, and I wonder if you need, either

17   side needs more than one deposition.

18        Your positions on that?

19        MR. LIEBOWITZ:  I believe that whoever posted the

20   photograph, if it was more than one person, we need to get one

21   or two people and then defendant's corporate representative.

22        THE COURT:  Mr. Newberg?

23        MR. NEWBERG:  The person involved, it is the same as

24   our corporate representative.  So it would be the individual,

25   30 (b)(6), the same day.  I do not know at this point that we

1   need beyond Mr. Usherson.  No pun intended, I don't want to

2   make a federal case out of this, depositions would be taken of

3   other people who have been posting this and using this over the

4   years, but I'm not likely to do that.  So I would say that's

5   probably accurate.

6          I would like to briefly respond to the merits portion,

7   but if you would rather me not?

8          THE COURT:  You can briefly, but I do want to move on

9   and bring this to a close.

10          MR. NEWBERG:  Sure.  Which is going to lead to one

11   open issue, which is on the merits issue, we think this is

12   pretty quintessential fair use.  This was a Bromberg page.

13   Dave Bromberg is an older gentleman, so he has someone who

14   administers his page, and that is the defendant here.  It is

15   not common commercial use, literally one of his good friends

16   who has a cropped version of the photograph, not even the full

17   portion.

18          THE COURT:  Why don't you use that microphone.  It

19   would be better and closer to you.

20          MR. NEWBERG:  With no copyright notice on it

21   whatsoever.  It hasn't been licensed, ever.  There is no market

22   for it.  There hasn't been a market.  No market was affected,

23   no market will be affected.  It was simply literally a, "Rest

24   in Peace" message to Leon Redbone.  Leon Redbone's profile

25   picture, it wasn't one of his pictures and his photos.  It was

JBEJUSHC                      Conference

1    just showing his profile picture.  It clearly wasn't used for

2    creative purpose.  Every single one of the factors for fair use

3    lines up.

4            The other thing that I would say is in terms of the

5    value, I mean they keep going to this zero offer.  We had

6    gotten offers from them 25 and 24, 10, 5, 2, 1200, et cetera.

7    We had made an offer of judgment in this case which got ignored

8    which is more than the statutory minimum.  So in addition to

9    fair use, we believe that we've got a good argument to have

10   costs and fees under Rule 68, and so one open issue I did want

11   to bring up is defendant does plan on moving for a bond to

12   continue with this case.  We think we have a very strong

13   argument.

14           THE COURT:  When do you plan to bring that motion?

15           MR. NEWBERG:  I can bring it within the next two

16   weeks.

17           THE COURT:  All right.  Why don't you file it within

18   the next two weeks.  Mr. Liebowitz can respond two weeks

19   thereafter, and you can reply a week thereafter.

20           I am going to limit discovery.  I am not going to

21   limit discovery substantively.  I am persuaded that there is no

22   reason to do that here, that it wouldn't lead too much to an

23   efficiency game.  However, given what I sense is the amount in

24   controversy, and my discretion under Rule 26 with respect to

25   ensuring discovery is proportional to the case, I am going to

JBEJUSHC                          Conference

1     limit depositions to one per side.

2                 If you want to take more than that, you are going to

3     need to seek leave of me and explain why it is necessary.  The

4     one is premised on the assumption the person who posted the

5     photograph and 30 (b)(6) are one and the same person, so I when

6     I say "one," it is a combined individual and corporate

7     depositions.  So I want to be clear about that.  If that proves

8     not to be the case, then I would not limit it to one, and

9     plaintiff could take two of the defendants, the person who

10    posted it and the corporate representative.

11                I will in light of that set a deadline for the

12    completion of discovery, and also you need the time you

13    proposed, and instead I'll give you until January 31st of next

14    year to complete discovery.  Then I will have you back the week

15    after that, namely, on February 6th, at 3:30 in the afternoon,

16    at which point we will see where things stand and what motions

17    you would anticipate filing and the like.

18                I may well see you before that.  If I do decide to

19    hold an evidentiary hearing in connection with the sanctions

20    motion, I have already given you your briefing schedule on

21    that, and I will remind you in your opposition and reply, you

22    should address whether a hearing should be held and, if so,

23    what it would look like and how we should proceed depending on

24    who the witnesses should be, and you should discuss who should

25    be called as a witness.

1        A couple of quick comments, reminders.  Mr. Liebowitz

2   has heard this before, but first, that January 31st deadline is

3   a fixed and firm deadline.  You should not assume you will get

4   more time for discovery than that.  There is obviously no

5   expert discovery to be had here, so that is the end of

6   discovery.

7        The interim discovery deadline set forth in Paragraph

8   9 are subject to change by written agreement between you.  It

9   does need to be in writing.  You do need my permission

10   otherwise.  However, that January 31 deadline is one I am

11   setting, and do not assume you will get more time.

12        If you have an application on that front, it better be

13   in writing, and better be filed on ECF, and better be filed as

14   a letter motion, and better be filed before January 31, and you

15   better have a good argument why additional time is needed in

16   that regard.  Don't assume it will be granted.

17        If there are discovery disputes along the way, you're

18   required to confer with one another in an effort to resolve

19   them in good faith.  I would strongly urge you to have a

20   written record of this communication.  Hopefully you can sort

21   things out nonetheless.  If you can't, then either side can

22   file a letter motion, not to exceed three pages, seeking

23   discovery under Rule 37.2 conference, and the other side has

24   three business days in which to respond, and I will resolve the

25   issue promptly by written order or by some form of conference.

JBEJUSHC                    Conference

1          Try to work it out.  If you can't work it out, there

2    is a process in place to work it out for you, and you better

3    avail yourself of it in a timely fashion.  Otherwise, you will

4    not get whatever it is you think you're entitled to or

5    additional time, either.

6          That I think resolves all I needed to accomplish

7    today.  I will obviously be looking and reading with care

8    whatever you file on both the sanctions issue and the bond

9    issue.  Is there anything else that you need to address today?

10         MR. LIEBOWITZ:  Nothing, your Honor.  Thank you.

11         MR. NEWBERG:  One question, I mentioned leave to amend

12   the notice and registration issues.  I respectfully ask for

13   that.

14         THE COURT:  When would you be able to do that?

15         MR. NEWBERG:  Any day next week would be fine.  It is

16   very limited.

17         THE COURT:  I will give you until next Friday to file

18   an amended answer.  Anything else?

19         MR. NEWBERG:  No, your Honor.

20         THE COURT:  We are adjourned.  Thank you.

21         (Court adjourned)

22

23

24

25