**McGuireWoods LLP**
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
Phone: 703.712.5000
Fax: 703.712.5050
www.mcguirewoods.com

**Brad R. Newberg**
Direct: 703.712.5061

bnewberg@mcguirewoods.com
Fax: 703.712.5187

## McGuireWoods

January 15, 2020

**VIA ECF**
The Honorable Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Furman_NYSDChambers@nysd.uscourts.gov

Re:   *Usherson v. Bandshell Artist Management*, 1:19-cv-6368 (JMF)

Dear Judge Furman,

We write, as per the Court's Order, in response to Mr. Liebowitz's January 13, 2020 letter (the "January 13 letter").

As this Court is aware, this case was taken on by McGuireWoods LLP pro bono. As this Court is also aware, and has specifically noted in the past, Mr. Liebowitz has a history of settling cases in an apparent effort to avoid sanctions hearings. In our particular case—and to be very clear, the signed settlement agreement is not confidential in any way—I could not in good conscience advise my client, who was not paying my legal fees (and McGuireWoods has eaten the costs), not to take a dismissal with prejudice where it paid nothing, and in fact was given a full and irrevocable license to use the photograph in question for allowing the dismissal.[1]

Given the above, it would be very easy for the Court to conclude that, *despite this Court's very specific warning to Mr. Liebowitz that settling with the Defendant would not mean the end of the sanctions motion*, that was his intent with this settlement.

Regarding Mr. Liebowitz's January 13 letter, certain initial points must be made. First, the motion itself is for specific violations of multiple Court Orders. This was not a simple discovery issue merely between two parties. The Court Ordered the filing of service of process within a certain time. That was ignored. The Court Ordered the service of licensing information within a certain time. That was ignored. The Court (and the mediation office) Ordered an in person mediation to occur. That Order was not only defied, but stories appear to have been invented to explain the defiance, requiring a three and a half hour hearing where the stories only got more and more preposterous—and of course culminating with the testimony of the mediator,

---

[1] I should also note that the agreement does not say that Defendant will bear its own costs and fees, but rather that it will not file "further motions for costs and legal fees." That being said, there was a stipulation on the bearing of costs and fees with the filed dismissal with prejudice.

January 15, 2020
Page 2

who unwaveringly testified that Mr. Liebowitz's core excuse was false (and that he did not have a practice of granting these permissions with Mr. Liebowitz, bur rather, Mr. Liebowitz had a practice of neither he nor his client showing up).

Second, the January 13 letter focuses on Fed. R. Civ. P. 16.  As is clear from the Motion (Br. p. 2), the motion was brought pursuant to the Court's "inherent powers . . . Rules . . . 16 and 41, and under 28 U.S.C. § 1927."

In any case, the January 13 letter makes no reference to any case which deals remotely with the Court's ability to sanction Mr. Liebowitz due to the settlement.  Instead, it cites four cases, the first two of which are on the general principle of waiver, inapplicable to the issue at hand.  Only one of the other two is from this Circuit, an almost 40-year old case that also does not have anything to do with a sanctions motion, never mind one that existed prior to settlement, but rather was a pro se plaintiff moving the court for attorneys' fees for himself two months after he settled his case.  *See Brown v. General Motors Corp.*, 722 F.2d 1009 (2d Cir. 1983).  The other case cited, a Ninth Circuit case from 1984, similarly does not address the issue at hand whatsoever: whether the Court has the power to sanction a party after the case is settled and what form those sanctions can take.

After failing to cite any materially relevant cases, the January 13 letter makes a massive leap.  Without any reason or case cite, it then claims that, because of the settlement and Plaintiff's dismissal of this case, the Court should not even use Defendant's fees and costs related to the sanctions motion as a proxy for the monetary portion of the Court's sanctions award.

Frankly, when Mr. Liebowitz requested leave to make the January 13 filing, one would have presumed he had some case law to support his position.  Instead, he has none.

Furthermore, the majority of the January 13 letter goes to points for which Mr. Liebowitz received no leave: the amount he should be sanctioned.  Plaintiff and Mr. Liebowitz had the ability to make similar arguments in their response to the sanctions motion and they should not be permitted to expand upon those arguments now.  In any case, the ability to cite a few cases in history where sanctions for non-compliance with rules were a low amount has little relevance when dealing with a motion for the violation of multiple Court Orders, and an attorney who has been sanctioned over and over by this Court, including, among others, sanctions for falsehoods to the Court (resulting in a referral to the Court's grievance committee, *see Berger v, Imagina Consulting, Inc.*, 18-cv-8956-CS) and, still pending in *Wisser v. Vox Media*, 19-cv-01445-LGS, a sanctions motion for allegedly forging a client's signature onto Interrogatory responses.

The January 13 letter also deals with monetary sanctions only.  Respectfully, it is time for this Court to go well beyond monetary sanctions.  Monetary sanctions have done nothing to curb the behavior that has led to the various sanctions awards.  It seems clear that such sanctions are just viewed as a cost of doing business, leading Mr. Liebowitz to expand his number of filings in this Court and in others.

January 15, 2020
Page 3

Among the various additional sanctions available to the Court include: the ability to send this matter to the Court's grievance committee to be added to the proceedings presumably already started there from the *Berger* case; the ability to disbar Mr. Liebowitz from this Court (while Judge Seibel felt the need to send the issue to the grievance committee, "Courts have long recognized an inherently authority to suspend or disbar lawyers" *In re Snyder*, 472 U.S. 634, 643 (1985) (citing cases going back 200 years)); the ability to set requirements and barriers related to the Liebowitz Law Firm or attorneys working with that law firm filing lawsuits (such as our recommendation that, to the extent he is allowed to keep practicing, the service of any lawsuit should include the service of a United States Copyright Office *certified* copy of the deposit copies associated with any copyright registration related to the lawsuit); and, to the extent the Court finds Mr. Liebowitz's January 8 testimony to have been false, the ability to send the matter to the U.S. Attorney's office.

Finally, this Court is aware of my serious concerns regarding Mr. Usherson's awareness of the mediation prior to October 31 and this sanctions motion. I also note that while it is not entirely clear, it appears Mr. Usherson's signature on the settlement agreement could be an e-signature. Given the Court's concern that settlements such as these may be entered into to avoid sanctions motions, the Court could consider requiring the in camera production of Mr. Liebowitz's communications with Mr. Usherson, to include those making Mr. Usherson aware of the mediation and the reasons for settlement and Mr. Usherson's transmittal of the signed settlement agreement to Mr. Liebowitz.

Respectfully submitted,

*s/Brad R. Newberg/*
Brad. R. Newberg
*Attorney for Defendant Bandshell Artist Management.*