**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ARTHUR USHERSON,

                        Plaintiff,

            v.

BANDSHELL ARTIST MANAGEMENT,

                        Defendant.

---

RICHARD LIEBOWITZ; LIEBOWITZ LAW
FIRM, PLLC,

                        Miscellaneous.

---

No. 19-CV-6368 (JMF)

ORAL ARGUMENT REQUESTED

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION BY PROPOSED ORDER TO SHOW CAUSE FOR STAY PENDING APPEAL**

MORVILLO ABRAMOWITZ GRAND
  IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 2

RELEVANT FACTS .................................................................................................... 4

ARGUMENT .............................................................................................................. 10

    I.      The Court's Non-Monetary Sanctions Irreparably Will Harm Mr. Liebowitz And LLF
            Because The Sanctions Will Cause Severe Economic And Reputational Damage To
            Mr. Liebowitz And LLF's Law Practice.................................................................... 11

    II.     "Serious Questions" Exist As To Whether The Court's Factual Findings And Legal
            Conclusions Were An Abuse Of Discretion ............................................................. 13

          1.   A "serious question" exists as to whether the Court's factual findings were
                supported by clear and convincing evidence ....................................................... 14

          2.   A "serious question" exists as to whether the Court abused its discretion by
                imposing sanctions beyond what was reasonably necessary for deterrence .......... 18

          3.   A "serious question" exists as to whether the Court abused its discretion by
                altering the statutory presumption of validity in copyright cases ......................... 23

    III.    A Stay Will Not Harm Defendant Bandshell ............................................................. 23

    IV.    A Stay Is In The Public Interest Because It Will Permit Continued Vindication
            Of The Rights Of Copyright Plaintiffs Who Have Limited Alternatives For
            Recovery ................................................................................................................. 24

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Records LLC v. Usenet.com, Inc.*,
  608 F. Supp. 2d 409 (S.D.N.Y. 2009) ................................................................. 19

*Brenntag Int'l Chem., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999) ...................................................................... 11, 13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................... 18, 19

*Chicoineau v. Bonnier Corp.*,
  No. 18-CV-3264, 2018 WL 6039387 (S.D.N.Y. Oct. 16, 2018) ........................... 23

*Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ............................................................................ 14

*DC Comics v. Pac. Pictures Corp.*,
  No. 10-CV-3633, 2013 WL 1389960 (C.D. Cal. Apr. 4, 2013) ............................. 24

*Dexter 345 Inc. v. Cuomo*,
  663 F.3d 59 (2d Cir. 2011) ............................................................................ 11

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*,
  782 F.2d 329 (2d Cir. 1986) ........................................................................... 18

*Enmon v. Prospect Capital Corp.*,
  675 F.3d 138 (2d Cir. 2012) ...................................................................... 20, 22

*Front Carriers Ltd. v. Transfield ER Cape Ltd.*,
  No. 07-CV-6333, 2010 WL 571967 (S.D.N.Y. Feb. 15, 2010) ............................ 25

*Gallop v. Cheney*,
  667 F.3d 226 (2d Cir. 2012) ........................................................................... 20

*Goodman v. Univ. Beauty Prods. Inc.*,
  No. 17-CV-1716, 2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018) ............................ 23

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007) ............................................................................ 13

*Hammer v. Amazon.com*,
  392 F. Supp. 2d 423 (E.D.N.Y. 2005) ............................................................. 21

*HC Trading Int'l Inc. v. Crossbow Cement, SA*,
   No. 08-CV-11237, 2009 WL 4931341 (S.D.N.Y. Dec. 21, 2009) .......................................... 25

*Hill v. Carpenter*,
   323 F. App'x 167 (3d Cir. 2009) ................................................................................................. 21

*Hirschfeld v. Bd. of Elections in City of N.Y.*,
   984 F.2d 35 (2d Cir. 1993) .......................................................................................................... 10

*In re A2P SMS Antitrust Litig.*,
   No. 12-CV-2656, 2014 WL 4247744 (S.D.N.Y. Aug. 27, 2014) .......................................... 13

*In re Accent Delight Int'l Ltd.*,
   16-MC-125, 2018 WL 7473109 (S.D.N.Y. June 27, 2018) ...................................................... 11

*In re Hartford Textile Corp.*,
   681 F.2d 895 (2d Cir. 1982) ........................................................................................................ 21

*In re Martin-Trigona*,
   592 F. Supp. 1566 (D. Conn. 1984) ........................................................................................... 21

*In re Petrobras*,
   193 F. Supp. 3d 313 (S.D.N.Y. 2016) ........................................................................................ 24

*KDH Consulting Grp. LLC v. Iterative Capital Mgmt. L.P.*,
   No. 20-CV-3274, 2020 WL 2554382 (S.D.N.Y. May 20, 2020) ........................................... 13

*Koehl v. Bernstein*,
   740 F.3d 860 (2d Cir. 2014) ........................................................................................................ 14

*Krieger v. Alison Lou LLC*,
   No. 20-CV-2628, Dkt. 17 (S.D.N.Y. June 30, 2020) ............................................................... 13

*Macolor v. Libiran*,
   No. 14-CV-4555, 2015 WL 1267337 (S.D.N.Y. Mar. 18, 2015) ........................................... 19

*Manti's Transp. v. Kenner*,
   No. 13–CV–6546, 2015 WL 1915004 (E.D.N.Y. Apr. 27, 2015) .......................................... 22

*McDermott v. Monday Monday, LLC*,
   No. 17-CV-9230, 2018 U.S. Dist. LEXIS 184049 ................................................................... 19

*Mohammed v. Reno*,
   309 F.3d 95 (2d Cir. 2002) .......................................................................................................... 10

*Mone v. Comm'r*,
    774 F.2d 570 (2d Cir. 1985) ......................................................................... 18

*NatTel LLC v. SAC Capital Advisors*,
    No. 04-CV-1061, 2005 WL 2253756 (D. Conn. Sept. 16, 2005) ............................ 17

*Nken v. Holder*,
    556 U.S. 418 (2009) ......................................................................... 10, 23

*Passlogix, Inc. v. 2FA Tech., LLC*,
    708 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................................................. 22

*Polur v. Raffe*,
    912 F.2d 52 (2d Cir. 1990) ......................................................................... 22

*Shangold v. Walt Disney Co.*,
    275 F. App'x 72 (2d Cir. 2008) ................................................................. 20

*Thapa v. Gonzalez*,
    460 F.3d 323 (2d Cir. 2006) ......................................................................... 10

*U.S. C.F.T.C. v. eFloorTrade*,
    No. 16-CV-7544, 2020 WL 2216660 (S.D.N.Y. May 7, 2020) ............................ 25

*United States v. Am. Express Co.*,
    No. 10-CV-4496, 2015 WL 13735045 (E.D.N.Y. May 19, 2015) ......................... 11

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006) ......................................................................... 15

*Urbont v. Sony Music Entm't*,
    831 F.3d 80 (2d Cir. 2016) ......................................................................... 23

*Ward v. Consequence Holdings Inc.*,
    No. 18-CV-1734, 2020 WL 2219070 (S.D. Ill. May 7, 2020) ............................ 24

