UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR USHERSON,<br><br>      Plaintiff,<br><br>    v.<br><br>BANDSHELL ARTIST MANAGEMENT,<br><br>      Defendant.<br><br>RICHARD LIEBOWITZ; LIEBOWITZ LAW FIRM, PLLC,<br><br>      Miscellaneous. | No. 19-CV-6368 (JMF) |

### DECLARATION OF RICHARD LIEBOWITZ IN SUPPORT OF MOTION BY PROPOSED ORDER TO SHOW CAUSE FOR STAY PENDING APPEAL

  I, Richard Liebowitz, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

  1. I am a principal of the Liebowitz Law Firm, counsel for Plaintiff Arthur Usherson in this action. I submit this Declaration in support of the motion by order to show cause to stay pending appeal all aspects of non-monetary sanctions three, four, five, and six imposed by this Court in its June 26, 2020 Opinion and Order (Dkt. No. 68).

  2. I have had a longstanding and deep interest in photography and in copyright work. During high school and college, I practiced photography and interned for over four years with Bruce Cotler (now President of the New York Press Photographers Association, the oldest organization of its kind in New York). During the course of that internship, I had the

opportunity to accompany numerous professional photographers on news, sports, and other photography events, and in so doing to learn about issues facing professional photographers.  In particular, I learned that photographers' copyrighted photographs often were infringed with impunity.  These photographers told me that they would sometimes approach lawyers for assistance, but costs almost always proved prohibitive, due in substantial part to lawyers' insistence on large retainers that would eat in to, if not entirely exceed, the expected recovery.  I saw a market need for attorneys who could represent photographers in copyright infringement cases, and I went into the law in part hoping to become able to fill that need and to protect copyright holders' rights.

3. I graduated from Hofstra Law School in May 2014, where I took courses in copyright/entertainment and intellectual property law.  I was admitted to the New York State bar in August 2015, and admitted to practice in the Southern District of New York in October 2015.  I maintain memberships in several professional associations, including the New York State Bar Association, the New York City Bar Association, the Nassau County Bar Association, and the New York Press Photographers Association.  I also have taken copyright law Continuing Legal Education courses.

4. Given my longstanding interest in copyright work, I established the Liebowitz Law Firm ("LLF") in 2015 to represent copyright holders whose rights had been violated.  I did not have or receive any formal training in running a law practice; rather, I learned by doing.  In its early days, LLF employed one attorney in addition to me, as well as a few staff members.  Today, LLF consists of three attorneys, who are responsible for litigating infringement cases on behalf of copyright plaintiffs, and about a dozen staff members, who are responsible for client relations, office management, copyright registration, and infringement research.

5. LLF pursues—entirely on a contingency basis—a high volume of copyright infringement actions with relatively low average anticipated recoveries on behalf of copyright plaintiffs. LLF's high volume of cases makes it economically feasible for LLF to represent copyright holders notwithstanding the relatively low average recoveries. Without LLF, many photographers and other artists may not find it economically feasible to protect their federal copyright rights and protect their copyrighted works from infringement.

6. On average, although I do not track all the relevant data, I estimate that many infringement actions brought by our firm regarding a single photograph (as opposed to multiple photographs) have settled in the low thousands or tens of thousands of dollars. A high percentage of LLF's cases settle within approximately two to four months of initiation with a monetary recovery for the plaintiff. A small percentage of LLF's practice involves non-litigation activities, including filing copyright registrations and writing and reviewing licensing agreements, for which LLF generally charges a small fee.

7. LLF has filed approximately 2,500 copyright infringement cases since its founding. About half of these cases were filed in district courts within the Second Circuit.

8. LLF has represented over 1,200 individual clients since its founding. LLF also represents agencies which may themselves represent hundreds of photographers. Many of LLF's clients are repeat clients, on whose behalf LLF has brought multiple actions and continues to actively monitor media outlets and other sources for copyright infringements.

9. LLF obtains new clients primarily through word of mouth from its existing clients. In addition, LLF obtains new clients through my participating in copyright seminars, photographers' trade shows, and other events during which I am able to meet copyright holders.

10. LLF has, when necessary during the course of litigation, ordered a deposit copy of

a copyrighted work from the U.S. Copyright Office. Doing so has cost between $200 and $1,200. Deposit copies generally are not delivered for several months. This lengthy delivery time period has been further extended due to the COVID-19 pandemic.[1] The deposit copy sanction imposed by the Court therefore will significantly reduce the net recovery in every case, and may render the filing of many copyright actions—and LLF's continued operation—financially untenable. The deposit copy sanction may cause LLF and its clients to run into statute of limitations and other problems in cases where deposit copies do not timely arrive. Indeed, the deposit copy sanction already is inhibiting LLF's practice. On June 30, 2020, in another action, I was directed to file a deposit copy of the work at issue by July 8, 2020. *Krieger v. Alison Lou LLC*, No. 20-CV-2628, Dkt. 17, at 2–3 (S.D.N.Y. June 30, 2020). I sought modification of the order, explaining that timely compliance would be impossible given the lengthy processing time required to obtain a deposit copy. *Id.* at Dkt. 19. Notwithstanding this, my application for modification was denied. *Id.* at Dkt. 21.

11. The other non-monetary sanctions imposed by the Court—the requirement that I serve a copy of the Court's sanctions order on current and future clients and in current and future actions—also will cause severe harm to my practice. The sanctions will damage my relationship with my current clients, on whom I rely to obtain new clients, by impugning my legal abilities, advocacy, and character. They will damage my relationship with any new clients, and will do so from the very beginning of the attorney-client relationship, because I must share the Court's order heavily criticizing me at the exact moment a prospective client makes the decision to retain me. The sanctions will damage my relationship with judges and mediators and potentially

---

[1] *See* U.S. Copyright Office, "Operations Updates During the COVID-19 Pandemic," *available at* https://www.copyright.gov/coronavirus/ (accessed July 20, 2020) ("Staff of the Records Research and Certification Section continue to offer search, records certification, and other services but there will likely be unavoidable delays in processing times.").

prejudice any actions before them, including in courts where I have experienced no substantial problems, by forcing me to portray myself and my practice in the worst possible light at the outset of every proceeding. The aforementioned order in *Krieger v. Alison Lou LLC*, with which timely compliance is impossible, illustrates the harm these non-monetary sanctions already are having upon me, my practice, and my clients.

12. Since the motion for sanctions was filed in this case, I have worked to improve my organizational practices and those of my firm. In November 2019, on my own initiative, I retained a recognized expert in the field of legal ethics. On the expert's recommendation, LLF has deployed new practice management software, which helps the firm manage case calendaring and alerts, case documents and discovery, copyright registration information, and other important case details. All of LLF's cases initiated since January 2020 are managed on the new system. Further, I have maintained my relationship with the expert, and continue to call on him as legal, ethical, and organizational issues arise.

13. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 20, 2020
      New York, NY

                                                                              */s/ Richard Liebowitz*
                                                                               Richard Liebowitz