UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTHUR USHERSON,

Plaintiff,

-v-

BANDSHELL ARTIST MANAGEMENT,

Defendant.

---

19-CV-6368 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

On June 26, 2020, the Court issued a fifty-four page Opinion and Order — familiarity with which is assumed — imposing a range of monetary and non-monetary sanctions on the oft-sanctioned Plaintiff's counsel Richard Liebowitz and his firm, the Liebowitz Law Firm, PLLC. *See Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020) (ECF No. 68). The sanctions were based on three sets of detailed findings: first, that Mr. Liebowitz had violated "at least six of the Court's Orders"; second, that he repeatedly lied to the Court, including under oath at a hearing, about whether he had been granted permission by a mediator (the "Mediator") for his client to participate in a mediation session by telephone; and third, that he had failed to reasonably investigate whether the photograph at issue (the "Photograph") had been registered with the Copyright Office (it hadn't), both prior to filing suit and when put on notice about the issue during the litigation. *See id.* at *1, *11-18. The Court found that the sanctions, several of which involve notifying other clients and courts about the Court's Opinion and Order, were reasonably necessary to deter repetition of the misconduct

given Mr. Liebowitz's "long and ignominious history." *Id.* at *19-21. Mr. Liebowitz and his firm had thirty days to comply with several of the sanctions. *See id.* at *22. Two evenings ago — that is, twenty-four days after the Court's decision and only four business days before the deadline — they filed a motion (styled as an order to show cause) asking the Court to stay those sanctions pending appeal. *See* ECF No. 76.

In deciding whether to issue a stay pending appeal, a court must consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors — the likelihood of success and irreparable harm — "are the most critical," *id.*, and "have typically been evaluated on a sliding scale, so that a strong showing that the applicant is likely to succeed excuses a weaker showing of irreparable injury," *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012). Nevertheless, as the Supreme Court has emphasized, "the applicant must demonstrate that both factors are satisfied, so that even if a party makes a robust showing that it is likely to succeed on appeal, it must also show that 'irreparable injury is likely.'" *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A stay," moreover, "is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken,* 556 U.S. at 433 (internal quotation marks and citations omitted). Ultimately, the party or parties seeking the stay — here, Mr. Liebowitz and his firm (together, the "Movants") — bear "the heavy burden of demonstrating that a stay is warranted." *U.S. Commodity Futures Trading Comm'n v. eFloorTrade, LLC,* No. 16-CV-7544 (PGG), 2020 WL

2216660, at *2 (S.D.N.Y. May 7, 2020) (internal quotation marks omitted).

Applying these standards, the Court finds that the Movants do not come close to carrying their heavy burden. The Court is tempted to leave things there and let its Opinion and Order, with its exhaustive findings and analysis, speak for itself. (Mr. Liebowitz's shenanigans have surely consumed enough of this Court's time and resources as it is.) But a few observations are in order, if only to aid the Circuit in the event that the Movants decide to now burden that court with having to decide on short notice whether a stay pending appeal is warranted.

**IRREPARABLE HARM**

For starters, the Movants' claims of irreparable harm ring hollow for several reasons. First, the Movants' principal claim is that the sanctions — which require service of the Court's Opinion and Order on current and future clients and in current and future actions — will result in "severe and irreparable reputational and economic harm to their law practice." ECF No. 78 ("Mem."), at 11. But any harm to Movants' reputations resulting from the mere act of sharing the Court's Opinion and Order is caused not by the *sanctions* themselves, but by growing awareness of *Mr. Liebowitz's own conduct and record*, which are accurately recounted in the Court's Opinion and Order. Notably, the Movants attack none of the history recounted in the Court's Opinion and Order and few of the Court's factual findings, and, as discussed below, their attacks on those findings are entirely unpersuasive.

Significantly, the Court did not bar or even inhibit the Movants from filing any new action — though such sanctions have long been approved with respect to vexatious litigants. *See, e.g.*, *Grezak v. Grezak*, 670 F. App'x 15, 16 (2d Cir. 2016) (summary order) (affirming imposition of a leave-to-file sanction); *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("[C]ourts

have recognized that the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process . . . ."). Instead, its order merely requires the Movants to share information — that is, the Opinion and Order — with their clients and any courts in which they appear for a time, on the theory that they may be deterred from further misconduct by the knowledge that their clients and courts are likely to be more vigilant.[1] Requiring a party to share truthful information — here, that this Court made certain findings and, on the basis of those findings, imposed sanctions on the Movants — does not constitute irreparable harm. *Cf. Smith v. Doe*, 538 U.S. 84, 98 (2003) ("Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment."); *Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 495 (1975) ("Public records by their very nature are of interest to those concerned with the administration of government . . . .").

