20-2304
*Liebowitz v. Bandshell Artist Management*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2020

(Argued: April 7, 2021          Decided: July 23, 2021)

No. 20-2304-cv

———————————————————

RICHARD P. LIEBOWITZ, LIEBOWITZ LAW FIRM, PLLC,

*Appellants*,

ARTHUR USHERSON,

*Plaintiff*,

-v.-

BANDSHELL ARTIST MANAGEMENT,

*Defendant-Appellee*.[1]

———————————————————

Before:        LIVINGSTON, *Chief Judge*, WESLEY and CARNEY, *Circuit Judges*.

---

[1] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Richard Liebowitz and his firm, the Liebowitz Law Firm, PLLC, appeal from an Opinion and Order of the district court sanctioning them for their conduct during their representation of Arthur Usherson in his copyright case against Bandshell Artist Management. The district court specifically found that Liebowitz repeatedly violated court orders, lied under oath to the district court, and brought and maintained this case in bad faith. Citing its authority under 28 U.S.C. § 1927, Federal Rule of Civil Procedure 16, and its inherent power, the district court imposed monetary sanctions of $83,517.49 in attorney's fees, $20,000 in additional monetary sanctions, and nonmonetary sanctions that, *inter alia*, imposed nationwide requirements on cases filed by Liebowitz or LLF. We hold that the district court did not abuse its discretion in doing so. The district judge's factual findings – including the findings of bad faith – were adequately supported by the evidence in the record and by the district court's judgments of witness credibility. Given these findings, the sanctions imposed by the district court, while strict, were not an abuse of discretion. Accordingly, the order of the district court is affirmed.

| | |
|---|---|
| FOR APPELLANTS: | BRIAN A. JACOBS (Robert J. Anello, Kevin Grossinger, A. Dennis Dillon, *on the brief*), Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY. |
| FOR DEFENDANT-APPELLEE: | BRAD R. NEWBERG, McGuireWoods LLP, Tysons Corner, VA. |

DEBRA ANN LIVINGSTON, *Chief Judge*:

Richard P. Liebowitz ("Liebowitz") has been a member of the bar for a short time. In that time, he has compiled an ignominious record of reprimands and sanctions from judges across the country. This appeal concerns one such sanctions order.

The United States District Court for the Southern District of New York (Furman, *J.*) determined that Liebowitz brought and maintained a copyright infringement action in bad faith; that he violated multiple court orders along the way; and that, when questioned about his conduct, Liebowitz repeatedly lied to the court, including under oath. Citing Federal Rule of Civil Procedure 16, 28 U.S.C. § 1927, and its inherent powers, the district court imposed sanctions of $83,517.49 in attorney's fees and $20,000 in additional monetary sanctions. Judge Furman also imposed nonmonetary sanctions which required Liebowitz and his firm, the Liebowitz Law Firm, PLLC ("LLF"): (1) to serve a copy of the district court's Opinion and Order (the "Order") on every one of the firm's clients (including the plaintiff in the underlying suit here, Arthur Usherson ("Usherson")); (2) to file a copy of the Order on the docket of any pending cases in which Liebowitz or his firm are involved; (3) to file a copy of the Order on the docket of any case brought by Liebowitz or LLF for one year after the Order; and (4) in any copyright infringement action brought by Liebowitz or LLF during this same time period, to file a copy of the deposit files maintained by the U.S. Copyright Office reflecting the plaintiff's registration.[2]

---

[2] The district court later modified this final sanction to allow for an alternative

3

Liebowitz and LLF (together, "Appellants") argue that the district court based its Order on erroneous factual conclusions and further that its factual findings, even if correct, do not support the monetary and nonmonetary sanctions imposed. We disagree. We discern no clear error in the district court's factual findings and conclude that the district court acted well within the scope of its discretion in imposing the sanctions given Liebowitz's misconduct in this case. Accordingly, we affirm.

## BACKGROUND

### I.   Factual Background[3]

### A.   The Underlying Copyright Action

This appeal arises out of an action filed by Appellants on behalf of Usherson on July 10, 2019. The complaint alleges that Bandshell Artist Management ("Bandshell") infringed on Usherson's copyright for a photograph of musician Leon Redbone (the "Photograph") and that at the time the complaint was filed the Photograph was registered with the U.S. Copyright Office under Copyright Registration Number VAu 1-080-046 (the "046 Registration"). In reality, the

---

where compliance would cause a client to run afoul of the statute of limitations.

[3] The factual background presented here is derived from the district court's findings of fact, which we review for clear error.

Photograph was not registered. Moreover, Usherson had provided LLF with a CD-ROM containing the photographs registered pursuant to the 046 Registration before the complaint was filed and this CD-ROM did *not* contain the Photograph. Sometime after July 10, 2019 – the date the complaint was filed – Usherson sent LLF another CD-ROM containing photographs that he had not yet registered. *This* collection included the Photograph. The firm proceeded to register the photographs on the second CD-ROM on August 22, 2019.[4]

## B.  The Efforts at Mediation

Unaware that the Photograph had not yet been registered, the district court issued two orders on July 15, 2019, soon after the complaint was filed. The first set the initial pretrial conference for October 10, 2019. The second referred the case to the court-annexed Mediation Program and required the parties to conduct a mediation pursuant to the Program's procedures by September 26, 2019, two weeks before the initial pretrial conference. Additionally, the order required LLF to file proof of service of the summons and complaint within three days of service

---

[4] Notably, as to LLF's post-filing registration of the Photograph, Judge Furman had already held in another case that a suit filed pre-registration is fatally flawed and cannot be cured by a subsequent registration and amendment of the complaint. *See Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019).

being effected and to produce limited discovery related to the licensing of the Photograph.

Liebowitz and LLF complied with none of these orders. The filing of proof of service was untimely; Appellants failed to produce the required discovery; and they failed to participate in the mediation by the required date. Instead, one week after the deadline for mediation had passed, Liebowitz filed a letter suggesting the mediation had not taken place because of the Mediation Office's failure to assign a mediator. He requested leave to hold a telephonic mediation.

In an order dated October 7, 2019, the district court criticized Liebowitz for his attempt to blame the Mediation Office for *his* failure to meet the mediation deadline, but concluded that mediation was still potentially valuable. The district court therefore adjourned the pretrial conference that was scheduled to take place on October 10 until November 14 and ordered, pointedly, that "[t]he parties shall conduct the *in-person* mediation no later than October 31, 2019." J. App'x at 4 (emphasis added). That same day, Bandshell's counsel, Brad R. Newberg ("Newberg"), inquired by email of Liebowitz "if any of October 11, 16, 28 or 31" would work for both Liebowitz and his client and Liebowitz emailed back that "October 31st at 12pm works." J. App'x at 88.

6

The parties agreed to a mediation to be held on that date and time, and to be facilitated by a member of the Southern District mediation panel recruited by Liebowitz ("the Mediator"). On October 31, however, neither Liebowitz nor his client, Usherson, appeared. Instead, two associates from LLF, neither of whom had entered an appearance in the case, were sent in Liebowitz's place. The lead associate, James Freeman ("Freeman"), later informed the district court in a sworn declaration that Liebowitz had apprised him of the existence of the matter only the night before the mediation.[5] The second associate was Liebowitz's sister, a newly admitted lawyer attending only to "shadow" Freeman and to learn about the process. Sp. App'x at 5. No agreement was reached at the mediation, a result that the Mediator later attributed in part to the failure of Liebowitz and Usherson to attend.

Bandshell moved for sanctions six days later, on November 6, about one week before the initial pretrial conference was to take place. Bandshell charged Liebowitz and Usherson with violating the court's orders regarding mediation,

---

[5] Rule 9(c) of the Mediation Program's procedures explicitly provides that "[e]ach represented party must be accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter." Rule 9(f) permits a party residing more than 100 miles from the courthouse to participate by telephone, but only with the advance approval of the mediator.

pre-mediation discovery, and proof of service and sought monetary sanctions and dismissal of the case.