*Wolters Kluwer Fin. Servs. v. Scivantage*,
    564 F.3d 110 (2d Cir. 2009) ......................................................................... 14, 22

## **Statutes**

17 U.S.C. § 410(c) ......................................................................... 23

28 U.S.C. § 1927 ......................................................................... 9, 18

## <u>Rules</u>

Fed. R. Civ. P. 16(f) ............................................................................................................... 9

Fed. R. Civ. P. 62(b) ............................................................................................................... 9

Fed. R. App. P. 8(a)(2) .......................................................................................................... 25

## <u>Other Authorities</u>

Shyamkrishna Balganesh, *Copyright Infringement Markets*,
113 COLUM. L. REV. 2277 (2013) .......................................................................................... 25

Richard Liebowitz and the Liebowitz Law Firm ("LLF"), by and through their counsel, hereby respectfully submit this memorandum of law, along with the accompanying Declaration of Richard Liebowitz and Declaration of Bruce Cotler, in support of their motion by proposed order to show cause to stay all aspects of non-monetary sanctions three, four, five, and six imposed by this Court in its June 26, 2020 Opinion and Order (the "Opinion") (Dkt. No. 68) pending appeal (*see* Dkt. No. 74 (Notice of Appeal)).[1]  Mr. Liebowitz and LLF further request this Court issue a stay on an interim basis, pending its resolution of this application.

## <u>INTRODUCTION</u>

This Court imposed an extraordinary set of non-monetary sanctions upon Mr. Liebowitz and LLF that threaten to effectively end their practice of law for a year.  The Court should stay those sanctions pending appeal.  Mr. Liebowitz and LLF easily meet each of the requirements for a stay: they will suffer irreparable harm absent a stay, "serious questions" on the merits exist, a stay will not harm Defendant Bandshell, and a stay is in the public interest.

As to irreparable harm, the breadth of the Court's expansive and unwarranted nationwide sanctions will cause severe economic and reputational damage that will have a significant negative impact on Mr. Liebowitz and LLF's law practice, while simultaneously risking prejudice to Mr. Liebowitz's current clients and removing Mr. Liebowitz's valuable services from the market for future copyright plaintiffs.  As to the merits, serious questions exist as to whether the Second Circuit will affirm the Court's sanctions, given both the nationwide breadth and severity of the sanctions as well as grounds given for imposing them.  In particular, serious questions exist as to whether the Court's factual findings were supported by clear and convincing

---

[1] For the reasons described in the accompanying Declaration of Brian A. Jacobs, Mr. Liebowitz and LLF are proceeding by order to show cause rather than notice of motion because the standard briefing schedule will not allow sufficient time to obtain effective relief.

evidence, whether the Court abused its discretion by imposing sanctions beyond what was reasonably necessary to deter Mr. Liebowitz and LLF, and whether the Court impermissibly altered the statutory presumption of validity in copyright cases.  Moreover, a stay will cause no injury to Defendant, which settled Plaintiff's claim and receives no benefit from the sanctions imposed.  Finally, a stay will promote the public interest, as it will permit the continued vindication of the rights of LLF's clients around the country who otherwise would be prejudiced by these costly, burdensome requirements, and who have limited alternatives for recovery.

## BACKGROUND

Mr. Liebowitz was admitted to practice in 2015.  Liebowitz Decl. ¶ 3.[2]  In his brief legal career, he has championed small-dollar claims (on a contingency basis) on behalf of artists whose copyrights otherwise could have gone unprotected, given the limited nature of their potential recovery and high cost of litigation.  *Id.* ¶¶ 4–5.

Mr. Liebowitz has pursued this unique business model intentionally, because he learned, during his several years as an intern with Bruce Cotler, now President of the New York Press Photographers Association, about working artists' difficulties protecting their rights.  *Id.* ¶ 2. Himself a photographer, and moved by these artists' struggles, Mr. Liebowitz started LLF even though he had no experience or training in running a legal practice.  *Id.* ¶ 4.

In order to provide a sound economic basis for his practice, Mr. Liebowitz accepts a large number of clients and pursues a high number of cases simultaneously.  *Id.* ¶¶ 5–8.  Because copyright laws primarily are federal, these cases typically are litigated in federal courts, with concomitant higher costs and burdens.  Mr. Liebowitz has been able to pursue so many cases in

---

[2] Citations in the form of "Liebowitz Decl. ¶ __" and "Cotler Decl. ¶ __" refer to the Declaration of Richard Liebowitz and Declaration of Bruce Cotler submitted herewith.

part because the federal copyright violations are often beyond question and, as a result, many settle at an early stage. *Id.* ¶ 6. Even so, he and his firm are often stretched thin, and face the constant challenges of an unpredictable and geographically scattered caseload. *Id.* ¶¶ 4, 7.

In accordance with this model, Mr. Liebowitz has represented over 1,200 clients in at least 2,500 individual federal lawsuits. *Id.* ¶¶ 7–8. The vast majority of these cases have resulted in a recovery to Mr. Liebowitz and LLF's clients. *Id.* ¶ 6. One of their largest sources of business is word of mouth. *Id.* ¶ 9.

Mr. Liebowitz and LLF's cases often settle, as Mr. Liebowitz estimates, in the low thousands of dollars. *Id.* ¶ 6. Of such settlements, Mr. Liebowitz accepts a percentage as a contingency fee, less his costs. *Id.* ¶ 5. Given the often limited individual recovery, higher costs, or reduction to the settlement value of Mr. Liebowitz and LLF's cases, could make many claims they currently pursue impractical. *Id.* ¶¶ 5, 10–11. Such harm to Mr. Liebowitz and LLF's practice also would harm their clients, with their otherwise unmet needs. *See id.* ¶¶ 4, 10–11.

Mr. Liebowitz's troubles with various federal courts around the country, the result of his inexperience and perhaps overly ambitious business model, must therefore be considered in context. Even if Mr. Liebowitz possibly is "one of the most frequently sanctioned lawyers" in this District, he is without question one of its most frequent filers. Op. 1; Liebowitz Decl. ¶ 7. Mr. Liebowitz and LLF resolve the vast majority of cases without incident. Liebowitz Decl. ¶ 6; *compare* Op. 1 (noting that Mr. Liebowitz has filed approximately 2,500 cases nationwide) *with id.* at App'x (listing 40 cases in which Mr. Liebowitz was sanctioned). Mr. Liebowitz and LLF can do better, and they have, since the motion for sanctions was filed in this action, set in motion plans to correct the negligence and public faults that they know have harmed their reputation. Taken as a whole, however, their record is more fairly considered not that of the pejoratively

termed "troll[s]" or "lampreys," Op. 1, but rather the result of zealous advocacy to enforce

artists' otherwise unprotected federally guaranteed rights at affordable contingent rates—marred

by the consequences of overwork and relative inexperience.

## RELEVANT FACTS

The underlying action in this case is a claim for damages stemming from infringement of

Plaintiff Arthur Usherson's copyright to a particular photograph of the musicians Bob Dylan and

Leon Redbone (the "Photograph") taken at the 1972 Mariposa Folk Festival.  Among other

things, the Complaint filed on July 10, 2019 alleged that the Photograph was registered with the

U.S. Copyright Office under registration number VAu 1-080-046 (the "046 Registration"), and

that Defendant had published the Photograph without permission or license from Mr. Usherson

in violation of the Copyright Act.  Complaint ¶¶ 9–11 (Dkt. No. 1).