Second, to the extent that awareness of the Court's Opinion and Order will cause the Movants' reputational and economic harm, much of that harm has already occurred. As the old saying goes, the cat is out of the bag. The Court's Opinion and Order is a public document and, due in no small part to Mr. Liebowitz's well-deserved notoriety, it has already received fairly extensive publicity in the press and social media, particularly in the copyright world. *See, e.g.*, Stephen Rex Brown, *Manhattan Federal Court's 'Most Sanctioned Lawyer' Fined $104K by Judge*, N.Y. Daily News (June 29, 2020).[2] Granting a stay would not undo any of that damage

---

[1] Notably, the Court's Opinion and Order does not preclude Mr. Liebowitz from doing so in a manner that notes his disagreement with the Court's findings and sanctions or the fact that he plans to challenge them on appeal.

[2] *See also, e.g.*, DL Cade, *Notorious Lawyer and 'Copyright Troll' Fined $103K, Photographers Beware*, PetaPixel (July 14, 2020), https://petapixel.com/2020/07/14/notorious-lawyer-and-copyright-troll-fined-103k-photographers-beware/; Ernesto Van der Sar, *Court Excoriates 'Copyright Troll' Lawyer and Adds $100,000 in Sanctions*, TorrentFreak (June 30,

(which, needless to say, is ultimately attributable to Mr. Liebowitz's own deplorable conduct rather than to the Court's Opinion and Order itself). Put another way, the potential harm here is not irreparable; it is only marginal. *See, e.g.*, *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63-64 (2d Cir. 2011) (finding no irreparable harm based on the reputational damage from a legislative declaration where the legislation was already enacted); *Star Boxing, Inc. v. Tarver*, No. 02-CV-8446 (GEL), 2002 WL 31867729, at *3 (S.D.N.Y. Dec. 20, 2002) (Lynch, J.) (rejecting irreparable harm to reputation where the embarrassing fact was "already known in boxing circles" so "whatever embarrassment could arise . . . ha[d] already occurred"); *Alvarez v. City of New York*, 2 F. Supp. 2d 509, 514 n.5, 514-15 (S.D.N.Y. 1998) (rejecting irreparable harm to reputation where the fact of investigation was already publicized, so "any 'damage' [wa]s already done").

Finally, a court "must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm in the absence of relief." *New York v. U.S. Dep't of Commerce*, 339 F. Supp. 3d 144, 148 (S.D.N.Y. 2018) (internal quotation marks omitted). That is because "inexcusable delay in filing" a motion to stay "severely undermines

---

2020), https://torrentfreak.com/court-excoriates-copyright-troll-lawyer-and-adds-100000-in-sanctions-200630/; Mike Masnick, *Copyright Troll Richard Liebowitz Benchslapped and Sanctioned AGAIN in a Massive Filing Detailing Pages Upon Pages of Him Lying Under Oath*, TechDirt (June 30, 2020), https://www.techdirt.com/articles/20200626/18131744799/copyright-troll-richard-liebowitz-benchslapped-sanctioned-again-massive-filing-detailing-pages-upon-pages-him-lying-under-oath.shtml; Bill Donahue, *Judge Says Liebowitz Might Need to Be Banned from SDNY*, Law360 (June 26, 2020), https://www.law360.com/articles/1287090/judge-says-liebowitz-might-need-to-be-banned-from-sdny; Eugene Volokh, *More Massive Sanctions on Richard Liebowitz, 'Copyright Troll' and 'Legal Lamprey'*, Reason: Volokh Conspiracy (June 26, 2020), https://reason.com/2020/06/26/more-massive-sanctions-on-richard-liebowitz-copyright-troll-and-legal-lamprey/; Porter Wells, *'Copyright Troll' Faces Disbarment at SDNY for Bad Behavior*, Bloomberg Law (June 26, 2020), https://news.bloomberglaw.com/ip-law/copyright-troll-faces-disbarment-at-sdny-for-bad-behavior.

the . . . argument that absent a stay irreparable harm would result." *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (rebuking the Board of Elections for seeking a stay twenty-eight days after judgment was entered and only six days before election day). As noted, the Court gave the Movants thirty days in which to comply with the relevant sanctions or seek appropriate relief. Nevertheless, they waited until day twenty-four to seek a stay (at which point, no less, they proposed giving their adversary only three days in which to respond). Put simply, the Movants' "delay, in itself, belies [their] conclusory assertions of irreparable harm" and "is enough to defeat [their] claim." *U.S. Dep't of Commerce*, 339 F. Supp. 3d at 149.