### C.   The Pretrial Conference and Sanctions Inquiry

Liebowitz first addressed the mediation controversy in a joint letter filed by the parties before the initial pretrial conference. In this letter, Liebowitz claimed that he and Usherson had received permission from the Mediator not to appear in person. But in the same letter, Newberg indicated on behalf of Bandshell that "virtually everything in Plaintiff's statement is *false*" and that Newberg had "warned Plaintiff against filing a false statement regarding the scheduled mediation with the Court." Sp. App'x at 6 (emphasis in original).

Liebowitz nevertheless repeated the claim, in a letter "response" to the sanctions motion, that his client had received permission from the Mediator for Usherson's telephonic appearance and, in addition, that the Mediator was aware that Liebowitz, too, would not appear.[6]  Specifically, the letter represented that his client had "obtained permission from the assigned mediator . . . to appear . . . by telephone provided that counsel was present in person," and that Liebowitz had

---

[6]  This three-page letter response was itself in violation of a local rule requiring, as relevant here, that opposition to a motion be in the form of a memorandum of law. S.D.N.Y. R. 7.1.

informed the Mediator that an LLF associate "with knowledge of the facts of the case would appear in-person, and [the Mediator] consented." Sp. App'x at 7.

At the November 14 pretrial conference, Liebowitz, appearing as principal trial counsel, stuck by this story, stating that the Mediator had given permission for Usherson to appear by telephone. The district court, aware of proceedings before another Southern District judge in which Liebowitz's candor to the court had that very week been seriously called into question, specifically warned Liebowitz that he should be "very careful about the representations you make to me."[7] Sp. App'x at 8. The court then inquired when Liebowitz had informed the Mediator that Usherson would not appear in person. Liebowitz answered, "I don't know the exact date, but it was before the mediation, and he said yes." J. App'x at 204. On further inquiry from the court, Liebowitz also made clear that he had personally advised the Mediator, by telephone, that Usherson would not appear

---

[7] The pretrial conference before Judge Furman took place one day after Liebowitz had been chastised by Judge Cathy Seibel for falsely and repeatedly representing that he had failed to appear at a pretrial conference due to his grandfather's death. Judge Seibel had already held Liebowitz in contempt for these misrepresentations, as well as for Liebowitz's repeated refusal to provide documentation of his grandfather's passing. *See Berger v. Imagina Consulting, Inc.*, No. 18-CV-8956 (CS), 2019 WL 6695047, at *3 (S.D.N.Y. Nov. 1, 2019). Liebowitz's continued dishonesty led Judge Siebel at the November 13 proceeding to question his fitness to practice law and to refer him to the Southern District's Grievance Committee.

in person, and that the Mediator "said that was okay." J. App'x at 204. Freeman, who was also present, stated that he had learned about the case only the night before the scheduled mediation, and that he had no knowledge as to whether any approvals had been secured for telephonic appearance.

At the same pretrial conference, Newberg also inquired whether the Photograph had been registered before the lawsuit was filed, as the complaint alleged. Bandshell had learned that Usherson had filed a copyright registration, apparently for the Photograph, after the complaint was filed, suggesting that the Photograph had not been registered before. If the Photograph in fact was not registered when the complaint was filed (particularly in light of Judge Furman's decision in *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019)) this could have required dismissal of the action. *See* 17 U.S.C. § 411(a) ("[N]o civil action" for copyright infringement "shall be instituted until . . . registration of the copyright claim has been made."). Bandshell requested discovery on the potentially dispositive issue of whether the 046 Registration referenced in the complaint actually covered the Photograph.

In response, Liebowitz obfuscated, replying "I don't know what defense counsel means about other registrations or other photographs. I will have to see

what my office did, but this is the correct registration." J. App'x at 252–53. He argued against limited discovery on the registration issue, urging the court to let proceedings continue in the normal course, in the hope of "get[ting] to a settlement number." Sp. App'x at 10.

After the conference, Liebowitz was ordered to file a formal opposition to the sanctions motion. This order included an instruction for both sides to address whether an evidentiary hearing should be held and, if so, what form it should take. Liebowitz's formal opposition disregarded this instruction, but it once again repeated the claim that Liebowitz had received permission for Usherson to appear by telephone from the Mediator and that the Mediator had consented to Liebowitz's plan to have an associate appear in Liebowitz's place. Liebowitz submitted a sworn declaration affirming that he "sought and received approval from . . . the assigned mediator[] for Mr. Usherson to attend the mediation via telephone and for my associate James Freeman to appear who had full knowledge of the case. I obtained [the Mediator's] consent via telephone." J. App'x at 132.

In response, Newberg submitted a declaration citing to emails from the night before the mediation that suggested that both Bandshell and the Mediator were under the impression that Usherson and Liebowitz would be appearing in

11

person the next day.[8] Further, Newberg attested that he called the Mediator on November 19, a few days after the pretrial conference. The Mediator informed him that on previous occasions he had allowed Liebowitz's clients to appear by telephone, but maintained that he had not given approval for telephonic appearance in this case. According to Newberg, the Mediator told him that Liebowitz had called on the night of October 30 and informed him, without asking for approval, that Liebowitz was out of town and that his associate would be attending the mediation. Usherson's attendance was not discussed.

The district court ordered the Mediator to file a declaration, which he did. In his declaration, the Mediator stated that he had spoken to Liebowitz by telephone on October 30. During this call, Liebowitz did not inform him that an

---

[8] Specifically, Newberg emailed the Mediator on the night before the scheduled mediation, sending along a proposed agreement and affirming that Usherson could accept the agreement or "we will see Mr. Liebowitz and Mr. Usherson tomorrow and we can continue discussing the possibility of settlement at the mediation." J. App'x at 216. Later that same evening, the Mediator replied, affirming that he had spoken to Liebowitz who said he would review the agreement and get back to them in the morning. The Mediator further stated, "Hopefully we can settle this before [the] need to go to in person mediation." Sp. App'x at 16. Newberg responded that he would be catching an early train to attend the mediation and assumed Liebowitz, who had been in California, was already in New York or would catch a very early plane. The Mediator responded, "I understand." Sp. App'x at 16. In addition, Liebowitz himself was in email communication with Newberg early in the morning on October 31, but at no time notified Newberg that neither he nor Usherson would be attending the mediation in person.

associate, rather than Liebowitz himself, would appear the next day. The Mediator denied that he had given permission for Usherson to appear by telephone. The Mediator did note, however, that Liebowitz had sent an associate in his stead on at least one other occasion and that his clients had appeared by telephone in other mediations conducted by the Mediator without incident. Liebowitz thereafter filed a letter on December 16, 2019 asserting that he contested statements made by the Mediator in his declaration and that Liebowitz had "notified the Mediator that Mr. Usherson would be appearing telephonically and that such request was granted." Sp. App'x at 13.

The district court concluded that an evidentiary hearing was necessary. On December 17, 2019, the court issued an order scheduling the hearing. Two days later, Liebowitz filed a stipulation of voluntary dismissal signed by both parties. The parties agreed that the case should be dismissed with prejudice and that each side would bear its costs and attorney's fees. In a letter filed that same day, Newberg affirmed that Bandshell had stipulated to Usherson's withdrawal of the case with prejudice, but that neither Newberg nor his client would have done so, except for the fact that his firm was representing Bandshell *pro bono*. The district

13

court so-ordered the dismissal but retained jurisdiction in order to adjudicate the motion for sanctions and related matters.

### D. The Sanctions Hearing

The evidentiary hearing was held on January 8, 2020. The district court treated the witnesses' declarations as their direct testimony. Additionally, it approved Liebowitz's application to expand the record to include a new argument (first suggested in the letter to the court of December 16, 2019) that the Mediator's "custom and practice" of allowing Liebowitz's clients to appear telephonically caused Liebowitz to harbor a good faith belief that he had the requisite permission and could have caused the Mediator to forget whether, in fact, he granted permission in this case. Sp. App'x at 13–14. Liebowitz was permitted to testify about five previous cases in which he claimed the Mediator had given him oral permission to have his clients appear by telephone.[9] But Liebowitz also admitted on cross that in one of these very cases, he himself had objected to another party appearing telephonically on the ground that the mediation rules require in-person appearance – thus evidencing his understanding that permission was required.