On July 14, 2019, this Court referred the case to mediation, and set a pretrial conference

for October 10, 2019.  Dkt. No. 6.  Subsequently, on motion by LLF, this Court adjourned that

conference to November 14, 2019, and ordered that the "parties shall conduct the in-person

mediation no later than October 31, 2019."  Dkt. No. 13.  The mediation went forward on

October 31, 2019, Op. 5, though the parties had already advanced toward a settlement via

negotiation, Transcript of January 8, 2020 Hearing ("Hearing Tr.") (Dkt. No. 66) at 98–99.

However, Mr. Liebowitz's associate James Freeman appeared in Mr. Liebowitz's stead, and Mr.

Usherson appeared via telephone.  Op. 5; Hearing Tr. 105–06.

On November 6, 2019, Defendant moved for sanctions against Mr. Usherson, as well as

Mr. Liebowitz and LLF, primarily on the basis that their failure to appear at the mediation in

person had violated the Court's order for an in-person mediation.  Dkt. Nos. 14–16.  In the pre-

trial conference on November 14, 2019, as relevant here, Defendant raised the possibility that the

Photograph had been part of a later registration rather than the 046 Registration; Mr. Liebowitz

responded, on the basis of his current information, that he would "have to see what my office did, but this is the correct registration."  Dkt. No. 58-1, at 3–4.

A day later, this Court ordered the parties to file written submissions addressing Defendant's motion for sanctions.  Dkt. No. 20.  On November 18, 2020, Mr. Liebowitz and LLF filed a memorandum of law in opposition arguing, among other things, that Mr. Usherson's telephone appearance substantially complied with the Local Rules and common practice, and that the mediator had granted Mr. Usherson permission to appear remotely and for Mr. Freeman to attend in place of Mr. Liebowitz.  *See* Dkt. No. 21 at 3–4; *see also* Dkt. No. 22 ¶¶ 12–13.

After further submissions from the parties and the mediator, on December 17, 2019, the Court directed that an evidentiary hearing on the proposed sanctions would take place on January 8, 2020 (the "Hearing").  Dkt. No. 42.  On December 18, 2019, the parties filed a stipulation of voluntary dismissal, informing this Court that they had settled the case and agreed that each party would bear its own costs and fees, which the Court so-ordered on December 20, 2019.  Dkt. No. 48.  The Court further directed that it "retains jurisdiction to adjudicate Defendant's pending motion for sanctions," Dkt. No. 48, and that the Hearing would proceed as planned, Dkt. No. 47. The Court specified that testimony would consist only of "cross-examination limited to the issues of whether Mr. Liebowitz obtained advance permission from the Mediator for an associate to appear at the mediation instead of Mr. Liebowitz[,] and for Plaintiff to participate in the mediation by telephone."  Dkt. No. 47.

During the Hearing, the Court heard testimony from Mr. Liebowitz, counsel for Defendant, and the mediator.[3]  As to the issue of whether Mr. Usherson had the mediator's

---

[3] The Court further deemed part of the record "[a]nything that's already on the docket," and took judicial notice of "anything that's docketed in another case."  Hearing Tr. 17.

permission to appear by telephone, Mr. Liebowitz and the mediator's recollections differed.

*Compare* Hearing Tr. 7–8, 21–22, 38 (Mr. Liebowitz's testimony that he had received

permission) *with id.* at 100 (mediator's testimony stating he had not).  Mr. Liebowitz also

testified that he did not make a written record of their discussion on October 30, 2019, *id.* at 39,

42, and the mediator testified that he would not have made a written record if he had granted

permission, *id.* at 101.  The mediator also testified that he could not say whether he expected at

the time that Mr. Usherson would appear in person at the mediation, and said "nothing at all"

about it during the mediation itself.  *Id.* at 104; *see also id*. at 103 (mediator's testimony that he

"[p]robably" would have said something about Mr. Usherson's telephonic appearance in email

exchange with counsel, but expressing uncertainty as to whether he would have in fact done so).[4]

The testimony at the Hearing, pursuant to the Court's prior order, focused solely on the

issues of Messrs. Liebowitz's and Usherson's personal appearances at the mediation, and at the

outset, the Court noted that "the hearing is limited to the two issues that I've flagged."  Hearing

Tr. 2.[5]  Nevertheless, in summation, counsel for Defendant advised the Court of "one last fact,"

namely, Defendant's surprise allegation—and submission of related evidence—that the

Photograph had not been part of the 046 Registration (as alleged in the Complaint).  Hearing Tr.

127–28.  In their own summation, Mr. Liebowitz and LLF advised the Court that they were not

aware of or prepared to address this concern, but confirmed that where their firm did not handle

---

[4] Counsel for Defendant testified that the mediator had told him on the day of the mediation he had not granted permission for Mr. Usherson to appear telephonically, Hearing Tr. 88, but the mediator did not confirm this account, *id.* at 103–05.

[5] Much of the testimony at the Hearing concerned the question of whether Mr. Liebowitz had permission from the mediator to send Mr. Freeman to the mediation in his stead, an issue the Court later concluded was too "muddled" to make factual findings as to Mr. Liebowitz's bad faith by clear and convincing evidence.  Op. 30 n.3.

the registration, they typically rely in large part upon their clients' representations as to whether a particular photograph was registered.  Hearing Tr. 139–41.

Following the Hearing, in accordance with this Court's order, Dkt. No. 52, on January 17, 2020, Mr. Liebowitz and LLF filed a letter that acknowledged their mistake as to the copyright registration alleged in the Complaint, but explained that Mr. Usherson had in fact registered the Photograph with the Copyright Office, just under a different registration (the "272 Registration") that was "effectuated . . . after this lawsuit was filed."  Dkt. No. 57 at 1.  *Id.*  Defendant's response argued that Mr. Liebowitz and LLF had known all along the Photograph had not been copyrighted at the time they filed the Complaint, and had sought to conceal this fact from the Court.  Dkt. No. 58.

On January 24, the Court ordered Mr. Liebowitz, Mr. Freeman, and Mr. Usherson to file declarations explaining, among other things: "the nature and cause" of the registration error, including the responsible person; their respective roles in filing the post-Complaint registration of the Photograph; and when and how they became aware that the Photograph had not been registered until after the filing of the Complaint.  Dkt. No. 59.

In his responsive declaration, Mr. Liebowitz stated that—since the Hearing—he had learned that Zachary Cuff, an administrative employee of LLF, had been told in February 2019 by Mr. Usherson that the Photograph was part of the 046 Registration and had erroneously recorded the same in LLF's internal case-tracking systems.  Dkt. No. 63 ¶¶ 4–8.  Mr. Liebowitz explained that he had relied on this internal note in drafting the Complaint.  *Id.* ¶ 10.  Mr. Liebowitz also explained that he had not played any role in the subsequent registration of the Photograph in the 272 Registration, which took place at Mr. Usherson's request, and was

handled as a routine matter by LLF's staff.  *Id.* ¶¶ 13–14.  Mr. Liebowitz also confirmed that he
was not aware of this error at the November 14, 2019 conference.  *Id.* ¶ 17.