**LIKELIHOOD OF SUCCESS ON THE MERITS**

At best, the Movants make only a weak showing that they would suffer harm in the absence of a stay. It follows that they need to make a correspondingly "strong showing" of likelihood on the merits. *See U.S. Food & Drug Admin.*, 884 F. Supp. 2d at 122 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *cf. Winter*, 555 U.S. at 22. In particular, that requires them to do more than raise "serious questions" about the Court's Opinion and Order. Mem. 13; *see Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd*., 598 F.3d 30, 35 (2d Cir. 2010). Yet conspicuously they do not even attempt to do so; indeed, their boilerplate recitation of the standard aside, *see* Mem. 10, the Movants' brief does not even include the words "likelihood" or "success." In any event, they do not even meet the "more flexible" "serious questions" standard. *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 38; *see LaRouche v. Kezer*, 20 F.3d 68, 72-73 (2d Cir. 1994) (providing that a stay may issue if "a serious legal question is involved" *and* the movant "present[s] a substantial case on the merits . . . and show[s] that the balance of the equities weighs heavily in favor of granting the stay").

Their first attack is on the Court's factual findings about Mr. Liebowitz's lies with respect to the Mediator and his knowledge that the Photograph in question was not registered prior to filing the Complaint. But reading their motion papers, one wonders if they even read the Court's Opinion and Order. With respect to Mr. Liebowitz's lies regarding the Mediator, the Movants do little more than cherry pick a single email that they argue (unpersuasively) is more "equivocal" than the Court acknowledged. Mem. 15. In doing so, however, they all but ignore the fact that the Court's findings were based in large part on its credibility assessments, following a full-blown evidentiary hearing, of the Mediator's and Mr. Liebowitz's testimony. *See Usherson*, 2020 WL 3483661, at *13 (explicitly crediting the Mediator's testimony, based on both "observations of the Mediator's demeanor" and corroborating evidence); *id.* (finding Mr. Liebowitz's testimony "unworthy of belief" and "patently incredible" based on "his demeanor at the hearing" and "the content of his testimony").[3] In light of the "particularly strong deference" owed to the Court's findings in such circumstances, the Movants' arguments do not come close to raising questions, let alone serious questions, about the Court's decision. *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003); *see, e.g.*, *Ceraso v. Motiva Enters., LLC*, 326 F.3d 303, 316-17

---

[3] The Movants assert that the Court "discounted" some portions of the Mediator's testimony, Mem. 15 n.8, and note the Court's ultimate conclusion that one subject of the hearing (whether the Mediator gave Mr. Liebowitz advance permission to send an associate in his place to the mediation) was "too 'muddled' to make factual findings as to Mr. Liebowitz's bad faith by clear and convincing evidence," *id.* at 6 n.5 (quoting *Usherson*, 2020 WL 3483661, at *13 n.3). If anything, however, those features of the Court's Opinion and Order show the care that the Court took in making its findings and ensuring that it imposed sanctions only to the extent that the evidence clearly and convincingly supported those findings. In any event, it is well established that a factfinder "is not required . . . to treat credibility as an all-or-nothing matter," but may "credit portions of a witness's testimony and discredit others." *Hoyte v. Nat'l R.R. Passenger Corp.*, No. 04-CV-5297 (GEL), 2006 WL 2053383, at *3 n.2 (S.D.N.Y. July 24, 2006) (Lynch, J.).

(2d Cir. 2003) ("The decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of the trier of fact . . . ."); *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 145 (2d Cir. 2000) ("[T]he assessment of the credibility of witnesses is peculiarly within the province of the trier of fact . . . ." (internal quotation marks and brackets omitted)).