---

[9] He also added that in one case he had been given permission to have an associate appear in his stead.

Regarding the present controversy, Liebowitz testified that he had called the Mediator around 7:30 to 8:00 p.m. the night before the scheduled mediation and received permission both for Usherson to appear by telephone and for Freeman to appear as counsel. He made no written record of the call. When asked how he now remembered the date of the call when he did not at the November 14 pretrial conference, only two weeks after the event, Liebowitz testified that the emails attached to Newberg's initial declaration in support of Bandshell's sanctions motion had reminded him. When pressed on the fact that Newberg's declaration and the annexed emails were actually filed before the November 14 conference, and that Liebowitz had responded to it in writing, he declared simply that "I often forget things." J. App'x at 394.

Liebowitz claimed during his testimony that he had a contingency plan if the Meditator had denied his request for Usherson to participate by phone and for Freeman to take Liebowitz's place. At the time of the call with the Mediator, Liebowitz was in Los Angeles, California, hosting a networking event and Usherson was at home in Georgia. Despite never booking flights or even checking the flight times, Liebowitz claimed he was prepared to return to New York immediately. He did not claim to have informed Usherson about the potential

15

need immediately to travel, but testified that he was sure he could have called Usherson and "kn[e]w that he's always around." J. App'x at 385.

Liebowitz's testimony was notably at odds with the statements made by his own associate, Freeman, to the effect that Freeman had only learned of the existence of the case the night before the scheduled mediation. Liebowitz claimed, to the contrary, that the two had spoken about the case on "numerous occasions." Sp. App'x at 17. Liebowitz also claimed in this testimony that he had informed Freeman about the approvals given by the Mediator, notwithstanding Freeman's statement at the pretrial conference to the contrary. As to this latter discrepancy, Liebowitz sounded a similar theme, suggesting that "people forget things," and that Freeman had done so. J. App'x at 382. Liebowitz also asserted that Freeman properly appeared at the mediation because he was the lead attorney in the matter even though it was Liebowitz who appeared as principal trial counsel at the pretrial conference and, indeed, Freeman had not entered an appearance in the case.

Newberg and the Mediator also testified. Newberg testified that he remembered the Mediator saying at the mediation that he had been notified that Liebowitz would be sending an associate. Newberg also recalled the Mediator

stating that he expected Usherson to attend in person. For his part, the Mediator testified that he could not then recall whether Liebowitz had informed him that Freeman would be appearing.[10]  He testified unequivocally, however, that he did not give permission for Usherson to appear by telephone despite speaking with Liebowitz several times on October 30, the day before the mediation. He learned that Usherson would not be coming only "[w]hen the mediation started." Sp. App'x at 19.

After the testimony, the district court heard oral argument. During argument, Bandshell revealed that it had discovered that the Photograph had indeed not been registered prior to the filing of the complaint. In response, Freeman (serving as Liebowitz's lawyer) stated that it was the regular practice of LLF to file copyright infringement cases without verifying the registration of the works in question to avoid expense. The firm instead took clients at their word that the works in question were properly registered. Freeman stated that in this case, Usherson had affirmed that the Photograph was registered.

---

[10]  He did acknowledge that prior to the mediation he had learned that Liebowitz was in Los Angeles and that, as a result, it was unlikely he would attend in person.

The district court ordered an additional round of letter briefing on this issue. In his letter, Liebowitz admitted that the statement in the complaint regarding the registration of the Photograph was inaccurate. But he also noted that his firm had registered the Photograph in August 2019 and he blamed the inaccuracy in the complaint on an "administrative mistake[] or clerical error[] . . . in the copyright registration process." Sp. App'x at 20. In response, Bandshell contended that this explanation "defie[d] belief," as Liebowitz at the initial pretrial conference had denied any knowledge of "other registrations or other photographs," affirming that the 046 Registration referenced in the complaint was correct. Sp. App'x at 20. The district court ordered Liebowitz, Freeman, and Usherson to submit declarations addressing the circumstances surrounding the inaccurate allegation about the registration of the Photograph. Liebowitz admitted in his declaration that he had conducted no investigation into the matter. This was despite Usherson's statement that he had sent the firm a CD-ROM prior to the filing of the complaint which included all the photographs that had been registered pursuant to the registration identified in the complaint.[11] Liebowitz claimed that he had

---

[11] Usherson admitted that he had made a mistake in advising LLF that the Photograph was registered as part of the 046 Registration. As for Freeman, he explained that his representations regarding the Photograph's registration were based on his general knowledge of LLF's practices rather than any personal knowledge regarding this

relied on the firm's internal case-tracking system and that he had no role in filing for the Photograph's registration in August 2019. He asserted that he did not realize that the Photograph was not properly registered until after the sanctions hearing in January 2020.

## II.   The District Court's Order

The district court entered the Order sanctioning Liebowitz and LLF on June 26, 2020. In it, the court found that sanctions were warranted for Liebowitz's conduct. Specifically, the district court found that Liebowitz violated no fewer than six of the district court's orders.[12] Judge Furman further concluded these violations were willful. Next, the district court found that Liebowitz repeatedly lied to the court, including under oath, about receiving permission for Usherson to appear by telephone at the mediation. Citing, *inter alia*, Liebowitz's demeanor at the evidentiary hearing, the conflicts between Liebowitz's testimony and that of

---

case.

[12]   Four of these orders came on July 15, 2019, when the district court directed: (1) the filing of proof of service no more than three days after service was effected; (2) the production of limited discovery regarding licensing of the Photograph; (3) the attendance of principal trial counsel at both the initial pretrial conference and the mediation session; and (4) the participation of Liebowitz and Usherson in a mediation session not later than two weeks before the pretrial conference, which was then scheduled for October 10. The fifth was the October 7 order requiring that the mediation session be held no later than October 31. The sixth was the November 15 order that Liebowitz address in his sanctions briefing whether and how an evidentiary hearing should be held.

Newberg and the Mediator (both of whom the court found credible), and the documentary evidence, the district judge found by clear and convincing evidence that Liebowitz had not only made false statements to the court but had done so in subjective bad faith. [13] Finally, the district court concluded, by clear and convincing evidence, that Liebowitz brought and maintained the case in bad faith by willfully disregarding the fact that the Photograph was not properly registered at the time the complaint was filed. Judge Furman concluded that Liebowitz knew the Photograph was not properly registered at least as of August 22, 2019, when his firm registered the Photograph. In any event, he should have known and had failed to conduct a reasonable investigation of his client's statements.[14]

---

[13] The court also indicated that a preponderance of the evidence, but not clear and convincing evidence, supported a finding that Liebowitz lied about receiving permission to have Freeman appear at the mediation session in his place.

[14] Judge Furman pointed to Bandshell's statements at the initial pretrial conference about the potential defect in the complaint, Liebowitz's evasive statements at that conference, and his and LLF's failure to investigate the potential issue until after it was brought to a head at the hearing on January 8, 2020, and Liebowitz was ordered to file a letter and then a declaration addressing the issue. The court concluded that Liebowitz's conduct was most consistent with attempting to evade the defect until he could extract a settlement from Bandshell, which "undoubtedly demonstrates bad faith." Sp. App'x at 44. In so concluding, the court referred to another Southern District case in which a district court determined that Liebowitz's "stonewall[ing] [of] discovery requests" when "faced with the prospect of the Defendants learning that the Photograph was not registered" evinced bad faith. *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2816 (ALC), 2020 WL 468904, at *3 (S.D.N.Y. Jan. 29, 2020). The district court also noted that Liebowitz was "explicitly put on notice" at the initial pretrial conference of the fact that pursuant to the court's own decision in *Malibu Media*, an untimely registration is not

The district court then turned to the question of sanctions. First, it determined attorney's fees were an appropriate measure of sanctions for Liebowitz's misrepresentation that the Mediator gave permission for Usherson to appear by phone and the multiple violations of the court's orders. Though Bandshell, represented by *pro bono* counsel, had disclaimed the right to collect any fees, Judge Furman concluded that $83,517.49 was an appropriate fee for the work Bandshell's lawyers performed in connection with the mediation and the sanctions motion and that the sum would be payable to the court. Second, Judge Furman ordered Liebowitz and LLF to pay to the court an additional sanction of $20,000 for falsely alleging in the complaint that the Photograph was registered and for not conducting a reasonable investigation either before the lawsuit was filed or after they were put on notice of the potential defect in their pleadings. For both categories of monetary sanctions, the district court cited its authority under Federal Rule of Civil Procedure 16(f), 28 U.S.C. § 1927, and the court's inherent authority.