Mr. Usherson's declaration corroborated Mr. Liebowitz's account.  Mr. Usherson
explained that in 2011 he had personally registered, as part of the 046 Registration, a series of
photographs he took at the 1972 Mariposa Folk Festival portraying Bob Dylan and Leon
Redbone.  Dkt. No. 62 ¶¶ 3–4.  Mr. Usherson also explained that shortly after he retained Mr.
Liebowitz and LLF as counsel in early 2019, he shared with Mr. Cuff several instances of what
he believed to be infringements of his copyrighted work, including a use of the Photograph.  *Id.*
¶¶ 5–7.  As part of these exchanges, Mr. Cuff had asked Mr. Usherson to confirm the Photograph
was registered.  *Id.* ¶ 8.  Mr. Usherson stated that he confirmed to Mr. Cuff that the Photograph
was registered under the 046 Registration later used in the Complaint, and further mailed Mr.
Cuff a CD containing all photographs associated with the 046 Registration.  *Id.* ¶¶ 8–9.

Months later, Mr. Usherson told the Court, he alerted Mr. Liebowitz and Mr. Cuff to
what he believed to be Defendant's infringing use of the Photograph, which at that time Mr.
Usherson still believed to be part of the 046 Registration.  *Id.* ¶¶ 10–11, 13.  This infringement
was the basis for the Complaint.  *Id.* ¶ 12.  Mr. Usherson also explained to the Court that,
because he understood his photographs of the Mariposa Folk Festival to be targets for
infringement, some time after filing the Complaint, he had asked Mr. Cuff to register an
additional set of 30 photographs of the festival (including the Photograph).  *Id.* ¶¶ 16–17.  Mr.
Usherson affirmed that he had, until shortly before making his declaration, consistently believed
that the Photograph had been registered in 2011 as part of the 046 Registration.  *Id.* ¶ 19.  Mr.
Usherson attributed this error to the similarities between the Photograph and other photographs
of Bob Dylan and Leon Redbone that were part of the 046 Registration.  *Id.* ¶ 20.

On June 26, 2020, the Court issued its Opinion, in which the Court found that clear and convincing evidence supported three findings: (1) that Mr. Liebowitz and LLF violated multiple court orders; (2) that Mr. Liebowitz misrepresented to the Court whether the mediator had granted Mr. Usherson permission to appear by phone; and (3) that Mr. Liebowitz and LLF falsely alleged copyright registration of the Photograph, and failed to reasonably investigate the registration of that Photograph. Op. 25. On this basis, the Court imposed a set of monetary and non-monetary sanctions upon both Mr. Liebowitz and LLF on three legal bases: Rule 16(f) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority. Op. 22–24, 54.

As part of its non-monetary sanctions, this Court required: that, within thirty days, Mr. Liebowitz and LLF serve a copy of the Opinion on all of their clients (Sanction 3), and file a copy of the Opinion in all of their pending cases (Sanction 4); that, in any action initiated through June 26, 2021, Mr. Liebowitz and LLF file a copy of the Opinion within two days of initiating the case (Sanction 5); and that, in any copyright infringement action initiated through June 26, 2021, Mr. Liebowitz and LLF file as an exhibit to the complaint a copy of the deposit files maintained by the U.S. Copyright Office reflecting prior registration of the relevant copyrighted work (Sanction 6). Op. 54. Mr. Liebowitz and LLF now seek to stay the enforcement of these non-monetary sanctions pending appeal.[6]

---

[6] This Court's order also imposed two other sanctions, which Mr. Liebowitz and LLF are also appealing. As to Sanction 1, which directed that by July 6, 2020, Mr. Liebowitz and LLF pay to the Clerk of Court sanctions totaling $103,517.49, a Chase Bank cashier's check (with LLF as remitter) in the full amount of the sanction was timely deposited with the Clerk of Court. *See* Dkt. (unnumbered entry for July 6, 2020). The check represents security for the full monetary sanction, operates as an automatic stay of the enforcement of the monetary sanction pursuant to Fed. R. Civ. P. 62(b), and, accordingly, should not be construed as a waiver of Mr. Liebowitz and LLF's right to appeal the monetary sanction or any aspect of the Court's decision thereto.

## ARGUMENT

This Court should grant Mr. Liebowitz and LLF a stay pending appeal, as they satisfy the applicable standard.  Courts consider four factors: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected."  *Hirschfeld v. Bd. of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (citations and quotation marks omitted).  The irreparable harm and possibility of success factors "are the most critical," *Nken v. Holder*, 556 U.S. 418, 434 (2009), and are treated "somewhat like a sliding scale," *Thapa v. Gonzalez*, 460 F.3d 323, 334 (2d Cir. 2006); that is, "more of one excuses less of the other," *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (citation and quotation marks omitted).

The Court's extraordinarily expansive nationwide non-monetary sanctions will, absent a stay, irreparably harm Mr. Liebowitz and LLF, as well as their present and future clients, because those sanctions will cause severe economic and reputational damage which will have a significant negative impact on Mr. Liebowitz and LLF's law practice.  As to the merits, serious questions exist as to whether the Second Circuit will affirm given both the scope of the Court's sanctions and the reasons given for imposing them.  In particular, serious questions will be raised on appeal as to whether the Court abused its discretion in finding by clear and convincing evidence that Mr. Liebowitz acted in bad faith, in imposing geographically and substantively expansive sanctions far beyond what was reasonably necessary to deter Mr. Liebowitz and LLF, and in altering the statutory presumption of validity in copyright cases.  A stay will cause no

---

As to Sanction 2, which directed that by July 6, 2020, Mr. Liebowitz and LLF serve a copy of the Opinion on Mr. Usherson, Mr. Liebowitz timely complied.  Dkt. No. 69.

injury to Defendant, and will serve the public interest, by permitting continued defense of the

rights of Mr. Liebowitz and LLF's clients, who may have limited alternatives for recovery.

I.      **The Court's Non-Monetary Sanctions Irreparably Will Harm Mr. Liebowitz And LLF Because The Sanctions Will Cause Severe Economic And Reputational Damage To Mr. Liebowitz And LLF's Law Practice.**

Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial

chance that upon final resolution of the action the parties cannot be returned to the positions they

previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir.

1999).  Irreparable harm must be "actual and imminent," as opposed to "speculative." *Dexter

345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011).

If the non-monetary sanctions imposed by this Court are enforced before the Second

Circuit has an opportunity to consider Mr. Liebowitz and LLF's appeal, Mr. Liebowitz and LLF

will suffer severe and irreparable reputational and economic harm to their law practice.  Absent a

stay of enforcement pending appeal, therefore, their right to appeal may lose all practical value.

The Court's non-monetary sanctions are extraordinarily broad in their scope and severe in

their effect.  Sanctions 3, 4, and 5 require Mr. Liebowitz and LLF to serve a copy of the

Opinion—which discusses at length and in detail Mr. Liebowitz and LLF's shortcomings in this

case and in others—on current and future clients, as well as in current and future actions, on a

nationwide basis.  These sanctions are likely to have the predictable effect of undermining Mr.