Meanwhile, the Movants attack a straw man when they contend that the Court erred by finding that Mr. Liebowitz "initiated this action knowing the Photograph was unregistered." Mem. 17. Put simply, that portion of the Court's sanctions decision was not based on a finding that Mr. Liebowitz knew when the complaint was filed that the Photograph had not yet been registered; indeed, the Court *acknowledged* that Mr. Liebowitz may not have personally known about the lack of registration at the time of filing. *Usherson*, 2020 WL 3483661, at *17. Instead, the Court faulted Mr. Liebowitz and his firm for their "inexcusable failure to conduct a reasonable investigation before and during the case." *Id.* Moreover, the Movants conspicuously focus solely on Mr. Liebowitz's knowledge when the Complaint was filed and say next to nothing about the Court's findings and analysis with respect to his or the firm's knowledge and conduct "during" the case. As the Court emphasized, however, whatever knowledge the Movants may have had before filing suit, they certainly knew or should have known about the untimely registration by November 2019, when defense counsel explicitly put them "on notice of what turns out to have been a fatal defect in the Complaint." *Id.* At that point, if not before, the Movants had an "obligation to investigate," yet they conducted "no investigation" whatsoever until ordered to do so months later by the Court. *Id.* at *17-18. To the contrary, Mr. Liebowitz affirmatively represented to the Court that the registration alleged in the Complaint was "the

correct" one and resisted discovery on the issue. ECF No. 50 ("Initial Conf. Tr."), at 17-18. Mr. Liebowitz did not admit, as the Movants do now, that he lacked independent knowledge of the registration, let alone acknowledge, as the Movants do now, that the allegation in the Complaint was false; had he done so, the Court and Defendant would have learned sooner that the case was fatally flawed from its inception.

Next, the Movants contend that the scope and severity of the sanctions are disproportionate to the misconduct. Mem. 18-22. The Court is confident, however, that the record set forth in the Opinion and Order, taken as a whole, justifies the scope and severity of the chosen sanctions.[4] Ironically, the cases that the Movants themselves cite make plain that the Court acted well within its authority in imposing the sanctions on a nationwide basis. *See, e.g.*, *Gallop v. Cheney*, 667 F.3d 226, 230 (2d Cir. 2012) (requiring counsel to "provide notice of sanctions imposed upon him in this case . . . to any federal court" in the Circuit "before which he appears or seeks to appear" for "a period of one year from the entry of [the] order"); *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 148 (2d Cir. 2012) (affirming the district court's sanctions order requiring a firm's lawyers to submit the order "with any *pro hac vice* applications in the Southern District of New York").

[4] In a footnote, the Movants suggest that the Court may have separately erred "in sanctioning Mr. Liebowitz and [his firm] for their conduct before *other* courts." Mem. 18 n.10 (emphasis in original). Putting aside the fact that a party may not raise an argument in a footnote, that argument is frivolous. The Court did not rely on the Movants' "[v]iolations of orders in other litigation" as "*the basis*" of its decision to impose sanctions. *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986) (emphasis added). Instead, it took stock of Mr. Liebowitz's "long and ignominious history" in evaluating what sanctions were necessary to deter further misconduct. *Usherson*, 2020 WL 3483661, at *19. The Court is not aware of, and the Movants do not cite, any authority for the extreme proposition that a court should blind itself to an attorney's history of misconduct in crafting appropriate sanctions.

Indeed, if anything, the Movants' own cases suggest that the Court did not go as far as it could have, given that the sanctions are limited in time and do not limit their ability to file new cases, but merely require disclosure. *See Gallop*, 667 F.3d at 230; *see also Enmon*, 675 F.3d at 148 (noting that the Court had previously upheld a similar order against individual counsel "without any temporal limits"); *In re Hartford Textile Corp*., 681 F.2d 895, 897-98 (2d Cir. 1982) (per curiam) (imposing a "permanent[]" injunction on the litigation or relitigation of certain claims and legal issues). The Movants are undoubtedly correct in asserting that "nationwide sanctions" are rare, *see* Mem. 20, but that is only because they are rarely warranted. Here, they were, as the record makes clear that the Movants' practice — and misconduct — has begun to spread to other districts.[5] Given that record, limiting sanctions to this District (or this Circuit) would not have been adequate to deter repetition of the misconduct; the Movants could simply file suits elsewhere. That is, the Court's sanctions ensure that, for at least a year, any courts in which the Movants are litigating are "alert" to Mr. Liebowitz's "past activities so that they may take judicial notice of matters relevant to new litigation brought by him." *In re Martin-Trigona*, 737 F.2d 1254, 1263 (2d Cir. 1984) (approving of an injunction requiring the