---

curable, so that a complaint filed before registration must be dismissed. Sp. App'x at 39–40.

The district court next imposed nonmonetary sanctions. The first of these sanctions required Liebowitz to serve a copy of the Order on Usherson and every other current client of LLF. He and LLF were further required to file the Order on the docket of each of their pending cases and any case they brought within a year of the Order's entry. The second sanction required, for a period of one year, that complaints filed by Liebowitz or LLF involving claims of copyright infringement include a copy of the deposit files maintained by the U.S. Copyright Office showing the registration of the relevant copyrighted work or works involved in the case.

Finally, the district court sent a copy of the Order to the Southern District's Grievance Committee so it could consider whether further discipline was appropriate. The district court included with the Order an extensive appendix of previous cases from a number of jurisdictions in which Liebowitz was reprimanded or sanctioned for misconduct.

Liebowitz filed a timely notice of appeal. Separately he moved for a stay of only the nonmonetary sanctions pending appeal in the district court. Judge

Furman denied the stay motion.[15]  This Court similarly denied Liebowitz's motion

for a stay. We now address the merits of his appeal.

## DISCUSSION

District courts have inherent, statutory, and rule-based powers to sanction

lawyers for conduct that impedes the efficient administration of justice. Indeed,

we have said that district judges have an obligation to act to protect the public,

adversaries, and judicial resources from litigants and lawyers who show

themselves to be serial abusers of the judicial system. *See Lau v. Meddaugh*, 229 F.3d

121, 123 (2d Cir. 2000) (per curiam). "We review the imposition of sanctions for

abuse of discretion." *Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 53 (2d Cir. 2018).

To be sure, because sanctions proceedings are unique, placing the district judge in

the role of "'accuser, fact finder and sentencing judge' all in one," *ATSI Commc'ns,

Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting *Schlaifer Nance &

Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)), our review is "more

exacting than under the ordinary abuse-of-discretion standard," *id.* (quoting *Perez*

---

[15]  The district court did, however, modify one of its sanctions to allow Liebowitz
or LLF to file an affidavit in lieu of the deposit copies in any case in which they had a
good faith belief that waiting for the deposit copy might cause a client's claim to be
barred. Liebowitz and the firm were still required to file the deposit copies promptly
upon their receipt.

*v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003)). Moreover, "[d]epending on [the] circumstances, a party facing sanctions may be entitled to enhanced procedural protections" associated with criminal procedure, "beyond notice and an opportunity to be heard." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 116–17 (2d Cir. 2009); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (noting that "when imposed pursuant to civil procedures," an attorney's fees sanction pursuant to inherent powers must be "compensatory rather than punitive"); *Mackler Prods., Inc. v. Cohen* (*Mackler I*), 146 F.3d 126, 128 (2d Cir. 1998) (discussing need for enhanced process in context of punitive fines). With these cautions in mind, however, we emphasize that the sanctioning authority of district courts both accords with and is a necessary aspect of their "responsibility to manage their dockets 'so as to achieve the orderly and expeditious disposition of cases.'" *In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013) (per curiam) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

Here, we conclude that the sanctions imposed by Judge Furman on Liebowitz and LLF were well within the scope of the district court's discretion. Accordingly, we affirm the order of the district court.

# I

At the start, Liebowitz admits that he did indeed violate the district court's

orders. But he takes issue with the district court's factual findings that: (1) he "lied

in bad faith" about his interactions with the Mediator; and (2) he brought and

maintained this suit in bad faith.[16]  As to both findings, "[w]hether a litigant was

at fault or acted willfully or in bad faith are questions of fact" and thus are

reviewed for clear error.[17]  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d

Cir. 2009); *see also Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020)

("[C]lear and convincing evidence of bad faith is a prerequisite to an award of

sanctions under the court's inherent power."); *United States v. Int'l Brotherhood of*

*Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (noting that "[b]ad faith is the

---

[16]  The district court concluded that Liebowitz's representations to the court that he received permission from the Mediator for Usherson to appear by phone were "false and made in bad faith." Sp. App'x at 29–30. Appellants use "lied in bad faith" as shorthand for contesting this conclusion. Appellants' Br. at 31.

[17]  To be sure, both inquiries involve both questions of fact about Liebowitz's knowledge, conduct, and motivations as well as questions of law about whether the district court's factual findings satisfy the relevant legal standard. Here, we conclude that whether Liebowitz acted in bad faith primarily involves "case-specific factual issues" and, accordingly, we review the district court's decision with deference. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401–02 (1990) (suggesting, in the Rule 11 context, that where sanctions involve issues "rooted in factual determinations," such as whether a prefiling inquiry was reasonable, deferential review is appropriate).

touchstone" of sanctions under § 1927). We discern no such error in the record here.

**A**

Liebowitz first assails the district court's conclusion that he made false statements to the court about receiving permission for Usherson to attend the mediation in person and did so in bad faith. He contends that the district court abused its discretion in finding, by clear and convincing evidence "based on a careful review of the record, including an evaluation of the witnesses' demeanor at the January 8, 2020 hearing," that Liebowitz repeatedly lied to the court, including under oath, as to whether the Mediator authorized Usherson to appear by telephone.[18] Sp. App'x at 29. This argument is unavailing.

At the start, the district court had ample reason to conclude, as it did, that Liebowitz's testimony that he received permission was "on its own terms . . . unworthy of belief" because, *inter alia*, it lacked corroboration and required the court to accept "patently incredible" claims such as that Liebowitz was prepared to fly himself and Usherson from Los Angeles and Georgia, respectively, to New

---

[18] Liebowitz does not dispute that such conduct, if properly found, is sanctionable under Rule 16, 28 U.S.C. § 1927, and the district court's inherent authority. His admitted violation of multiple pretrial orders is similarly sanctionable pursuant to each of these authorities and Liebowitz raises no argument to the contrary.

York on the morning of the mediation, and on a moment's notice. Sp. App'x at 31. By his own admission, Liebowitz made no notation of the oral permission he allegedly obtained. Moreover, his testimony that he had spoken about the case on numerous occasions with Freeman, and had informed *him* about receiving permission from the Mediator for Liebowitz's and Usherson's absence, was inconsistent with Freeman's in-court statements at the initial pretrial conference. In addition, as the district court found, Liebowitz's claim to have received that permission on October 30 is not reflected in any of the contemporaneous email correspondence, which suggests no awareness on the Mediator's part "that either Mr. Usherson or Mr. Liebowitz would not be attending in person the next day–much less that [the Mediator] had given them both permission not to attend *that very night . . . .*" Sp. App'x at 31 (emphasis in original).

Liebowitz's claim is most obviously contradicted by the Mediator himself, "who testified unequivocally at the hearing that Mr. Liebowitz never mentioned the possibility that Mr. Usherson would not attend the mediation in person." Sp. App'x at 30. The district court specifically credited the Mediator's testimony and discredited Liebowitz's based on an assessment of the demeanor of each witness, and the record as a whole. Appellants argue that the district court placed too much

27

weight on the emails between Newberg and the Mediator and that the Mediator, contrary to the district court's view, was not without any stake in the matter, but had an interest in demonstrating compliance with the Mediation Program's rules. But "[w]hen, as here, credibility determinations are at issue, we give particularly strong deference to a district court finding." *United States v. Wallace*, 937 F.3d 130, 141 (2d Cir. 2019) (quoting *United States v. Murphy*, 703 F.3d 182, 189 (2d Cir. 2012)), *cert. denied*, 140 S. Ct. 2551, *and reh'g denied*, 140 S. Ct. 2799 (2020). After reviewing the record and evaluating the demeanor of the witnesses at the evidentiary hearing, Judge Furman determined that the Mediator's testimony was credible and Liebowitz's was not. We discern no error, much less clear error, in this determination.