Liebowitz and LLF's relationships with its current and future clients and, beyond that, chilling

Mr. Liebowitz and LLF's relationships with courts across the country, also to the prejudice of

Mr. Liebowitz, LLF, and their clients.  *See* Liebowitz Decl. ¶ 11; *In re Accent Delight Int'l Ltd.*,

No. 16-MC-125, 2018 WL 7473109, at *1 (S.D.N.Y. June 27, 2018) (Furman, J.) (granting stay

in part on basis "the proverbial bell cannot be unrung" once court's order is enforced); *United

States v. Am. Express Co.*, No. 10-CV-4496, 2015 WL 13735045, at *6 (E.D.N.Y. May 19,

2015) (collecting cases in which "loss of market share and goodwill" were considered evidence of irreparable harm).  Put simply, Sanctions 3, 4, and 5 amount to a nationwide scarlet letter on Mr. Liebowitz and LLF.  These sanctions place Mr. Liebowitz in an impossible position: he must choose between either not initiating cases so as to avoid having to file the Opinion, or continuing to initiate cases, filing the Opinion, and thereby risk causing the court to view the client in a negative light by virtue of the client's association with Mr. Liebowitz.  Mr. Liebowitz must, in other words, choose between not practicing, and practicing in a way in which his actions will redound to the detriment of his clients.  This Court has forced Mr. Liebowitz to make this impossible choice notwithstanding that Mr. Liebowitz and LLF have, over the past several years, successfully represented and vindicated the rights of copyright holders in thousands of proceedings.  *See* Liebowitz Decl. ¶¶ 7–8; Cotler Decl. ¶ 4.

Further, Sanction 6 will impose enormous monetary and time-related burdens on Mr. Liebowitz and LLF, as well as their future clients.  Ordering a deposit copy of the copyrighted work from the U.S. Copyright Office has cost Mr. Liebowitz, per his Declaration, between $200 and $1,200, and deposit copies often are not delivered for several months—a time period which has been further lengthened during the current pandemic.  *See* Liebowitz Decl. ¶ 10.  Given the nature of Mr. Liebowitz and LLF's practice, which relies on a high volume of cases to make it economically feasible to provide legal services to artists whose cases, individually, generally have small maximum recoveries, the deposit copy requirement could impose on Mr. Liebowitz and LLF costs of thousands of dollars and thus render the filing of many copyright infringement actions—and the firm's continued operation—financially untenable.  *See* Liebowitz Decl. ¶¶ 5–7, 10; Cotler Decl. ¶¶ 3–4; Hearing Tr. 139.  In addition, Sanction 6 risks precluding Mr. Liebowitz and LLF—and their clients—from pursuing otherwise meritorious cases on statute of

limitations grounds if deposit copies do not timely arrive. *See* Liebowitz Decl. ¶ 10; Cotler Decl. ¶¶ 3–4; Hearing Tr. 127 (statement from counsel for Defendant that "it takes the [C]opyright [O]ffice a really long time" to send deposit copies).[7]

In sum, the non-monetary sanctions will impose severe monetary and reputational costs, along with legal risks, on Mr. Liebowitz, LLF, and their clients. Absent a stay pending appeal, therefore, "unscrambl[ing] the eggs" will not be possible even if Mr. Liebowitz and LLF prevail on appeal. *KDH Consulting Grp. LLC v. Iterative Capital Mgmt. L.P.*, No. 20-CV-3274, 2020 WL 2554382, at *7 (S.D.N.Y. May 20, 2020) (citation and quotation marks omitted); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam) (irreparable harm exists where the harm "cannot be remedied" by a favorable ruling from the court of appeals). Because there is a "substantial chance" that, absent a stay pending appeal, Mr. Liebowitz and LLF "cannot be returned to the positions they previously occupied," *Brenntag*, 175 F.3d at 249, this factor strongly favors a stay.

## II.   "Serious Questions" Exist As To Whether The Court's Factual Findings And Legal Conclusions Were An Abuse Of Discretion.

Because Mr. Liebowitz and LLF will suffer severe and irreparable harm if a stay pending appeal is not granted, they need only demonstrate that "there are 'serious questions' going to the merits of the dispute" and that "the balance of hardships tips *decidedly* in [their] favor." *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014) (emphasis in original) (quoting *Citigroup Global Mkts, Inc. v. VCG Special Opportunities*

---

[7] Indeed, Sanction 6 already is affecting LLF's practice. Liebowitz Decl. ¶ 10. On June 30, 2020, in another action, Magistrate Judge Cave, relying on this Court's Opinion, directed Mr. Liebowitz file a deposit copy of the work at issue by July 8, 2020. *Krieger v. Alison Lou LLC*, No. 20-CV-2628, Dkt. 17, at 2–3 (S.D.N.Y. June 30, 2020). Mr. Liebowitz sought modification of the order, explaining that timely compliance would be impossible given the processing time required to obtain a deposit copy. *Id.* at Dkt. 19. Notwithstanding this, Judge Cave denied modification. *Id.* at Dkt. 21.

*Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).  "The 'serious questions' standard permits a

district court to grant a . . . stay in situations where it cannot determine with certainty that the

moving party is more likely than not to prevail on the merits . . . , but where the costs outweigh

the benefits of not granting the . . . stay."  *Id.* (quotation marks and alterations omitted) (quoting

*Citigroup*, 598 F.3d at 35).  As Judge Nathan has explained:

> A "serious questions" standard is particularly appropriate when a district court is
> asked to stay its own order; under such circumstances, the court has already
> determined that the applicant failed to succeed on the merits. Asking the district
> court to then find that the movant is likely to succeed on the merits on appeal would
> require the district court to find that its own order is likely to be reversed—a
> standard that for practical purposes is rarely going to be satisfied.

*Id*.

### 1.  A "serious question" exists as to whether the Court's factual findings were supported by clear and convincing evidence.

 "A district court's imposition of sanctions for misconduct is reviewed for abuse of

discretion."  *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014) (per curiam) (citation omitted).

Because in imposing sanctions "the district court [acts as] accuser, fact finder[,] and sentencing

judge all in one, . . . review is more exacting than under the ordinary abuse-of-discretion

standard."  *Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009)

(citation and quotation marks omitted).

The record in this case presents a "serious question," *Citigroup*, 598 F.3d at 35, whether

this Court abused its discretion in finding that the second and third grounds upon which it

sanctioned Mr. Liebowitz and LLF were supported by clear and convincing evidence.

With respect to the second ground for sanctions, the Court found "by clear and

convincing evidence" that Mr. Liebowitz and LLF's representations that the mediator granted

Mr. Usherson permission to participate in the mediation by phone "were false and made in bad

faith."  Op. 29–30, 35.  As the Hearing transcript reveals, a serious question exists as to whether

this factual finding was an abuse of discretion, as there was insufficient evidence in the record

for the Court to conclude that the mediator did not grant Mr. Usherson permission to appear by

phone.  The primary evidence the Court relied on for this point was the mediator's testimony that

Mr. Liebowitz did not ask for such permission.  *See* Op. 30; Hearing Tr. 100–01; Decl. of

Mediator ¶ 7 (Dkt. No. 39).  But the other evidence cited by the Court to corroborate the

mediator's testimony was equivocal at best, and the testimony alone does not support the finding.