[5] The Movants may have expanded the geographic scope of their practice in order to file more cases and make more money. Or they may have done so in an effort to escape Mr. Liebowitz's well-earned reputation as a problem in this District. (Not surprisingly, Mr. Liebowitz's reputation seems to have either preceded him or to be catching up with him. *See, e.g.*, *In re Richard P. Liebowitz*, No. 19-MC-80228 (JD), ECF No. 17, at 1-2 (N.D. Cal. June 12, 2020) (noting that Mr. Liebowitz's "unprofessional and blameworthy conduct" is "consistent with the extensive public record of discipline he has amassed in courts across the United States"); *Mondragon v. Nosrak LLC*, No. 19-CV-1437 (CMA) (NRN), 2020 WL 2395641, at *1, *14 (D. Colo. May 11, 2020) ("Mr. Liebowitz's continued practice of law represents a clear and present danger to the fair and efficient administration of justice . . . .").) Either way, the decision to expand the firm's practice is a strange one given Mr. Liebowitz's own acknowledgment that his business management practices are "not [the] best" and that "things need to change." Initial Conf. Tr. 81-82; Mem. 18 n.9; ECF No. 79 ("Liebowitz Decl."), ¶ 12.

attachment of "pertinent informational materials to pleadings in state courts"). Anything less would be insufficient to deter repetition of Mr. Liebowitz's misconduct.

Finally, the Movants assert in passing that, by requiring the Movants to file a deposit copy of a copyright registration upon the initiation of an action, the Court impermissibly "alter[ed] the statutory presumption of validity in copyright cases." Mem. 23. Not so. The statute at issue provides only that "[p]ossession of a registration certificate creates a rebuttable presumption that the work in question" — that is, the work covered by the certificate — "is copyrightable," *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989), and that the copyright is otherwise "valid[]," 17 U.S.C. § 410(c). That presumption, however, is not even remotely implicated by the Court's sanction requiring the Movants to verify and confirm that any work at issue in a new lawsuit is actually registered — which, after all, is a statutory condition precedent to even filing a copyright claim. *Usherson*, 2020 WL 3483661, at *4 (citing 17 U.S.C. § 411(a)).[6] Moreover, the Movants' argument falls flat for another reason: The sanction was imposed on *them*, based on *their* history of failing to investigate the evidentiary basis of their own pleadings, not on their current or future clients. That is, although violation of the sanction would subject the Movants to contempt in this Court, it would not in any way (at least absent independent action by the court presiding over the new action) affect the substantive rights of the Movants' clients themselves.[7]

---

6 The statutory presumption recognizes that "[t]he Copyright Office has expertise to determine in the first instance whether a filer has complied with the technical requirements for a registration certificate." *Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997). Needless to say, the Court does not undermine the Copyright Office's expertise by requiring the Movants to confirm that the Copyright Office did, in fact, review a work and issue a certificate.

7 On a related note, the Movants complain that the costs and delays involved in obtaining deposit copies of copyrighted works from the Copyright Office will reduce their clients'

**PUBLIC INTEREST**

The final relevant factor is whether the public interest favors or disfavors a stay.[8] In the Court's view, there is a strong public interest in shining a bright light on Mr. Liebowitz's extraordinary record of misconduct and in ensuring that both courts and his clients, current and future, are aware of that history so that they can be vigilant in scrutinizing Mr. Liebowitz's conduct. *See, e.g.*, LOUIS D. BRANDEIS, OTHER PEOPLE'S MONEY AND HOW THE BANKERS USE IT 92 (1914) ("Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."); *cf. In re Oliver*, 333 U.S. 257, 270 & n.25 (1948) (noting, in reference to the