## B

Appellants next argue the district court erred in concluding that Liebowitz brought and maintained this suit in bad faith. A finding of bad faith in this context requires a district court to determine both that challenged conduct "was without a colorable basis" and that it was pursued in bad faith, "*i.e.*, motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co.*, 194 F.3d at 336; *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (noting that

sanctions for bad faith conduct pursuant to inherent powers are "not restricted to cases where the action is filed in bad faith," but extend to the bad faith conduct of a litigation). For a claim to be without color it must lack any legal or factual basis.[19] *Schlaifer Nance & Co.*, 194 F.3d at 337. Both "[a] finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *Wolters Kluwer*, 564 F.3d at 114. At the same time, in applying both standards "more often than not, 'the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted.'" *Huebner*, 897 F.3d at 53 (quoting *Virginia Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 113 (2d Cir. 2017)). Liebowitz argues the district court's Order meets neither requirement. Again, we disagree.

We start with whether the complaint lacked a factual basis and was brought and maintained in bad faith. Judge Furman concluded that Liebowitz's actions in bringing and maintaining the copyright claim were unsupported because the Photograph was not registered at the time of filing and Section 411(a) of the

---

[19] In contrast, "a claim is colorable 'when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'" *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam)).

Copyright Act specifically states that "no civil action for infringement of the copyright . . . shall be instituted until preregistration or registration of the copyright claim has been made." 17 U.S.C. § 411(a). Judge Furman found that Liebowitz, who appeared as principal trial counsel in the matter and, indeed, was the only attorney who had noticed an appearance, *knew* about the untimely registration at least as of August 22, 2019, when LLF itself registered the Photograph.[20] The record supports this factual determination.

But even if this were not the case – even accepting as true Liebowitz's claim that in August 2019 he was unaware of any problem with the complaint – the record is *crystal* clear that Liebowitz was put on notice of the issue by Newberg at the November 2019 pretrial conference. Bandshell had "discovered that after this case was filed, Mr. Usherson filed a copyright registration, which . . . seems to be on these photographs, so now it is unclear whether the registration in the complaint actually does cover the photograph or if it is the new copyright registration." J. App'x at 252. Liebowitz affirmed to the court in that very conference that the registration identified in the complaint "[was] the correct

---

[20] The district court also found in the alternative that the evidence clearly and convincingly demonstrated that Liebowitz *should have known* that the Photograph was not registered.

registration" and that he was aware of no others – even though his firm had filed for a second registration in August. J. App'x at 252–53. Moreover, he resisted limited discovery on the issue, urging that the case should proceed in the normal course so that "hopefully during that process the parties could eventually get to a settlement number." Sp. App'x at 10, 43.

Liebowitz concedes he took *no* subsequent action to ensure that his factual representation to the district court was accurate. Indeed, even after being put on notice that there was an issue as to the 046 Registration and even though his firm was in possession of material from Usherson that could easily have resolved the question, Liebowitz finally admitted to the flaw in the complaint only in January 2020 when confronted by Bandshell with definitive evidence that the complaint's allegation regarding the 046 Registration was false. And as the district court found, Appellants admitted the falsehood even then "only because the Court ordered them to file a letter addressing the issue and, when that did not clear things up, declarations." Sp. App'x at 42. In sum, the district court's finding that the claim lacked a factual basis and was *maintained* in bad faith – that Liebowitz "actively stonewalled Mr. Newberg's request for discovery" and pressed forward,

31

"hop[ing] to settle the case before the truth came to light" – had ample factual support. Sp. App'x at 42–43.

Liebowitz argues that even assuming the above factual finding, his actions were not *legally* baseless. In particular, he contends that the defect in the complaint caused by the untimely registration could have been cured via amendment and that his actions thus had at least *some* legal basis. Liebowitz admits that Judge Furman had held in a previous case that post-registration amendment in the circumstances here is impermissible, but he correctly points out that even in the opinion in question Judge Furman acknowledged that other courts have reached the opposite conclusion. *See Malibu Media, LLC,* 2019 WL 1454317, at *3.

But this argument misidentifies the conduct relevant to the inquiry. Even assuming *arguendo* that Liebowitz might properly have moved to amend the complaint once he discovered the untimely registration, this is not, in fact, what Liebowitz did. Instead, the district court found that Liebowitz, despite knowing, as of August 2019, that the Photograph was not registered – a fatal flaw for the complaint as written – continued to defend the complaint *without amendment,* resisting the discovery that would have revealed its fatal flaw. *See Oliveri*, 803 F.2d at 1272 (discussing bad faith conduct of litigation as a proper basis for inherent

powers sanctions). Even Liebowitz must admit, moreover, that he was on notice of the issue as of the November pretrial conference when it was explicitly raised by Bandshell. But still Liebowitz did not promptly move to amend the complaint or inform the district court that his representation at that conference was false. Bandshell was thus required to expend resources defending against a complaint that was without factual or legal basis as written, even assuming, *arguendo*, that an amendment could have cured the problem.

As to whether Liebowitz was "motivated by improper purposes such as harassment or delay," *Schlaifer Nance & Co.*, 194 F.3d at 336, Judge Furman found he was, concluding that Liebowitz and LLF's "willful disregard of the registration requirement [was] part of their broader strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits." Sp. App'x at 44. This finding is supported by Liebowitz and LLF's "custom and practice" of failing to investigate copyright registrations, Liebowitz's failure to do so in this case despite Bandshell's questions specifically about whether the Photograph's registration was timely, his "active[] stonewall[ing]" of discovery on the issue, and his suggestion, upon the registration issue being raised at the pretrial conference, that the case be allowed to continue as normal in the hope of reaching a settlement. Sp.

App'x at 42–43. Liebowitz's argument to the contrary is essentially that he made a mistake in the course of running his law practice. But we discern no error in the district court's contrary conclusion.

\* \* \*

In sum, the factual findings supporting the district court's decision to sanction Appellants were amply supported and in no way clearly erroneous. Again, Liebowitz admittedly violated multiple court orders and raises no challenge to this conclusion by the district court. As to the challenges that he *does* make, the court adequately supported its findings: (1) that Liebowitz lied about receiving permission from the Mediator for Usherson's failure to attend the mediation; and (2) that he acted in bad faith in pursuing Usherson's claim based on the 046 Registration. We turn next to Appellants' challenges to the monetary sanctions imposed by the district court.

## II

"Depending on circumstances, a party facing sanctions may be entitled to enhanced procedural protections beyond notice and an opportunity to be heard" based on a line that the cases draw between civil and criminal sanctions. *See Wolters Kluwer*, 564 F.3d at 116–17. This distinction attempts to ameliorate the risk

of unfairness or abuse that can arise in proceedings in which "the offended judge [is] solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994).[21] Thus, "the imposition of a sufficiently substantial punitive sanction" requires "procedural protections appropriate to a criminal case" (for example, the requirement of proof beyond a reasonable doubt). *Mackler I*, 146 F.3d at 130. Appellants argue that the district court's award of an additional sanction of $20,000 meets this threshold and that because the district court did not provide criminal protections, that portion of the monetary sanctions must be vacated. Appellants also raise a number of arguments against the district court's award of attorney's fees, contending that it must be overturned or at least reduced. For the reasons that follow, we disagree.