For example, although the Court read the mediator's email exchange with counsel for

Defendant—in which counsel stated, the night before the mediation, that he "would have

assumed Mr. Usherson either flew to NY tonight or is likewise on a very early plane" and the

mediator responded, "I understand"—as indicating the mediator did not know that Mr. Usherson

would appear by phone, Op. 30–31, an equally plausible reading of the mediator's email is that

he *was* so aware.  If the mediator believed, having spoken with Mr. Liebowitz earlier that

evening, that Mr. Usherson would be attending the mediation in person (as the Court suggests is

the case), the mediator equally likely would have said so in his response to counsel, rather than

merely acknowledging counsel's assumption.  In sum, there is, on this record, a serious question

whether this Court abused its discretion in relying on the mediator's essentially uncorroborated

testimony to find by clear and convincing evidence that Mr. Liebowitz lied about requesting

permission for Mr. Usherson to appear by phone.  *Cf. United States v. Stewart*, 433 F.3d 273,

315 (2d Cir. 2006) ("[A] conviction [for perjury] may not be obtained solely on the

uncorroborated oath of one witness." (citation and quotation marks omitted)).[8]

---

[8] Notwithstanding that the Court found the mediator to be credible, Op. 30, the Court
nevertheless discounted portions of the mediator's testimony that were corroborative of Mr.
Liebowitz's testimony and argument.  In particular, although the mediator acknowledged,
critically, that "in a few prior mediations [Mr. Liebowitz's] client appeared by telephone without

With respect to the third ground for sanctions—the Court's conclusion that Mr. Liebowitz acted in bad faith by falsely alleging, without investigation, that the Photograph was registered before filing suit—a serious question exists whether this Court abused its discretion in finding that clear and convincing evidence supported its conclusion.  The record evidence plausibly provides that Mr. Usherson, years prior to engaging LLF on this matter, sought copyright registration of over two thousand photographs he took at a 1972 music festival (the "046 Registration"), which included five similar photographs of the musicians Bob Dylan and Leon Redbone; that, after engaging LLF, Mr. Usherson sent the images contained on the 046 Registration to Zachary Cuff, an LLF staff employee, who entered the photographs into LLF's records; that, in June 2019, Mr. Usherson discovered Defendant's use of the Photograph, which he mistakenly believed to be a cropped version of one of the photographs contained within the 046 Registration; that, in July 2019, Mr. Usherson authorized Mr. Liebowitz to initiate an infringement action as to the Photograph based on this mistaken belief; that Mr. Usherson, aware that his photographs were targets of infringement, thereafter sent Mr. Cuff a CD containing a set of thirty additional photographs from the same 1972 music festival for registration; that LLF's staff (but not Mr. Liebowitz) registered those photographs in August 2020 (the "272 Registration"), as it often does for clients separate from its litigation practice; and that neither

---

incident," Decl. of Mediator ¶ 7, thus lending credence to Mr. Liebowitz's testimony and argument that he had a past practice with the mediator of client participation by phone, Hearing Tr. 4–5, 7–15, 46, 74–79, 132–35, the Court found Mr. Liebowitz's argument to be an after-the-fact justification, first made in December 2019, that was incompatible with his conduct in asking the mediator for permission, Op. 34–35.  But Mr. Liebowitz's past-practice argument was first made at the November 14, 2019 conference—the first conference at which the issue was discussed.  *See* Dkt. No. 36, at 9.  In any event, the past-practice argument—beyond being corroborated by the mediator's credible testimony—is compatible with Mr. Liebowitz's not having arranged a flight for Mr. Usherson to appear in person: If Mr. Liebowitz reasonably believed the mediator would likely approve client participation by phone, he would not have believed it necessary to have arranged a flight.

Mr. Liebowitz nor Mr. Usherson knew the Photograph was in fact part of the 272 Registration rather than the 046 Registration until Defendant obtained a deposit copy. *See generally* Dkt. Nos. 62–63; *see also* Hearing Tr. 127–28, 140–41; Dkt. No. 63-1 (juxtaposing the Photograph with five similar photographs in the timely 046 Registration).

> Notwithstanding this evidence, the Court found:

> [I]t is hard to believe that Mr. Liebowitz, as "lead counsel for Plaintiff" and the "founding member of Liebowitz Law Firm," was unaware [that the firm had knowledge that the Photograph had not been registered prior to the filing of the complaint]. It is far more plausible—indeed likely—that, upon receiving the Photograph from Mr. Usherson, Mr. Liebowitz realized that it had not yet been registered and sought to quietly take care of the problem, hoping that Bandshell and the Court would be none the wiser and he would escape dismissal.

Op. 41 (citations omitted). But there is no clear and convincing record evidence that Mr. Liebowitz in fact initiated this action knowing the Photograph was unregistered. No evidence as to Mr. Liebowitz or other LLF staff members' knowledge at the time of filing was presented at the Hearing, which focused on the mediation issue. Moreover, Mr. Usherson stated that, although he sent a CD containing the Photograph (among other photographs) to LLF after initiation of this action for copyright registration, he did not know that the Photograph was not registered until January 2020. Dkt. No. 62 ¶¶ 11–15, 19–20. That account is unrebutted. Given the photographer's own confusion as to whether the Photograph was a cropped version of a similar photograph contained within the timely 046 Registration, it stands to reason that Mr. Liebowitz and LLF also did not know on filing the action that the Photograph was not registered.

The more consistent reading of the record is that the registration error in this case was the product of Mr. Liebowitz and LLF's reliance on their client, where two photographs were similar. *Cf. NatTel LLC v. SAC Capital Advisors*, No. 04-CV-1061, 2005 WL 2253756, at *16 (D. Conn. Sept. 16, 2005) (declining to impose Rule 11 sanctions for alleged frivolous claims where it was not "clear-cut" that the claims were foreclosed by law), *aff'd*, 370 F. App'x 132 (2d

Cir. 2006).[9]  In sum, the record presents a serious question as to whether this Court erred in

finding "that Mr. Liebowitz brought—and maintained—this case in bad faith by willfully

disregarding the fact that the case was fatally flawed from its inception."  Op. 38.[10]

2. **A "serious question" exists as to whether the Court abused its discretion by imposing sanctions beyond what was reasonably necessary for deterrence.**

The non-monetary sanctions imposed by this Court are extraordinarily broad in their

geographic scope and unusually severe in their substantive impact.  The Second Circuit has

warned that, because the power to sanction "carries with it the potential for abuse," statutes

authorizing sanctions "should be construed narrowly and with great caution, so as not to stifle the

enthusiasm or chill the creativity that is the very lifeblood of the law."  *Mone v. Comm'r*, 774

F.2d 570, 574 (2d Cir. 1985) (discussing 28 U.S.C. § 1927) (citation and quotation marks

omitted).  The Supreme Court has underlined that the inherent power to sanction "must be

exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Sanctions therefore must be "no more severe than reasonably necessary to deter repetition" of the

conduct "or comparable conduct by similarly situated persons."  *Macolor v. Libiran*, No. 14-CV-

---

[9] Mr. Liebowitz testified, without contradiction, that in November 2019 LLF retained experienced outside counsel "to help out on business management and . . . situations that may arise and that could help with the practice."  Hearing Tr. 81.  Mr. Liebowitz further acknowledged that "certain things are not best practice," "that things need to change," and that he retained counsel "to help out . . . so that things like this don't happen again; and that all the T's are crossed and I's are dotted."  Hearing Tr. 81–82.  Mr. Liebowitz has continued these efforts since the Hearing; in particular, LLF has adopted new practice management software, which helps the firm manage case calendaring and alerts, case documents and discovery, copyright registration information, and other important case details.  Liebowitz Decl. ¶ 12.