---

recoveries and may result in statute-of-limitations problems. *See* Mem. 12-13. The Court's sanction may reduce some recoveries (although one would think that Mr. Liebowitz would absorb the difference rather than passing the costs on to his clients), but there are reasons to think the Movants overstate the potential impact. By Mr. Liebowitz's own admission, he settles cases "in the low thousands or tens of thousands of dollars," Liebowitz Decl. ¶ 6 — a far cry from the $200 to $1,200 cost of obtaining a deposit copy, *see id.* ¶ 10. Moreover, the sanction could serve to reduce the Movants' overall expenses, given the substantial monetary sanctions that Mr. Liebowitz routinely incurs. Indeed, this is at least the third time that he and his clients have been made to pay approximately $100,000 due to his misconduct. *See Usherson*, 2020 WL 3483661, at *22; *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC) 2020 WL 468902, at *4, *7 (S.D.N.Y. Jan. 29, 2020); *Craig v. UMG Recordings, Inc.*, No. 16-CV-5439 (JPO), 2019 WL 2992043, at *4, *7 (S.D.N.Y. July 9, 2019). In any event, the costs are the price of the Movants' misconduct and, for reasons already stated, they are necessary to deter and prevent future misconduct. The Court is also skeptical of the Movants' concerns regarding delay, given that the statute of limitations for copyright claims is three years. 17 U.S.C. § 507(b). That said, to ensure that the Court's sanction does not unintentionally harm a client through no fault of his or her own, the Court modifies the sanction (Sanction 6) to include the following proviso: In any case in which the Movants have a good-faith belief that waiting for deposit copies might cause their client's claim to be barred by the statute of limitations, they may file, in lieu of the deposit copies, an affidavit (1) informing the court of such good-faith belief; (2) confirming that they have applied for, and are awaiting, deposit copies of the work(s) at issue; and (3) representing that they will promptly file such copies promptly upon their receipt.

[8] The Court agrees with the Movants that a stay would not cause substantial injury to the other parties interested in this proceeding, as the sanctions do not directly benefit Defendant. *See* Mem. 23. The harm to other litigants and the interests of justice that might result from delaying the sanctions is a factor in the public interest analysis.

importance of public trials, that "knowledge" that the proceeding "is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of . . . power" and that "the presence of interested spectators may keep" participants "keenly alive to a sense of their responsibility and to the importance of their functions").

Against that strong public interest, the Movants cite the "interest in the continuation of [their] law practice" because they have carved out "a successful law practice that provides a realistic prospect of recovery to copyright plaintiffs in relatively low-dollar infringement cases that otherwise could go unfiled." Mem. 24. But the sanctions do not bar the Movants from "continu[ing their] law practice," and Movants' conclusory assertion that such cases would not be filed without them is unsubstantiated. (Moreover, to the extent that the Movants' success is built on unsavory business practices or conduct unbecoming an officer of the court, it is, of course, not at all in the public interest for it to be perpetuated.) Nor do the Court's sanctions deprive photographers of the opportunity to hire Mr. Leibowitz or his firm to bring suit. The sanctions merely ensure that such photographers do so with their eyes wide open, cognizant of the fact that they could be left holding the bag on a hefty attorney's fee or sanctions award, *see, e.g.*, *Rock*, 2020 WL 468904, at *2 (ordering Mr. Liebowitz's client to pay the defendant's attorney's fees over $100,000), and of Mr. Liebowitz's tendency to cut and run, perhaps sacrificing their interests in the process, when he feels that the heat is on him personally, *see Usherson*, 2020 WL 3483661, at *1. In short, insofar as the sanctions provide Mr. Liebowitz's clients and courts with more information about his past, it is in the public interest for them to go into effect now, while the Grievance Committee ponders Mr. Liebowitz's fate longer term.

* * * *

In sum, the Movants' eleventh-hour request for a stay of the Court's sanctions pending appeal is denied and the Court's sanctions remain in full force and effect, with the following modification: In any case in which the Movants have a good-faith belief that waiting for deposit copies might cause their client's claim to be barred by the statute of limitations, they may file, in lieu of the deposit copies, an affidavit (1) informing the court of such good-faith belief; (2) confirming that they have applied for, and are awaiting, deposit copies of the work(s) at issue; and (3) representing that they will promptly file such copies promptly upon their receipt.

Nor will the Court grant the Movants' alternative request for an "administrative" stay pending the Circuit's decision on whether to grant a stay pending appeal. Mem. 24-25. Granting an administrative stay would obviously ease the burden on the Circuit in the event that it is called upon to decide if a longer stay is warranted. In the Court's view, however, that virtue is outweighed by the vice of rewarding an appellant for dilatory conduct. Deadlines matter. And having given Mr. Liebowitz and his firm sufficient time to either comply or seek a stay, the Court should not be forced to alter its deadline merely because *they* waited until the last minute to do the latter. Instead, in the event of an appeal from this Order, the Court will leave it to Mr. Liebowitz and his firm to explain to the Circuit why they put that court in the position of deciding whether to grant a stay with only a few days remaining on the clock.

SO ORDERED.

Dated: July 22, 2020
New York, New York

JESSE M. FURMAN
United States District Judge