---

[21] The Supreme Court's decision in *Bagwell* addressed the distinction between criminal and civil contempt, not sanctions, but this Court has "extended [its] reasoning . . . to punitive sanctions against an attorney imposed under statutory or inherent authority." *Wolters Kluwer*, 564 F.3d at 117 (declining to extend *Bagwell* further to reach reprimands against an attorney). The Supreme Court has also recognized that *Bagwell*'s reasoning has application to sanctions in appropriate circumstances. *See Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186 (2017).

**A**

We start with the district court's award of attorney's fees. Judge Furman concluded that the appropriate measure of attorney's fees was the fees and costs that Bandshell would have incurred in connection with the mediation and the sanctions motion had it not been represented by *pro bono* counsel. These fees totaled $83,517.49. The district court specifically stated that it was imposing these sanctions for Liebowitz's violations of the court's orders and his lies related to the mediation. Because Bandshell and its lawyers disclaimed any claim to collect attorney's fees, Judge Furman made the fees payable to the court.

Liebowitz raises several challenges to this sanction. He first argues that time spent by *pro bono* counsel should not serve as a measure of sanctions. And even if this is permissible, he argues that the district court erred by counting time spent on litigating the sanctions motion as part of the fine. Finally, he argues that even if this Court holds he is incorrect as to the above two points, the district court still erred by counting the entire cost of litigating the sanctions motion when it found that only one of the two issues raised in the motion was deserving of sanctions.[22] We address and reject each of these arguments in turn.

---

[22] The district court found by clear and convincing evidence that Liebowitz lied about having received the Mediator's permission for Usherson to attend the mediation

36

First, we hold that neither the *pro bono* nature of Bandshell's representation nor Bandshell's agreement, as part of the stipulated settlement, not to accept any fees is a barrier to a sanction of attorney's fees pursuant to a district court's inherent powers. Such sanctions still serve to "vindicat[e] judicial authority" even when the fees are not reflected on a client's bill. *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021) (noting that monetary sanctions pursuant to inherent power serve not only to compensate wronged parties but also to vindicate the court's authority). Even where the opposing party, as here, has secured *pro bono* representation, sanctions of attorney's fees still hold counsel liable for unnecessarily consuming judicial and attorney resources. And while precedent dictates that a district court awarding attorney's fees must ensure the fee is reasonable, this does not yoke the district court's ability to protect the integrity of its proceedings to the details of the billing arrangement between the opposing party and its lawyers.[23]  We therefore hold that attorney's fees calculated based on

---

by phone. It indicated, however, that only a preponderance of the evidence supported a finding that Liebowitz lied about the Mediator consenting to Freeman appearing as counsel. Because a showing of bad faith by clear and convincing evidence is a prerequisite to imposing sanctions under both § 1927 and the district court's inherent authority (although not generally Rule 16(f)), the district court found only the first category of misconduct sanctionable.

[23] In its recent decision in *Goodyear Tire & Rubber Co.*, the Supreme Court stated that for a sanction imposed pursuant to a district court's inherent powers using civil

the work performed by Bandshell's lawyers constituted an appropriate measure of sanction under the district court's inherent powers.

For similar reasons, we conclude that Bandshell's *pro bono* representation was no barrier to sanctions under 28 U.S.C. § 1927.[24] The subject of § 1927's prohibition is *attorneys* who engage in misconduct, and its scope is not limited by the manner in which opposing counsel represents clients. *See Oliveri*, 803 F.2d at 1273 ("[A]wards under § 1927 are made only against attorneys or other persons

---

procedures to be permissible it must "go no further than to redress the wronged party for losses sustained" and "may not impose an additional amount as punishment for the sanctioned party's misbehavior." 137 S. Ct. at 1186 (internal quotation marks omitted). Our holding does not conflict with this instruction. Judge Furman based the measure of sanctions on what amount would have been sufficient to compensate Bandshell had its lawyers charged a reasonable attorney's fee based on their ordinary hourly rates. The fact that Bandshell and its lawyers will not collect this amount from LLF does not transform this amount into a punitive sanction nor entitle Appellants to process they would not be due had Bandshell's lawyers not chosen to waive their fees. Bandshell's lawyers still incurred losses as a result of the misconduct in question. We decline to interpret *Goodyear* to permit the use of civil procedures only when such losses are ultimately included on a client's bill.

[24] The full text of this provision reads:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Because we conclude that the attorney's fee sanction was properly imposed pursuant to § 1927 and the district court's inherent authority, we need not address the court's alternative holding awarding these fees pursuant to Rule 16.

authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both."). To condition liability under this Section based on the *pro bono* or compensated nature of the representation of the opposing party would strip the Section of its deterrent power in an important class of cases.

Section 1927's reference to attorney's fees that are "reasonably incurred" imposes no barrier to our interpretation. We find persuasive the Tenth Circuit's conclusion that the use of such a phrase does not restrict fees to those actually charged to the client. *See Centennial Archeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 681–82 (10th Cir. 2012) (discussing attorney-fee sanctions pursuant to Rule 37). Accordingly, we hold that, as used in § 1927, "attorney's fees reasonably incurred" refers to the reasonable value of the work reasonably performed by opposing counsel because of the sanctioned conduct, rather than the fee billed to the client. *See id.* at 679 ("[A]n 'attorney fee' arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services."). Thus, a § 1927 award of attorney's

fees remains appropriate even when a party is being represented by counsel *pro bono*.[25]

Next, we reject Liebowitz's contention that it was inappropriate to include the attorney's fees incurred in litigating the sanctions motion. Indeed, Liebowitz admits that this Court has affirmed such an award in the past. *See Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 148–49 (2d Cir. 2012) (upholding imposition of fees for litigation of sanctions motion pursuant to § 1927 and inherent powers). Nor was such a sanction outside the range of permissible decisions here. Judge Furman found that in the course of attempting to extract a settlement from Bandshell, Liebowitz treated mandatory court orders as mere suggestions and lied when confronted about doing so. And this is to say nothing of Liebowitz's long track

---

[25] We also reject Liebowitz's argument that the *pro bono* nature of Bandshell's representation led its lawyers to run up an excessive bill. For one thing, the incentive to spend excessive hours on unpaid work is balanced by the opportunity cost of forgoing work for paying clients. Additionally, it is within the discretion of the district court to consider whether the time spent on litigating an issue by *pro bono* counsel is reasonable and we discern no abuse of discretion in the district court's determination here that this criterion was satisfied as to the time spent by opposing counsel on the mediation and sanctions motion. We need not address Appellants' argument regarding Bandshell's counsel's admission that they "put so much time into a pro bono matter of limited exposure to [their] client" because they "understood the importance of this issue beyond this case, to both the bar and the Court." Appellants' Br. at 50 (quoting J. App'x at 275). Appellants have waived this argument by failing to raise it in the first instance in the district court; the role of such an admission in a future case in the district court's determination of the reasonableness of the hours counsel expended remains open.

record of similar conduct in courts across the country. *See In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 120 (2d Cir. 2000) (noting relevance, in context of § 1927, of "fact that [counsel]'s behavior is repetitive").

Appellants argue that awarding the costs of litigating sanctions motions deters creative argumentation by parties defending against sanctions and encourages the party seeking sanctions to pursue as many claims as possible regardless of their merit. We are not convinced. As to the first point, one opposing sanctions remains incentivized to make creative arguments in order to convince the district court that sanctions are not warranted or ought be limited. Similarly, the incentive for parties seeking sanctions to focus on their strongest arguments is the same as it always is: to maximize their chance of success. At any rate, the district court retains discretion to consider the relative merits of the parties' arguments when considering whether to include the costs of litigating sanctions in an award of attorney's fees. And we discern no abuse of discretion in Judge Furman's decision that attorney's fees in connection with the sanctions litigation were merited here.

Third and finally, we hold it was not an abuse of discretion for the district court to hold Liebowitz liable for the cost of litigating the entire sanctions motion

41

even when this motion was successful only in part.[26]  In *Enmon*, we approved the district court's imposition of the full cost of litigating the sanctions motion in such circumstances, noting specifically that "[t]he fact that [the district court] denied the sanctions motion in part did not prevent [it] from imposing the full cost of litigating the motion, which, if not completely successful on all . . . grounds . . . was nevertheless well-founded." 675 F.3d at 148. Liebowitz argues that the Supreme Court's decision in *Goodyear* compels a different result. We disagree.