[10] The record in this case also presents a serious question whether the Court abused its discretion in sanctioning Mr. Liebowitz and LLF for their conduct before *other* courts.  The Second Circuit has held that "[v]iolations of orders in other litigation should not be the basis for an award of fees in the instant litigation; such violations are best dealt with in the actions in which they have occurred."  *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986).

4555, 2015 WL 1267337, at *5 (S.D.N.Y. Mar. 18, 2015) (Furman, J.) (citation and quotation marks omitted). The record in this case presents a serious question whether this Court abused its discretion by imposing sanctions that violate this bedrock principle of proportionality.

As noted, while pejoratively referring to Mr. Liebowitz and LLF's low-priced service to underserved artists as characteristic of "troll[s]," Op. 1 (quoting *McDermott v. Monday Monday, LLC*, No. 17-CV-9230, 2018 U.S. Dist. LEXIS 184049, at *9–10 (S.D.N.Y. Oct. 26, 2018)), this Court has imposed severe, nationwide sanctions that impose enormous monetary and reputational costs on Mr. Liebowitz and LLF, as well as its clients. The geographic scope and substantive impact of the sanctions present the serious question whether this Court acted with "restraint and discretion" and went beyond ensuring only "the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43–44; *see also Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 442 (S.D.N.Y. 2009) (holding "effectively case-dispositive" sanction to be "disproportionate to [the] sanctionable conduct" and citing cases). Further, in imposing sanctions, this Court repeatedly referred to Mr. Liebowitz's possible disbarment, even suggesting its desirability, before ultimately acknowledging that disbarment "is an issue for the [Southern District's] Grievance Committee." Op. 3, 45–46. Notwithstanding this acknowledgment, the non-monetary sanctions imposed will negatively impact Mr. Liebowitz's nationwide practice for a year. Sanction 5 in particular, which requires that Mr. Liebowitz and LLF file a copy of the Opinion in any new case for a year, will require that Mr. Liebowitz and LLF either refrain from taking on new cases, or else comply and risk immediately tainting each new court's view of them and, by extension, their clients—an impossible choice that could lead them not to file new cases at all. In imposing such a sanction, the Court circumvents the Grievance Committee, the New York State bar, and other formal disciplinary bodies better suited to address such issues.

Even in cases of egregious conduct, courts have not imposed sanctions of the geographic scale and substantive impact imposed here.  For example, in *Gallop v. Cheney*, the plaintiff's attorney (in an action accusing officials of orchestrating the 9/11 attacks), after losing an initial appeal, filed a "frivolous and vexatious motion to disqualify the panel 'and any like-minded colleagues'" from further considering the case.  667 F.3d 226, 227 (2d Cir. 2012) (per curiam). The Second Circuit "conclud[ed] that [the attorney] acted in bad faith," and accordingly directed the attorney "to provide notice of the sanctions imposed upon him in this case . . . to any federal court in this Circuit before which he appears or seeks to appear." *Id.* at 230.  The Second Circuit thereby limited the geographic scope of the sanction to courts within the Circuit only.

Similarly, in *Enmon v. Prospect Capital Corp.*, a law firm made numerous material misrepresentations and frivolous arguments in connection with several motions and other filings. 675 F.3d 138, 144–47 (2d Cir. 2012).  The Second Circuit affirmed the aspect of the sanctions imposed by the district court directing the law firm to "submit [its] sanctions order . . .  with any future *pro hac vice* applications in the Southern District of New York."  *Id.* at 148.  Other courts have imposed similarly delimited sanctions even when faced with more egregious conduct.  *See, e.g.*, *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73–74 (2d Cir. 2008) (affirming sanction limited to dismissal of action where plaintiffs submitted fraudulent document to support their copyright claim and gave false testimony to support that claim).

In the small number of cases courts have imposed nationwide sanctions, such decisions appear generally to involve parties who either repetitively litigated the specific matter despite prior findings that they lacked any basis to do so, or made outrageous and repeated use of the court system to harass apparent personal enemies.  In *In re Hartford Textile Corp.*, for example, the Second Circuit prohibited a litigant and her attorney from further litigation based on a

particular set of facts, but did so on a record showing the litigant had made "at least twenty-five motions, most of which were meritless and repetitious" before even reaching the Court of Appeals for the first time, and had continued to pursue her unsupported claim for four more years (including via twelve petitions to the Supreme Court) after her initial defeat upon appeal. 681 F.2d 895, 896–97 (2d Cir. 1982) (per curiam).  Even then, neither the litigant nor her attorney were barred from future actions beyond the subject matter of the claim.  *Id.*

Similarly, in *In re Martin-Trigona*, the court entered an order enjoining the litigant from filing future actions without leave only after finding he had a "well-documented practice of abusing his imagined enemies through legal process," resulting in not only "countless" frivolous filings, but also "emotional distress and injury to his victims and subject[ing] them to embarrassment among professional colleagues, insurers, and the general public."  592 F. Supp. 1566, 1569–70 (D. Conn. 1984), *aff'd*, 763 F.2d 140 (2d Cir. 1985); *see also Hammer v. Amazon.com*, 392 F. Supp. 2d 423, 433 (E.D.N.Y. 2005) (prohibiting litigant from "commencing any subsequent action in federal court relating to . . . review of his books on Amazon.com," but rejecting requirement for litigant to include copy of injunction in future unrelated actions).

In keeping with this precedent, courts have modified, vacated, or reversed sanctions that went beyond the scope of the conduct at issue or impermissibly limited access to the courts.  For example, in *Hill v. Carpenter*, the district court had imposed sanctions that "bar [the litigant] from ever bringing another lawsuit in the [Middle District of Pennsylvania]."  323 F. App'x 167, 171 (3d Cir. 2009) (summary order).  The Third Circuit vacated the sanctions as "overly broad" and remanded to the district court to "impose more tailored sanctions."  *Id.* at 171–72.

Along the same lines, in *Polur v. Raffe*, the district court had prohibited a litigant "from filing further suits in the federal courts against [the defendants] relating to the matters at bar."

912 F.2d 52, 57 (2d Cir. 1990).  The Second Circuit, reasoning that the "parameters of the injunction [were] not adequately defined," narrowed the sanction to only "enjoin [the litigant] from filing without leave of the district court further suits in the federal district courts of New York against [the defendants]," so as to ensure that the litigant was not "den[ied] . . . complete access to the New York federal district courts."  *Id.*  In *Wolters Kluwer*, the district court had imposed sanctions on both individual attorneys and their law firm.  564 F.3d at 114.  The Second Circuit, holding that the district court did not find "specific evidence of [the law firm's] bad faith," overturned the sanctions imposed on the law firm.  *Id.* at 114–15.  Finally, in *Enmon*, the Second Circuit noted that the district court's sanctions were not limited temporally and "involved an entire law firm, including lawyers who joined the firm after this litigation had already concluded," and accordingly "remand[ed] to the District Court to consider . . . whether to impose a temporal limit . . . , and whether to exclude from the scope of the order all attorneys who joined the firm after [entry of] . . . the sanctions order," *Enmon*, 675 F.3d at 148.