In *Goodyear*, the Court stated that for inherent powers sanctions, the line between civil and criminal awards of attorney's fees is "a but-for test: The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Goodyear*, 137 S. Ct. at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).[27]  But the Court specified that this standard does not

---

[26]  Applied to this case, we note that even though the district court did not agree with Bandshell on one of its arguments for sanctions, it did conclude that Bandshell would have prevailed on this point as well had the relevant standard been preponderance of the evidence.

[27]  Though *Goodyear* is a case involving the district court's inherent powers, a footnote in the Court's opinion affirms that fee shifting pursuant to § 1927 similarly requires courts to find a causal connection to the misconduct at issue, though the Court did not explicitly characterize the test as one of but-for causation. *Goodyear*, 137 S. Ct. at 1186–87 n.5. Because we conclude the district court's award was permissible under *Goodyear*'s but-for test, we need not address whether the but-for test also applies to sanctions under § 1927.

42

require precise accounting. *Id.* Instead, "'[t]he essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox*, 563 U.S. at 838). Thus, a district court, as here, "may decide, for example, that all . . . of a particular category of expenses . . . were incurred solely because of a litigant's bad-faith conduct" and should be compensated in the form of sanctions. *Id.* And such judgments, made with the district court's unique understanding of the litigation, "are entitled to substantial deference on appeal." *Id.*

We understand *Goodyear* to have reinforced, not abrogated our conclusion in *Enmon* that in appropriate cases a district court may, as part of a sanctions order, hold lawyers liable for the cost of litigating a sanctions motion that is only partially successful. Accordingly, we reject Liebowitz's contrary claim.

## B

We turn next to the $20,000 sanction the district court imposed in connection with the complaint's false allegation that the Photograph was registered pursuant to the 046 Registration. Appellants argue that this sanction was punitive and, because it was imposed without affording them the protections of criminal procedure, impermissible. For the following reasons, we disagree and conclude

that the $20,000 sanction was permissible under Federal Rule of Civil Procedure 16(f) without reaching the applicability of § 1927 and inherent powers.

Liebowitz's argument that the $20,000 sanction must be set aside or at least reduced centers on this Court's decisions in the two *Mackler* cases, in which we vacated "punitive" monetary sanctions, imposed under the district court's inherent powers and payable to the court, that exceeded a $45,000 "compensatory" sanction for attorney's fees and expenses. Both *Mackler* cases involved a finding by the district court that an attorney had knowingly allowed his client to commit perjury during a trial and had caused an additional witness to provide false evidence. *Mackler I*, 146 F.3d at 130. Before the first appeal, the district judge imposed "compensatory" sanctions of $45,000 in attorney's fees and expenses and "punitive" sanctions of $10,000. *Id.* at 128. This Court vacated the sanctions order, noting that "the imposition of a sufficiently substantial punitive sanction" requires the protections of criminal procedure. *Id.* at 130. On remand, the district judge did not conduct any further proceedings and instead reimposed the compensatory sanction of $45,000 and a reduced punitive sanction of $2,000. *Mackler Prods., Inc. v. Cohen* (*Mackler II*), 225 F.3d 136, 141 (2d Cir. 2000). We again concluded on appeal that the now reduced punitive sanction was improper absent the use of criminal

44

procedures, reasoning that the gravamen of our earlier analysis "was whether or not the sanction at issue was criminal or civil *in character*," with the size of the sanction representing but one factor in this analysis. *Id.* at 142 (emphasis in original).

Appellants seize on this reasoning (as well as the other factors considered in both *Mackler* decisions to conclude that the sanctions there were punitive) to argue that here, too, the district court's additional sanction, beyond attorney's fees, is punitive and therefore impermissible without the protections of criminal procedure. But the present case is plainly distinguishable. Both *Mackler* appeals addressed a situation in which the district court imposed sanctions in excess of attorney's fees and expenses for a *single* course of conduct, explicitly denominating the amounts to be paid over and above the "compensatory" sanction as "punitive." Here, Liebowitz's bad faith in connection with the complaint represents a course of conduct separate and apart from his multiple violations of court orders and his misrepresentations regarding the Mediator's supposed assent to Usherson's telephonic appearance. And the district court made clear that the $20,000 sanction was in connection with this *separate* misconduct. Moreover, the court in no way suggested that the $20,000 sanction was intended to be punitive,

45

but gauged its amount as "no greater than necessary to provide adequate deterrence, to Mr. Liebowitz, to his firm, and to others similarly situated." Sp. App'x at 51.

We nevertheless decline to reach the question whether the $20,000 sanction was permissible pursuant to § 1927 or to the district court's inherent powers. We made clear in the *Mackler* opinions that whether a monetary sanction should be treated as civil or criminal in character turns on several non-exhaustive factors, including not only the size of a monetary sanction but "whether the sanction is intended to be compensatory or punitive; whether it is payable to the court or to the injured party; whether it is based on past wrongful conduct or is intended to coerce future compliance; and whether any opportunity to purge the sanction is provided." 225 F.3d at 142. To be sure, none of these factors is by its nature determinative, nor can the character of a sanction be assessed based merely on the factors' tally. As the Supreme Court recognized in *Bagwell*, in the related context of contempt fines, the line between civil and criminal monetary sanctions is "somewhat elusive" and can be difficult to parse. 512 U.S. at 830, 836.

Here, while the district court in no way suggested that the instant sanction was intended to be punitive, the court did not explicitly discuss the basis for

deeming it to be civil, not criminal, in character. The court at no point attempted to calibrate the sanction to fees and costs incurred by Bandshell or its counsel by virtue of Appellants' bad faith conduct in concealing the complaint's misrepresentation. Nor did it estimate an amount sufficient to compensate the court for its *own* time, which our sister circuits have held may properly be the basis of compensatory sanctions. *See Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1136 (10th Cir. 1991) (Rule 11 sanction may be imposed based on court costs for use of court's time); *Magnus Elecs., Inc. v. Masco Corp. of Ind.*, 871 F.2d 626, 634 (7th Cir. 1989) (same).

To be sure, the sanction here is modest, in terms of the costs imposed on Bandshell, its lawyers, and the court, all of which were required to spend time sorting out Appellants' falsehoods regarding the Photograph's registration. And to be clear, a monetary sanction may still constitute a coercive civil sanction, rather than a criminal penalty, *despite* its non-compensatory character. *See Bagwell*, 512 U.S. at 834. Absent more explanation from the district court, however, we hesitate definitively to conclude that the $20,000 sanction here was a permissible exercise of its authority pursuant to § 1927 or its inherent powers.

We have no such hesitation, however, with regard to the district court's alternative holding under Federal Rule of Civil Procedure 16(f). [28] Rule 16 prohibits, *inter alia*, bad faith participation in pretrial conferences and permits the district court to issue "any just orders" in response to such conduct. Fed. R. Civ. Pr. 16(f). District courts acting pursuant to their authority under Rule 16(f) are free to "design the sanction to fit the violation," 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1531 (3d ed.), and their focus "need not be limited to compensation of opposing counsel," *Media Duplication Servs., Ltd. v. HDG Software*, 928 F.2d 1228, 1242 (1st Cir. 1991). Indeed, "[t]rial judges have considerable discretion in the selection and imposition of sanctions" so as to "deter

---

[28] That rule provides:

**(f) Sanctions.**

**(1)** *In General.* On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:

**(A)** fails to appear at a scheduling or other pretrial conference;

**(B)** is substantially unprepared to participate – or does not participate in good faith – in the conference; or

**(C)** fails to obey a scheduling or other pretrial order.

**(2)** *Imposing Fees and Costs.* Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

neglect" of pretrial obligations. *Id.* (quoting *Barreto v. Citibank, N.A.*, 907 F.2d 15, 16 (1st Cir. 1990)). And "[d]eterrence is a widely recognized basis for determining the amount of a monetary sanction" under Rule 16(f). *See Jones v. Winnepesaukee Realty*, 990 F.2d 1, 6 (1st Cir. 1993).