As in these cases, the Court's extraordinarily severe non-monetary sanctions were not "the least severe sanctions necessary to achieve the goal [of deterrence]."  *Manti's Transp. v. Kenner*, No. 13-CV-6546, 2015 WL 1915004, at *14 (E.D.N.Y. Apr. 27, 2015) (citation and quotation marks omitted).  The sanctions go far beyond the geographic scope and subject matter of this litigation, rely upon lesser misconduct than that of the litigants who have faced comparably broad sanctions, and could well have the effect of preventing Mr. Liebowitz and LLF from practicing for a year.  As such, a serious question exists as to whether this Court abused its discretion in imposing sanctions that go beyond what was "reasonably necessary." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 394 (S.D.N.Y. 2010).

**3.   A "serious question" exists as to whether the Court abused its discretion by altering the statutory presumption of validity in copyright cases.**

A serious question exists as to whether this Court abused its discretion by imposing

Sanction 6, specifically, which alters the statutory presumption of validity in copyright cases.

Under federal law, "the certificate of a registration . . . shall constitute prima facie evidence of

the validity of the copyright."  17 U.S.C. § 410(c).  In keeping with this presumption, "[a]lthough

the plaintiff bears the burden of proving copyright ownership, [once registration is shown], the

party challenging the validity of the copyright registration has the burden to prove the contrary."

*Urbont v. Sony Music Entm't*, 831 F.3d 80, 89 (2d Cir. 2016) (citation and quotation marks

omitted).  By requiring Mr. Liebowitz and LLF to file a deposit copy upon initiation of actions,

the Court improperly overrode this statutory presumption.[11]

**III.      A Stay Will Not Harm Defendant Bandshell.**

Defendant—which has settled Mr. Usherson's claim—will suffer no harm whatsoever if

a stay is issued.  None of the monetary and non-monetary sanctions imposed by this Court run to

Defendant's benefit.  Rather, as this Court found, the purpose of the sanctions was to deter Mr.

Liebowitz and LLF, and to inform their clients and other courts of the sanctions; because

Defendant's counsel represented Defendant *pro bono*, the Court has specified the monetary

sanctions are payable to the Clerk of Court.  Op. 45–48, 50–51.  No basis exists for this Court to

consider potential harm to unspecified entities or persons *not* party to the proceedings or

factually related matters.  *See, e.g., Nken*, 556 U.S. at 426 (stating test is whether stay will

"substantially injure the other parties interested in the proceeding").  *But cf. In re Petrobras Sec.*,

---

[11] *See, e.g.*, *Goodman v. Univ. Beauty Prods. Inc.*, No. 17-CV-1716, 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018) (granting summary judgment to Mr. Liebowitz's client where plaintiff submitted copyright registration and defendant, having "had the opportunity to request [and submit] a certified deposit copy," failed to do so); *Chicoineau v. Bonnier Corp.*, No. 18-CV-3264, 2018 WL 6039387, at *2 (S.D.N.Y. Oct. 16, 2018) (same).

193 F. Supp. 3d 313, 317 (S.D.N.Y. 2016) (considering effect of stay pending appeal of decision

to grant class certification on parallel individual actions).

**IV.      A Stay Is In The Public Interest Because It Will Permit Continued Vindication Of
The Rights Of Copyright Plaintiffs Who Have Limited Alternatives For Recovery.**

There is a strong public interest in the continuation of Mr. Liebowitz and LLF's law

practice.  Mr. Liebowitz and LLF have carved out a successful law practice that provides a

realistic prospect of recovery to copyright plaintiffs in relatively low-dollar infringement cases

that otherwise could go unfiled.  *See* Liebowitz Decl. ¶¶ 5–8; Cotler Decl. ¶¶ 3–4; *Ward v.

Consequence Holdings Inc.*, No. 18-CV-1734, 2020 WL 2219070 (S.D. Ill. May 7, 2020)

("[F]reelance photographers like [Mr. Liebowitz's client] . . . often lack the resources to pursue

claims in court . . . , knowing that even if successful they may receive mere token payments of a

few hundred dollars for their work, far less than their legal fees."); *DC Comics v. Pac. Pictures

Corp.,* No. 10-CV-3633, 2013 WL 1389960, at *5 (C.D. Cal. Apr. 4, 2013) ("The Ninth Circuit

has noted particular concern that copyright holders will not prosecute infringement actions when

the amount at stake is low." (citations omitted)); Shyamkrishna Balganesh, *Copyright

Infringement Markets*, 113 COLUM. L. REV. 2277, 2288–89 (2013) ("[C]opyright litigation

remains unaffordable to a large number of litigants.").  Absent a stay, Mr. Liebowitz, LLF, and

their clients will suffer harm.

## CONCLUSION

Mr. Liebowitz and LLF respectfully request that the Court issue a stay pending appeal as

to the enforcement of non-monetary sanctions three, four, five, and six.  Mr. Liebowitz and LLF

further request that this Court issue a stay on an interim basis, pending its resolution of their

request.  In the alternative, should this Court conclude that a stay pending appeal is unwarranted,

Mr. Liebowitz and LLF respectfully request that this Court, at a minimum, issue a stay for

sufficient time to allow Mr. Liebowitz to promptly move in the Second Circuit for a stay

pursuant to Federal Rule of Appellate Procedure 8(a)(2) and, assuming that such motion is

promptly made, until the Second Circuit determines the stay motion.[12]

Dated: July 20, 2020
      New York, N.Y.

                        MORVILLO ABRAMOWITZ GRAND IASON &
                           ANELLO P.C.

                        /s/ Robert J. Anello
                        Robert J. Anello
                        Brian A. Jacobs
                        Kevin Grossinger
                        A. Dennis Dillon
                        565 Fifth Avenue
                        New York, New York 10017
                        Tel: (212) 856-9600
                        Fax: (212) 856-9494
                        ranello@maglaw.com
                        bjacobs@maglaw.com
                        kgrossinger@maglaw.com
                        ddillon@maglaw.com

                        *Counsel for Richard Liebowitz and Liebowitz*
                        *Law Firm, PLLC*

---

[12] *See, e.g.*, *U.S. C.F.T.C. v. eFloorTrade*, No. 16-CV-7544, 2020 WL 2216660, at *10 (S.D.N.Y. May 7, 2020) (granting brief stay "to allow [movant] to seek a stay from the Court of Appeals); *Front Carriers Ltd. v. Transfield ER Cape Ltd.*, No. 07-CV-6333, 2010 WL 571967, at *1 (S.D.N.Y. Feb. 15, 2010); *HC Trading Int'l Inc. v. Crossbow Cement, SA*, No. 08-CV-11237, 2009 WL 4931341, at *3 (S.D.N.Y. Dec. 21, 2009).