To be clear, this is not to say that sanctions pursuant to Rule 16(f) may not sometimes require the protection of criminal procedures. But in assessing Rule 16(f) sanctions, it must be kept in mind that the Rule itself *requires* a district court, absent special circumstances, to order the payment of reasonable expenses, including attorney's fees, incurred as a result of noncompliance. It then expressly provides that this sanction may be "in addition to" any other. Fed. R. Civ. P. 16(f)(2). As we have said before, the Rule's "'explicit reference to sanctions' reflects the Rule's intention to 'encourage forceful judicial management.'" *Huebner*, 897 F.3d at 53 (quoting Fed R. Civ. P. 16(f) advisory committee's note to 1983 amendment). And we have no hesitation on the present record in concluding that the $20,000 sanction was not punitive in character, when considered in light of Rule 16's mandate that district courts assess sanctions so as compensate for Appellants' misconduct and to deter it from happening again.

We have little trouble concluding Liebowitz's conduct at and with respect to the November pretrial conference was in bad faith, thus violating Rule 16. Bandshell raised the issue of the registration at that pretrial conference, giving Liebowitz an opportunity to respond. Liebowitz, as the district court found, instead "stonewall[ed] . . . any investigation into the registration issue," falsely assuring the court that the registration identified in the complaint was "the correct registration."[29] Sp. App'x at 10, 51. This was not good faith participation in the pretrial conference or with respect to it.

We also conclude that when assessed in light of Rule 16(f), the record is more than sufficient, even without additional explanation from the district court, to conclude that the sanctions amount chosen by the district court did not require the protections of criminal procedure. As already indicated, the district court explained that "sanctions of $20,000 [were] no greater than necessary to provide adequate deterrence" to Liebowitz and to LLF. Sp. App'x at 51. And Liebowitz has

---

[29] As previously noted, Liebowitz argues that he did not know, at the time, that this was not the case. The district court's factual finding to the contrary, however, is amply supported. And, in any event, even on Liebowitz's account, once indisputably alerted to the issue, Liebowitz did not correct the record until months later, when confronted with definitive evidence that the complaint's allegation was false, even though the means definitively to ascertain the truth were readily at hand and easily consulted within the records of his own firm.

shown that his conduct is resistant to ordinary efforts to sanction him. *See* Sp. App'x at 55–61 (detailing various instances of Liebowitz's misconduct); *see, e.g.,* *Chevrestt v. Barstool Sports, Inc.*, No. 20-CV-1949 (VEC), 2020 WL 2301210, at *2, *4 (S.D.N.Y. May 8, 2020) (ordering Liebowitz to pay a sanction of $3,000 to the court pursuant to Rule 16(f) and characterizing his "attempt to attribute his 'administrative oversight' to the COVID pandemic" as "disingenuous, distasteful, unpersuasive, and likely perjurious"); *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *4–5, *7 (S.D.N.Y. July 10, 2019) (sanctioning Liebowitz and ordering him and LLF to pay monetary sanctions of $8,745.50 pursuant to Rule 16(f) and the court's inherent powers for willful disobedience of orders "requiring mediation and Liebowitz's appearance" at the initial conference). Under Rule 16(f), the sanctions amount needed to be sufficiently substantial both to compensate and to deter. And, moreover, the sum chosen by the district court is consistent with comparable Rule 16 sanctions imposed *in addition to* attorney's fees and expenses that our sister circuits have upheld. *See* *Jones*, 990 F.2d at 3, 5–6 (approving sanctions totaling $10,000 in addition to attorney's fees for "consistent failure to attend pretrial hearings and their bad faith in conducting the litigation").

Considered in light of Liebowitz's conduct in this case, his previous similar conduct, the need for deterrence, and similar sanctions approved by our sister circuits, Judge Furman's $20,000 sanction for Liebowitz's bad faith conduct in connection with the pretrial conference was not an abuse of discretion and did not trigger a need for criminal procedures. Liebowitz's argument to the contrary is without merit.

### III

Finally, we turn to the district court's nonmonetary sanctions, which we have already upheld in a summary order that issued on June 25, 2021. *Liebowitz v. Bandshell Artist Mgmt.*, ___ F. App'x ____, 2021 WL 2620416 (2d Cir. June 25, 2021). As this Court has recognized, while "[p]unitive fines . . . are the common tools of the criminal law," nonmonetary sanctions of the sort here "are not traditional criminal punishments" but serve "to ensure ethical conduct before the courts." *See Wolters Kluwer*, 564 F.3d at 117. Accordingly, a party challenging such sanctions cannot typically argue that they must be set aside because criminal protections were required. *Id*. at 118 (holding as to reprimands "that attorneys need not be given the full rights required in a criminal trial before the court may impose such nonmonetary disciplinary sanctions for litigation misconduct"). Although

Appellants do not argue the non-monetary sanctions required criminal protections, they contend that the district court abused its discretion by imposing overbroad sanctions when it required them to file a copy of the Order on the docket of all of their cases nationwide and to obtain and file a copy of the official deposit files maintained by the U.S. Copyright Office in all of their copyright infringement cases. We again disagree.

Appellants' arguments that the non-monetary sanctions are overbroad because of their nationwide scope fail to persuade. Appellants rely on our decision in *Enmon*, where the law firm made several misrepresentations and the district court only required the firm to file a copy of its sanctions order with future *pro hac vice* applications in the Southern District of New York. *See* 675 F.3d at 148. But Liebowitz concedes that this Court has permitted nationwide relief in response to abuses of the judicial process. *See In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) (enjoining further litigation by a party on a nationwide basis). And unlike the law firm's misconduct in *Enmon*, Liebowitz's misconduct in this case – including violating multiple court orders, repeatedly lying to the court, and pursuing a complaint with a false allegation – justifies the nationwide scope of the court's sanctions here. Moreover, Liebowitz's pattern of misconduct before many

judges of the Southern District of New York and across the country, described at length in the district court's opinion, squarely defeats Appellants' suggestions to the contrary. *See, e.g., In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (affirming "restrictions placed upon [attorney's] bringing of new actions in *all* federal district courts*" (emphasis added)). *See generally Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020).

Finally, the district court did not abuse its discretion when it ordered Liebowitz and LLF to obtain and file a copy of the deposit files with each copyright infringement complaint they file for one year. Contrary to Liebowitz's claim, requiring Appellants to include a copy of the deposit files does not impermissibly shift the burden of proof in copyright cases. Although the party challenging the validity of a copyright registration bears the burden of proving invalidity, that burden attaches only for presumptively valid copyrights; plaintiffs asserting infringement bear the burden of establishing that presumption, and of proving ownership. *See Urbont v. Sony Music Ent.*, 831 F.3d 80, 88–89 (2d Cir. 2016); *see also Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985). Given that Freeman, Liebowitz's associate, "admitted that it is the regular practice of [LLF] to file copyright infringement cases without verifying that the works in question are

properly registered," the district court's sanction was appropriately chosen to ensure misconduct would not recur.[30]  Sp. App'x at 19–20.

*    *    *

Given Liebowitz's serious and repeated misconduct, the Appellants here merited sanctions reserved for attorneys and litigants who demonstrate via their actions that unusual measures are required to deter future misbehavior, protect other litigants, and maintain the integrity of the judicial system. Liebowitz's brief time as a member of the bar so far has been replete with actions suggesting an unwillingness to comply with his obligations as an officer of the court. The district court did not abuse its discretion in determining that sanctions were appropriate and in imposing the sanctions here.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court.

---

[30]  Appellants' argument that the sanction imposed a substantial burden because deposit files are expensive to obtain is also unpersuasive. As the district court noted, Liebowitz often settles cases "'in the low thousands or tens of thousands of dollars' . . . a far cry from the $200 to $1,200 cost of obtaining a deposit copy." Sp. App'x at 72–73 n.7.